UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREENLEAF LIMITED PARTNERSHIP | ) | **FILED: APRIL 30, 2008** |
| 3175 Commercial Avenue | ) | **08CV2480     AEE** |
| Northbrook, IL 60062 | ) | **JUDGE KENDALL** |
| | ) | **MAGISTRATE JUDGE COX** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY | ) | |
| 401 North Michigan Avenue | ) | |
| Suite 700 | ) | |
| Chicago, IL 60611 | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

### INTRODUCTION

1.     Plaintiff is the owner of a multifamily rental housing project that is assisted under the U.S. Department of Housing and Urban Development ("HUD") project-based Section 8 Program.  Under the project-based Section 8 Program, HUD makes rental assistance payments, called annual contributions, to a public housing agency ("PHA") such as the Defendant, Illinois Housing Development Authority ("IHDA"), in accordance with an Annual Contributions Contract between HUD and the PHA.  The PHA, in turn, remits a portion of the annual contributions it receives from HUD to the owner of a project, such as Plaintiff, in the form of housing assistance payments pursuant to a Housing Assistance Payments ("HAP") Contract between the PHA and the owner for the purpose of reducing the amount of rent paid by the tenants who live in the units covered by the HAP Contract.

2.     In accordance with the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled to an annual increase in the rents payable under the Contract.  IHDA has not increased the rents payable under the HAP Contract between Plaintiff and IHDA in accordance with the terms of the Contract since 1994.  The failure by IHDA to increase the rents constitutes a breach of the HAP Contract between Plaintiff and IHDA.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

4.     Venue in this Court is proper under 28 U.S.C. § 1391(b).

## PARTIES

5.     Plaintiff is a limited partnership formed under the laws of Illinois.  Plaintiff is the owner of Greenleaf Apartments, a 321-unit multifamily rental housing project located in Bolingbrook, Illinois.

6.     Defendant was created under the laws of Illinois.  Defendant is a State Agency, as defined by 24 C.F. R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937.  42 U.S.C. § 1437a.

## FACTS

### The Section 8 Program

7.     This action arises under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8").  Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing. Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

8.      Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA.  An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to the HAP Contract between the PHA and the owner.  The monthly housing assistance payments by the PHA to the owner benefit the  low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

9.      HUD has implemented Section 8 through several distinct programs.  One such program is the Section 8 Program for State Housing Agencies.  Greenleaf Apartments was built, and is managed, under HUD's Section 8 Program for State Housing Agencies.

10.      The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

11.      A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract."  24 C.F.R. § 883.302 (2007).

12.      A Section 8 HAP Contract establishes a contract rent ("Contract Rent") for each unit covered by the HAP Contract.  The amount of the monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount the tenant is required by law to pay as rent.

13.      Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract.  24 C.F.R. §

888.201(2007).  HUD is required to publish these adjustment factors in the Federal Register at least annually.  24 C.F.R. § 888.202 (2007).

14.     In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Greenleaf Apartments, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area."  P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

15.     In that same Act, Congress further revised Section 8 by requiring that for the units in a project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0.  P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

16.     These two revisions to Section 8 were originally effective for Fiscal Year 1995 only.  The provisions were made permanent beginning with Fiscal Year 1999.

17.     On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 revisions to Section 8 contained in HUD's FY 1995 Appropriations Act.

18.     In accordance with Notice 95-12 and subsequent Notices issued by HUD to further implement the 1994 revisions to Section 8, in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required, when the Contract Rents exceed the

applicable Fair Market Rents published by HUD,  to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 at least sixty days before the anniversary date of the owner's HAP Contract.

19.     The purpose of form HUD-92273 is to calculate the estimated market rent for a project's units.  If a project's Contract Rents, as adjusted by the applicable annual adjustment factor, are less than the rent calculated on Form-92273, an owner is entitled to the full increase.

20.     If a project's rents, as adjusted by the applicable annual adjustment factor, are greater than the estimated market rent calculated on Form-92273, then additional calculations are required to ensure that the difference between a project's initial Contract Rents and the rent for a comparable unassisted unit on the effective date of a project's HAP Contract is preserved.

## Greenleaf Apartments

21.     Greenleaf Apartments was built under HUD's Section 8 Program for State Housing Agencies. The project consists of 9 efficiencies, 240 one-bedroom units and 72 two-bedroom units.

22.     The original owner of Greenleaf Apartments was Preston Drive Limited Partnership ("Preston"), an Illinois limited partnership.  In 2002, Preston sold Greenleaf Apartments to Plaintiff.

23.      Preston entered into a HAP Contract (the "Greenleaf Contract") with IHDA.  A copy of the Contract is attached as Exhibit 1.  HUD signed and approved the Greenleaf Contract. Ex. 1, pp. 5, 5a, 5b and 5c.

24.     There are five stages to the Greenleaf Contract.

25.     The effective date of Stage I of the Greenleaf Contract was October 1, 1981. Stage I covers 30 one-bedroom and 6 two-bedroom units.

26.     The effective date of Stage II was November 1, 1981.  Stage II covers three efficiencies, 50 one-bedroom and 18 two-bedroom units.

27.     The effective date of Stage III was January 1, 1982.  Stage III covers three efficiencies, 80 one-bedroom and 24 two-bedroom units.

28.     The effective date of Stage IV was May 1, 1982.  Stage IV covers two efficiencies, 54 one-bedroom and 16 two-bedroom units.

29.     The effective date of stage V was June 1, 1982.  Stage V covers 1 efficiency, 26 one-bedroom and 8 two-bedroom units.

30.     In May 2002, Preston assigned all of its right, title and interest in the Greenleaf Contract to Plaintiff.  HUD and IHDA approved the assignment of the Greenleaf Contract from Preston to Plaintiff in 2002.

31.     The initial term of the Greenleaf Contract was twenty years. Ex. 1, ¶ 1.2a.  The Greenleaf Contract is automatically renewable for four additional 5-year terms unless either party to the Greenleaf Contract notifies the other party of its desire not to renew the Contract in writing at least sixty days prior to the expiration of the current term of the Contract and the other party agrees in writing to the non-renewal.  Ex. 1, ¶ 1.2(b).

32.     The Greenleaf Contract states, "Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract."  Ex. 1, ¶ 2.7(b)(1).   The "anniversary date of the Contract" between Plaintiff and IHDA is the effective date of each stage of the Contract.  Accordingly, there are five anniversary dates, one for each stage, on which IHDA is required under the

Greenleaf Contract to increase the Contract Rents at Greenleaf Apartments for the units covered by that stage.

33.    The initial Contract Rent for the efficiencies at Greenleaf Apartments was $495. For the one-bedroom and two-bedroom units at Greenleaf Apartments, the initial Contract Rent was $578 and $681, respectively.

34.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually by IHDA, as required by the Greenleaf Contract. There has been only one increase to the Contract Rents at Greenleaf since notice 95-12 was issued. That increase was effective on October 1, 2002 and was applicable to all the units at Greenleaf Apartments.

### COUNT I - BREACH OF CONTRACT
### (Failure to Adjust Contract Rents)

35.    Plaintiff repeats and realleges paragraphs 1-34.

36.    Under the Greenleaf Contract, Plaintiff is, and has been, entitled, on the anniversary date of each stage of the Contract, to an increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents for the units covered by each stage.

37.    Contrary to the terms of the Greenleaf Contract, IHDA has not increased the Contract Rents at Greenleaf Apartments annually, as required by the HAP Contract, since HUD issued Notice 95-12. In addition, the October 1, 2002 increase to the Contract Rents at Greenleaf Apartments approved by IHDA was less than the amount required by the Greenleaf Contract.

38.    IHDA's failure, since HUD issued Notice 95-12, to increase the Contract Rents at Greenleaf Apartments, in accordance with terms of the Greenleaf Contract, constitutes a breach of the Greenleaf Contract.

39.    This breach by IHDA of the Greenleaf Contract has damaged Plaintiff by reducing the Contract Rents that are required under the Contract which, in turn, has reduced the amount of housing assistance payments to which Plaintiff is entitled under the Greenleaf Contract.

## COUNT II-BREACH OF CONTRACT
### (Reduction in Annual Adjustment Factors)

40.    Plaintiff repeats and realleges paragraphs 1-39.

41.    Since Notice 95-12 was issued, HUD has published two tables of annual adjustment factors when HUD published the factors in the Federal Register. Table I was applicable to turnover units, i.e. units that were occupied by a family different from the family that occupied the unit at the time of a project's previous annual rent increase.  Table 2 was applicable to non-turnover units, i.e. units that were occupied by the same family as the family that occupied the unit at a project's previous annual rent increase.  Table 2 reduced the adjustment factors in Table 1 by .01, except no factor was reduced below 1.0

42.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment factors otherwise applicable to Section 8 projects, including the adjustment factors applicable to Greenleaf Apartments, by .01 for non-turnover units.

43.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at Greenleaf Apartments constitutes a breach of the Greenleaf Contract and damages Plaintiff by reducing the Contract Rents, and the housing assistance payments, to which Plaintiff is entitled under the Greenleaf HAP Contract.

## COUNT III-BREACH OF CONTRACT
### (Rent Comparability Study)

44.     Plaintiff repeats and realleges paragraphs 1-43.

45.     IHDA requires Plaintiff, and owners of other Section 8 projects, to submit a Rent Comparability Study, prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at Greenleaf Apartments.

46.     In 2002 Plaintiff submitted a Rent Comparability Study in connection with a rent increase request submitted by Plaintiff to IHDA.

47.     No provision of Plaintiff's HAP Contract with IHDA requires Plaintiff to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiff is entitled under the Greenleaf Contract.

48.     The requirement to submit a Rent Comparability Study imposed by IHDA on Plaintiff constitutes a breach of the Greenleaf Contract.

49.     Plaintiff has been damaged by this breach of the Greenleaf Contract by IHDA through the cost incurred by Plaintiff in obtaining the Rent Comparability Study submitted by Plaintiff to IHDA.

WHEREFORE, Plaintiff prays that the Court:

(i)      Find that IHDA has breached the HAP Contract between Plaintiff and IHDA;

(ii)     Award Plaintiff compensatory damages for the breaches by IHDA of the Greenleaf Contract;

(iii)    Order IHDA to increase the current Contract Rents at Greenleaf Apartments to reflect the annual increases to which Plaintiff was entitled in accordance with the Greenleaf Contract;

(iv)    Award Plaintiff its costs and expenses of this action, including attorney fees; and

(v)    Award any other relief to which Plaintiff is entitled or that the Court

determines is appropriate

Respectfully Submitted,

April 30, 2008                          GREENLEAF LIMITED PARTNERSHIP

By Its Attorneys:

__/s/Richard A. Wolfe_____
Richard A. Wolfe
Wolfe and Polovin
180 N. LaSalle Street
Suite 2420
Chicago, IL 60601
(312) 782-1681 (Telephone)
(312) 782-5108 (Telefax)

Of Counsel:

Carl A.S. Coan, Jr.
Carl A.S. Coan, III
Coan & Lyons
1100 Connecticut Avenue, N.W.
Suite 1000
Washington, DC  20036
202-728-1070 (Telephone)
202-293-2448 (Facsimile)

JUDGE KENDALL
MAGISTRATE JUDGE COX

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**GREENLEAF LIMITED PARTNERSHIP**

**v.**

**ILLINOIS HOUSING DEVELOPMENT AUTHORITY**

**COMPLAINT**

**EXHIBIT 1 – Part I**

SECTION 8 HOUSING ASSISTANCE PA... TS PP

## STATE HOUSING AGENCY.

## PART I OF THE

## HOUSING ASSISTANCE PAYMENTS CONTRACT

ML-74
ML-74

| Type of Project: | Constructed under 24 CFR Part 883, Subpart D with or without set-aside    X | or | Processed under 24 CFR Part 880 or Part 881, Subparts C & F using set-aside |
|---|---|---|---|

| Small Project | or Partially-Assisted Project | or Other 100% a: |
|---|---|---|
| New Construction    X | or Substantial Rehabilitation | |

Type of Financing:    State Agency Tax-Exempt Loan

[For example: subject to Part 811; HUD-insured; State agency
tax exempt loan, not HUD-insured.]

ACC/HAP CONTRACT LIST NUMBER AND DATE: C-68-958, 9/29/80

MASTER SECTION 8 ACC NUMBER: C-1065

DATE OF ACC PART I FOR THIS PROJECT: September 30, 1980

SECTION 8 PROJECT NUMBER: IL06-H121-180

FHA PROJECT NUMBER (if applicable): None

HFA PROJECT NUMBER: ML-74

This Housing Assistance Payments Contract (Contract) is entered into by and
between the
ILLINOIS HOUSING DEVELOPMENT AUTHORITY
(HFA) which is a State housing finance and/or Development Agency and a public
housing agency as defined in the United States Housing Act of 1937, 42 U.S.C.
1437, et seq. (Act) and Preston Drive Limited Partnership, an Illinois Limited
Partnership
(Owner) and approved by the United
States of America acting through the Department of Housing and Urban Development
(HUD), pursuant to the Act and the Department of Housing and Urban Development
Act, 42 U.S.C. 3531, et seq. The purpose of this Contract is to provide housing
assistance payments on behalf of Eligible Families leasing decent, safe and
sanitary units from the Owner.

## 1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS AND SCOPE OF CONTRACT.

(a) Effective Date of Contract:    October 1    , 1981.

(b) Fiscal Year: The ending date of each Fiscal Year shall be June 30
[Insert March 31, June 30, September 30
or December 31, as approved by HUD.] The Fiscal Year for the project
shall be the 12-month period ending on this date. However, the first
Fiscal Year for the project shall be the period beginning with the effective
date of the Contract and ending the last day of the Fiscal Year
which is not less than 12 months after the effective date. If the
first Fiscal Year exceeds 12 months, the maximum total annual housing
assistance payment in section 1.1(c) will be adjusted by the addition
of the pro r... amount applicable to the period of operation in excess
of 12 months.

_ent for housing assistance payments under this ... tract (see
...ction ( ) is $ 2,378,952 ... year. [Insert
...ount authorized under the ACC for housing assistance payments.]
This amount may be increased or decreased by appropriate amendment
in accordance with this Contract.

(d) Statement of Services, Maintenance and Utilities Provided by the Owner.
[This information may be made an additional Exhibit under paragraph (e).]

(1) Services and Maintenance:

(2) Equipment:

(3) Utilities:

See Exhibit 6

(f) Other:

(e) Contents of Contract. This Contract consists of Part I, Part II
(except as indicated in section 1.6), and the following exhibits:

Exhibit 1: The schedule showing the number of units by size
("Contract Units") and their applicable rents
("Contract Rents").

Exhibit 2: Daily Debt Service. [This exhibit shall be added when
necessary for purposes of section 2.4(d) of this
Contract or section 2.3(f) of the Agreement.]

Exhibit 3: The Affirmative Fair Housing Marketing Plan, if
applicable.

Exhibit 4: The Agreement to Enter Into Housing Assistance Payments
Contract (Agreement).

Exhibit 5: Project Description.

Additional exhibits: [Specify additional exhibits, if any, such as
Agreement for Completion, Statement of Services, Maintenance and
Utilities provided by Owner. If none, insert "None."]

Exhibit 6: Statement of Services, Maintenance and Utilities Provided by
Exhibit 7: Substantial Completion Certifications of Owner and IHDA
Exhibit 8: Pledge Agreement

(f) Percent of Units to be Leased to Very-Income Families. In the
initial renting of the Contract Units, the minimum percentage of
those units required to be leased to Very Low-Income Families
(see section 2.8(c)(3)) shall be ___thirty___ percent.

HUD-52645A (8-80)                    -3-

...ached incorporated by reference, co...lees ... the agreement
...ween Owner and the HFA with respect ... ...ets contained in
it. Neither Owner is bound by any representations or agreements of any
kind except as contained in this Contract, any applicable regulations,
and agreements entered into in this Contract. The parties which are not
inconsistent with this Contract.

(h)  Rights of Other Parties.  Except as specifically provided in this Contrac
     the parties hereto do not intend to give, vest or confer upon any parties
     not executing this Contract any rights, entitlements, benefits or causes
     of action hereunder, nor shall this Contract be construed to give rise in
     any fashion to such rights, entitlements, benefits or causes of action.

1.2  TERM OF CONTRACT; OBLIGATION TO OPERATE PROJECT FOR FULL TERM.

(a)  Initial Term.  The initial term of this Contract for any unit shall be
     20 years, unless sooner terminated with the approval of HUD.  The term
     shall commence with the effective date of this Contract for such unit.

(b)  Renewal Terms.  The Contract may be renewed for additional terms of
     not more than five years each, as follows.

          Renewal Term #1    ____5____  years.

          Renewal Term #2    ____5____  years.

          Renewal Term #3    ____5____  years.

          Renewal Term #4    ____5____  years.

     [Attach exhibit showing additional renewal terms, if necessary.]

     Renewals shall be automatic unless either party notifies the other
     in writing, no later than 60 days prior to the expiration of the
     current term, of its desire not to renew, and the other party agrees
     in writing that there shall be no renewal.

(c)  Maximum Total Term.  The total Contract term for any unit, including
     all renewals, shall not exceed the shorter of (1)  ____40____  years or
     (2) a period terminating on the date of the originally scheduled
     maturity date on the permanent financing.  [Insert in (1) a number
     of years equal to the maximum anticipated number of years during
     which assistance payments will be made, consistent with HUD regulations
     and requirements.]

(d)  Staged Completion.  If the project is completed in stages, the term
     shall be separately related to the units in each stage unless the
     HFA and the Owner agree that only the units in the first stage will
     be assisted for the maximum term of the Contract.  However, the total
     Contract term for the units in all stages, beginning with the effective
     date of the Contract for the first stage, shall not exceed the total
     Contract term stated in paragraph (c), plus two years.

(e)  Obligation to Operate Project in Accordance with Contract.  The Owner
     agrees to continue operation of the project in accordance with this
     Contract during the initial and any renewal terms.  This does not
     preclude the parties from agreeing not to renew.

1.3  ANNUAL CONTRIBUTIONS CONTRACT.

(a)  Identification of Annual Contributions Contract (ACC).  The HFA has enter
     into an ACC identified above with HUD for this project.  Under the ACC,
     HUD agrees to provide financial assistance to the HFA pursuant to section
     of the U.S. Housing Act of 1937 for the purpose of making housing assis-
     tance payments.  A copy of the ACC shall be provided upon request.

...ion of annual contributions payable under the ACC or the housi.g
...stan... ..ayments. The HFA shall not, ...hout ...onsent of the
...ner, a...ed or modify the ACC in any manner which ..ould reduce the
amount of the annual contributions, except as authorized in the ACC
and this Contract.

(c) HUD Assurance. The approval of this Contract by HUD is an assurance
by HUD to the Owner that:

(1) HUD has executed the ACC and the ACC has been properly authorized;

(2) The faith of the United States is solemnly pledged to the payment
of annual contributions pursuant to the ACC;

(3) HUD has obligated funds for these payments to assist the HFA in
the performance of its obligations under the Contract; and

(4) HUD and the HFA will not, without the consent of the Owner, amend
or modify the ACC in any manner which would reduce the amount of
annual contributions payable under it for housing assistance
payments except as authorized in the ACC and this Contract.

1.4 APPLICABILITY OF CERTAIN PROVISIONS OF THIS CONTRACT.    Applic.    Not Applic.

(a) 2.4(1). Payments to Trustee by HFA.
Applicability: Applies
where the Owner and the HFA request.    X

(b) [If the Contract Rents are adjusted under
section 2.4 of the Agreement, and either
section 2.7(f) or (g) of this Contract
has been checked "applicable" at the time of
execution of the Agreement, it should be
changed to "not applicable" when the
Contract is executed.]

(1) 2.7(f). Adjustment of Contract Rents
Based on Cost Certification.
Applicability: All projects
unless (1) the Contract Rents do
not exceed comparable rents; or
(2) the Contract Rents do not
exceed comparable rents by more
than 10 percent for Small and
Partially-Assisted Projects.    X

(2) 2.7(g). Adjustment of Contract Rents to
Reflect Actual Cost of Tax Exempt
Obligations. Applicability: All
projects using a set-aside and
constructed under Part 883,
Subpart D.    X

(c) 2.13. Training, Employment and Contracting
Opportunities. Applicability: All
projects for which the total initial
Contract Rents over the term of the
Contract including all renewals
exceed $500,000.    X

(d) 2.14. Flood Insurance. Applicability: All projects in special flood hazard areas. ____ X ____

(e) 2.15. Clean Air and Federal Water Pollution Control Acts. Applicability: All projects for which the total initial Contract Rents over the term of the Contract including all renewals exceed $100,000. X ____ ____

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER Preston Drive Limited Partners
By: Security Properties-'75, G P

By* Michael Utt

Attorney-In-Fact
(Official Title)

Date September 30, 1981

Approved:

United States of America
Secretary of Housing and
Urban Development

By*

Director Housing Division
(Official Title)

Date JAN 8 1982, 19__

HFA ILLINOIS HOUSING DEVELOPMENT AUTH

By* Kenneth B. Marshall

Manager-Production Services
(Official Title)

Date September 30, 1981

[If the project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages of this Contract.]

*Type name of signatory under signature line.

EXHIBIT 1

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS  1/

| Number of Bedrooms | Number of Units 2/ | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| One-Bedrooms | 30 | Elderly | $ 578 |
| Two-Bedrooms | 9 | Elderly | $ 681 |

Stage 1

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project i.e covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

...TRACT UNITS COMPLETED AND ACC... D IN ...S

Stage 1

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1a is OCTOBER 1, 1981.

Approved:

United States of America
Secretary of Housing and
Urban Development

By [signature]
*

Director Housing Division
(Official Title)

Date JAN 8 1982, 19____

OWNER Preston Drive Limited Partnership
By: Security Properties-'75, Gene... Pa...

By [signature]
* Michael Utt

Attorney-In-Fact
(Official Title)

Date SEPTEMBER 30, 1981

HFA Illinois Housing Development Auth...

By [signature]
* Kenneth B. Marshall

Manager-Production Services
(Official Title)

Date SEPTEMBER 30, 1981

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 2

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1b is ____________, 19____.

Approved:

United States of America
Secretary of Housing and
Urban Development

By ____________
*

____________
(Official Title)

Date ____________, 19____

*Type name of signatory under
signature line

OWNER ____________

By ____________
*

____________
(Official Title)

Date ____________, 19____

HFA ____________

By ____________
*

____________
(Official Title)

Date ____________, 19____

HUD-52645A (8-80)*

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES.

Stage 1

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1a is _____ 19__.

Approved:

OWNER

United States of America
Secretary of Housing and
Urban Development

By _____

By _____

_____
(Official Title)

Date _____ 19__

HFA _____

By _____

_____
(Official Title)

Date _____ 19__

_____
(Official Title)

Date _____ 19__

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 2

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1b is NOVEMBER 1 19 81.

OWNER BY: Security Properties-'75, General Part
Preston Drive United Limited Partnership

By Michael Utt

_____
(Official Title)
Attorney-In-Fact

Date OCTOBER 21 1981

Approved:

United States of America
Secretary of Housing and
Urban Development

By _____

_____
(Official Title)
Director Housing Management

Date FEB 8 1982

HFA Illinois Housing Development Authority

By Kenneth B. Marshall

_____
(Official Title)
Manager-Production Services

Date OCTOBER 21 1981

*Type name of signatory under
signature line

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 3

This Contract is hereby executed with respect to the units described in Exhibit 1c.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1c is JANUARY 1, 1982.

Approved:

United States of America
Secretary of Housing and
Urban Development

By* [signature]

Deputy Director, MFHD
(Official Title)

Date April 6, 1982

OWNER Preston Drive Limited Partnership
By: Security Properties-'75, General Part

By [signature]
* Michael Utt

Attorney-In-Fact
(Official Title)

Date December 30, 1981

HFA Illinois Housing Development Authority

By [signature]
* Kenneth B. Marshall

Manager-Production Services
(Official Title)

Date December 30, 1981

*Type name of signatory under signature line.

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 4

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1d is MAY 1, 1982.

Approved:

United States of America
Secretary of Housing and
Urban Development

By [signature]
*

DEPUTY DIRECTOR MFHD
(Official Title)

Date JULY 27, 1982

Preston Drive Limited Partnership
OWNER By: Security Properties-'75, General Part[ner]

By [signature]
* Michael Utt

Attorney-In-Fact
(Official Title)

Date APRIL 30, 1982

HFA Illinois Housing Development Authority

By [signature]
* Kenneth B. Marshall

Manager-Production Services
(Official Title)

Date APRIL 30, 1982

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 5

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1e is ______________, 19____.

Approved:

United States of America
Secretary of Housing and
Urban Development

By______________________
*

______________________
(Official Title)

Date______________, 19____

OWNER______________________

By______________________
*

______________________
(Official Title)

Date______________, 19____

HFA______________________

By______________________
*

______________________
(Official Title)

Date______________, 19____

*Type name of signatory under
signature line

HUD-52645A (8-80)*

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 4

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units des-
cribed in Exhibit 1d is _____, 19__

Approved:

United States of America
Secretary of Housing and
Urban Development

By _____
OWNER

_____
(Official Title)

_____   _____ 19__
Date

By _____
HFA

_____
(Official Title)

_____   _____ 19__
Date

By _____

_____
(Official Title)

_____   _____ 19__
Date

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 5

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units des-
cribed in Exhibit 1c is    June 1,    19 82

Approved:

United States of America
Secretary of Housing and
Urban Development

By _____

DEPUTY DIRECTOR MFHD
(Official Title)

Date    July 21    19 82

*Type name of signatory under
signature line

OWNER: Preston Drive Limited Partnership
By: Security Properties-'75, General Part..

By _____
Michael Utt

(Official Title)   Attorney-In-Fact

Date   MAY 21   19 82

HFA: Illinois Housing Development Authority

By _____
Kenneth B. Marshall

(Official Title)   Manager-Production Services

Date   MAY 21   19 82

HUD-52645A (8-80)    -5c-

# EXHIBIT 1

[1]

## SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS

[2]

| Number of Bedrooms | Number of Units | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| One-Bedrooms | 30 | Elderly | $ 578 |
| Two-Bedrooms | 9 | Elderly | $ 681 |

Stage 1

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

HUD-52645A (8-80) *     -6-

# EXHIBIT 1

## SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS

| Number of Bedrooms | Number of Units | Household Type (elderly, non-elderly family, large nonelderly family) [2] | Contract Rent |
|---|---|---|---|
| Efficiencies | 3 | Elderly | $ 495 |
| One-Bedrooms | 50 | Elderly | $ 578 |
| Two-Bedrooms | 18 | Elderly | $ 681 |

STAGE II

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

EXHIBIT 1 - C

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 3 | Elderly | $ 495 |
| One-Bedrooms | 80 | Elderly | $ 578 |
| Two-Bedrooms | 24 | Elderly | $ 681 |

Stage III

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

-9-                                HUD-52645A (8-80) *

# EXHIBIT 1-D

## SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 2 | Elderly | $ 495 |
| One-Bedrooms | 54 | Elderly | $ 578 |
| Two-Bedrooms | 16 | Elderly | $ 681 |

STAGE IV

FLOORS 2 AND 3 OF BUILDING 504

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

-6-

HUD-52645A (8-80)

EXHIBIT 1-E

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 1 | Elderly | $ 495 |
| One-Bedrooms | 26 | Elderly | $ 578 |
| Two-Bedrooms | 8 | Elderly | $ 681 |

STAGE V

FIRST FLOOR OF BUILDING 504

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREENLEAF LIMITED PARTNERSHIP

v.

ILLINOIS HOUSING DEVELOPMENT AUTHORITY

COMPLAINT

EXHIBIT 1 – Part II

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
STATE HOUSING AGENCIES

ML-74

## PART II OF THE

### HOUSING ASSISTANCE PAYMENTS CONTRACT

By and Between _____ ILLINOIS HOUSING DEVELOPMENT AUTHORITY _____ (HFA)

and _ Preston Drive Limited Partnership, an Illinois Limited Partnership _ (Owner

Check Type of Project: Constructed under Part 883,        Processed under Part 8
                       Subpart D, With or Without    or   881, Subparts C & D,
                       Set-Aside        X                 Using Set-Aside

                       New Construction _____  or Substantial Rehabilitation  X

SECTION 8 PROJECT NUMBER: _____ IL06-H121-180 _____

FHA PROJECT NUMBER (if applicable): _____ None _____

HFA PROJECT NUMBER: _____ ML-74 _____

**2.1 OWNER'S WARRANTIES; AMENDMENTS.**

(a) Legal Capacity. The Owner warrants that it has the legal right to
execute this Contract and to lease dwelling units covered by this
Contract.

(b) Completion of Work. The Owner warrants that the project as described
in section 1.1 is in good tenantable condition and that the project
has been completed in accordance with the terms and conditions of the
Agreement to Enter into Housing Assistance Payments Contract (Agreement)
or will be completed in accordance with the Agreement for Completion
(see attached exhibit, where applicable). The Owner further warrants
that it will remedy any defects or omissions covered by this warranty if
called to its attention within 12 months of the effective date of this
Contract. The Owner and the HFA agree that the continuation of this
Contract shall be subject to the Owner meeting the requirements of the
Agreement for Completion.

**2.2 FAMILIES TO BE HOUSED; HFA ASSISTANCE.**

(a) Families To Be Housed. The Contract Units are to be leased by the
Owner to eligible Lower-Income Families (Families) for occupancy
by such Families solely as private dwellings and as their principal
place of residence. (See also section 2.10.)

(b) HFA Assistance.

(1) The HFA hereby agrees to make housing assistance payments on
behalf of Families for the Contract Units, to enable the
Families to lease Decent, Safe, and Sanitary housing pursuant
to section 8 of the Act.

(2) If there is a Utility Allowance and if the Allowance exceeds the
total Family contribution, the Owner shall pay the Family the amount
of the excess. The HFA will pay funds to the Owner in trust solely
for the purpose of making this payment. Any pledge by the Owner of
payments properly payable under this Contract shall not be construed

Previous Edition Obsolete                              HUD-52645B (8-80)

include payments covered by th  parag.  (b)(2).  (See
24 CFR 883.602(e).)

2.3  MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

(a)  Maximum Annual Contract Commitment.  Notwithstanding any other
provisions of this Contract (other than paragraph (b) of this
section) or any provisions of any other contract between the HFA
and the Owner, the HFA shall not be obligated to make and shall not
make any housing assistance payments under this Contract in excess of
the amount identified in section 1.1(c).  However, this amount may
be reduced commensurately with any reduction in the number of Contract
Units or in the Contract Rents or pursuant to any other provisions of
this Contract (except reductions in Contract Rents pursuant to section
2.7(g)(2) to reflect lower than anticipated debt service).

(b)  Project Account.

(1)  A project account will be established and maintained by HUD,
consistent with its responsibilities under section 8(c)(6) of
the Act, as a specifically identified and segregated account
for the project.  The account will be established and maintained
in an amount determined by HUD, out of the amounts by which the
Maximum ACC Commitment (exclusive of any Financing Cost Contin-
gency) exceeds the amount actually paid out under the ACC each
year.  Payments will be made from this account for housing
assistance payments (and fees for HFA administration, if
appropriate) when needed to cover increases in Contract Rents
or decreases in tenant rents and for other costs specifically
approved by the Secretary.

(2)  If funds are available in the project account, the maximum
annual contribution otherwise payable for any fiscal year may
be increased by the amount, if any, as may be required for
increases reflected in the estimate of required annual
contribution applicable to that fiscal year as approved by
HUD in accordance with section 2.11 of the ACC.

(3)  Whenever a HUD-approved estimate of the required Annual Con-
tribution for a fiscal year exceeds the maximum ACC Commitment
then in effect (exclusive of any Financing Cost Contingency) and
would cause the amount in the project account to be less than
40 percent of the Maximum ACC Commitment, HUD will, within a
reasonable period of time, take such additional steps authorized
by section 8(c)(6) of the U.S. Housing Act of 1937 as may be
necessary to assure that payments under the ACC and the Contract
will be adequate to cover increases in Contract Rents and decreas
in rents payable by tenants, including (as provided in that secti
of the Act) "the reservation of annual contributions authority fo
the purpose of amending housing assistance contracts, or the allo
of a portion of new authorizations for the purpose of amending
housing assistance contracts."

(4)  Any amount remaining in the account after payment of the last
annual contribution with respect to the project shall be applied
by HUD in accordance with law.

2.4  HOUSING ASSISTANCE PAYMENTS TO OWNERS.

(a)  Housing Assistance Payments on Behalf of Families.

(1)  Housing assistance payments shall be paid to the Owner for
units under lease for occupancy by Families in accordance with



HUD-52645B (8-80)

r' Contract. The housing assist' paym' 1 cover the
t erence between the Contract R and t portion of the rent
payable by the Family as determined in accordance with the HUD-
established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of
a Family and the amount of rent payable by the Family shall
be subject to change by reason of changes in Family Income,
family composition, extent of exceptional medical or other
unusual expenses or program rules in accordance with the
HUD-established schedules and criteria; or by reason of a
change in any applicable Utility Allowance approved or
required by the HFA. Any such change shall be effective
as of the date stated in a notification of the change to
the Family, which need not be at the end of the Lease term.

(b) <u>Vacancies During Rent-up</u>. If a Contract Unit is not leased as of
the effective date of the Contract, the Owner is entitled to
housing assistance payments in the amount of 80 percent of the
Contract Rent for the unit for a vacancy period not exceeding 60
days from the effective date of the Contract, provided that the
Owner (1) commenced marketing and otherwise complied with section
2.2(d) of the Agreement, (2) has taken and continues to take all
feasible actions to fill the vacancy, including, but not limited to,
contacting applicants on its waiting list, if any, requesting the
HFA and other appropriate sources to refer eligible applicants, and
advertising the availability of the unit in a manner specifically
designed to reach eligible families, and (3) has not rejected any
eligible applicant, except for good cause acceptable to the HFA.

(c) <u>Vacancies after Rent-up</u>. If an eligible family vacates a unit, the
Owner is entitled to housing assistance payments in the amount of 80
percent of the Contract Rent for the first 60 days of vacancy if the
Owner:

(1) Certifies that it did not cause the vacancy by violating the
lease, the Contract or any applicable law or by moving a
Family to another unit;

(2) Notified the HFA of the vacancy or prospective vacancy and the
reasons for it immediately upon learning of the vacancy or
prospective vacancy;

(3) Has fulfilled and continues to fulfill the requirements
specified in the last sentence of section 2.2(d)(1) of the
Agreement and paragraphs (b)(2) and (3) of this section; and

(4) Certifies that any eviction resulting in a vacancy was
carried out in compliance with section 2.9.

(d) <u>Vacancies for Longer than 60 Days</u>. If an assisted unit continues
to be vacant after the period specified in paragraph (b) or (c) of
this section, the Owner may apply to receive additional payments
for the vacancy period in an amount equal to the principal and
interest payments required to amortize that portion of the debt
service attributable to the vacant unit (see Exhibit 2) for up
to 12 additional months for the unit if:

(1) The unit was in decent, safe and sanitary condition during
the vacancy period for which payments are claimed;

(2) The Owner has fulfilled and continues to fulfill the require-
ments specified in paragraph (b) or (c) of this section, as
appropriate; and



    (i) For the period of vacancy, the project is not providing the Owner with revenues at least equal to project expenses (exclusive of depreciation), and the amount of payments requested is not more that the portion of the deficiency attributable to the vacant unit, and

    (ii) The project can achieve financial soundness within a reasonable time.

(e) <u>Prohibition of Double Compensation for Vacancies</u>. The Owner is not entitled to payments for vacant units to the extent it can collect for vacancy from other sources (such as security deposits, other amounts collected from the Family, payments from the HFA under section 2.8(b), and governmental payments under other programs). If the Owner collects any of the Family's share of the rent for a vacancy period in an amount which, when added to the vacancy payment, results in more than the Contract Rent, the excess must be reimbursed as the HFA directs.

(f) <u>HFA Not Obligated for Family Rent</u>. The HFA has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with section 2.8(b) of this Contract. The financial obligation of the HFA is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

(g) <u>Owner's Monthly Requests for Payments</u>.

    (1) The Owner shall submit monthly requests to the HFA or as directed by the HFA for housing assistance payments. Each request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or number of each unit, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit 1 for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit (or, where applicable, the amount to be paid the Family in accordance with section 2.2(b)(2)); and (v) the total amount of housing assistance payments requested by the Owner.

    (2) Each of the Owner's monthly requests shall contain a certification by it that to the best of its knowledge and belief (i) the dwelling units are in decent, safe, and sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, (iv) none of the amount claimed has been previously claimed or paid under this Contract, and (v) the Owner has not received and will not receive any payments or other considerations from the Family, the HFA, HUD, or any other public or private source for the unit beyond that authorized in this Contract and the lease.

    (3) If the Owner has received an excessive payment, the HFA in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

HUD-52645B (8-80)

(4) The Owner's monthly requests for housing assistance payments a subject to penalty under 18 U. . 100. which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(h) Recoupment of Savings in Financing Cost.

(1) If interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months after the first year is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an appropriate amount reflecting the savings will be credited by HUD to the Project Account and withheld by the HFA from housing assistance payments payable to the Owner. If during the course of the same year there is any period of three months in which the debt service of the interim financing is greater than anticipated under the permanent financing, an adjustment will be made so that only the net amount of savings in debt service for the year is credited by HUD to the project account and withheld by the HFA from the Owner. No increased payments will be made to the Owner for any net excess for the year of the actual interim debt service over the anticipated debt service under the permanent financing. Nothing in this paragraph will be construed as requiring a permanent reduction in the Contract Rents or pre-cluding adjustments of Contract Rents in accordance with section 2.7.

(2) The computation and recoupment under this paragraph may be made on an annual, quarterly or other periodic basis, but no later than as of the end of each fiscal year. However, if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the HFA. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the debt service for the interim financing for the period is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph (h)(2)(i) is of the aggregate Contract Rents for all Contract Units for the period;

(iii) Apply the percentage found in paragraph (h)(2)(ii) to the aggregate Contract Rents for those Contract Units included in the Owner's claims for payments for the period; and

(iv) The amount found in paragraph (h)(2)(iii) shall be credited to the project account and withheld from the next housing assistance payment(s) to the Owner.

HUD-52645B (8-80)

(1) Payments to Trustee by HFA. (See section 1.4 for applicability of this paragraph.) The amount of the housing assistance payment determined in accordance with the provisions of this Contract, up to the amount of the mortgage repayments due the HFA from the Owner pursuant to the mortgage loan made by the HFA for the project, shall be credited to the Owner and transferred monthly by the HFA from the account maintained under the General Depositary Agreement pursuant to the ACC to the trustee under the note or bond resolution of the HFA under which the notes or bonds to provide the mortgage loan were issued. Any amount of the housing assistance payment in excess of such credit shall be paid by the HFA directly to the Owner.

## 2.5   MAINTENANCE, OPERATION AND INSPECTION.

(a)   Maintenance and Operation. The Owner agrees to maintain and operate the Contract Units, unassisted units, if any, and related facilities to provide Decent, Safe, and Sanitary housing including the provisions of all the services, maintenance and utilities set forth in section 1.1(d) or (e). The Owner also agrees to comply with the lead-based paint regulations at 24 CFR Part 35. If the HFA determines that the Owner is not meeting one or more of these obligations, the HFA shall have the right to take action under section 2.21(b).

(b)   Inspection.

(1)   Prior to occupancy of any Contract Unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed or approved by the HFA, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the forms. The Owner shall keep copies of these reports on file for at least three years.

(2)   The HFA shall inspect or cause to be inspected the Contract Units and related facilities at least annually and at such other times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting its obligation to maintain the units in Decent, Safe, and Sanitary condition including the provision of the agreed-upon utilities and other services. The HFA shall take into account complaints by occupants and any other information coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

(c)   Units Not Decent, Safe, and Sanitary. If the HFA notifies the Owner that it has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the HFA may exercise any of its rights or remedies under the Contract, including reduction or suspension of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with Section 8 assistance and the HFA does not have other section 8 funds for such purposes, the HFA may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. If the Family continues to occupy the unit, it will do so in accordance with the terms of its lease, including the termination date and amount of rent payable by the Family.

(d)   Notification of Abatement. Any reduction or suspension of housing assistance payments shall be effective as provided in written notification to the Owner. The Owner shall promptly notify the Family of any such abatement.

̶rr̶ ̶ded and Underoccupied Units.̶ ̶̶re th̶ ̶̶ determines a unit is l̶ ̶̶r or smaller than appropriate ̶ ̶ an ̶ ̶̶ible family, the Owner agrees to correct the situation in accordance with HUD regulations and requirements in effect at the time of the determination.

## 2.6   FINANCIAL REQUIREMENTS.

(a)   Submission of Financial and Operating Statements.

The Owner must submit to the HFA:

(1)   Within 60 days after the end of each fiscal year of the project, financial statements for the project audited by an Independent Public Accountant in a form approved by HUD, and

(2)   Other statements as to project operation, financial conditions and occupancy as the HFA may require pertinent to administration of the Contract and monitoring of project operations.

(b)   HFA Financial Records.  The HFA agrees to keep copies of annual financ̶ statements for 3 years and make them available to HUD upon request.

(c)   Use of Project Funds.  (Not applicable to Partially Assisted Projects.

(1)   Project funds must be used for the benefit of the project, to make mortgage payments, to pay operating expenses, to make required deposits to the replacement reserve in accordance with paragraph (d) of this section ̶.  .  To the extent the HFA determines that project funds are more than needed for these purposes, the surplus project funds must be deposited with the HFA, mortgagee or other HFA-approved depositary in an interest-bearing account.  Withdrawals from this account will be made only with the approval of the HFA and for project purposes, including the reduction of housing assistance payments.  Upon termination of the Contract, any excess funds must be remitted to HUD.

(2)   In the case of HUD-insured projects, the provisions of this paragraph (c) will apply instead of the otherwise applicable mortgage insurance requirements, except in the case of partially assisted, insured projects which are subject to the applicable mortgage insurance requirements.

(d)   Replacement Reserve.  (The HFA may exempt Partially-Assisted Projects constructed under Part 883, Subpart D from this paragraph.  All other Partially-Assisted Projects are exempt from this paragraph.)

(1)   The Owner shall establish and maintain, at the direction of the HFA, a replacement reserve in an interest-bearing account to aid in funding extraordinary maintenance and repair and replacement of capital items.  The account shall be established and maintained in a manner consistent with Section 883.703.

(i)   The obligation of the Owner to deposit into the replacement reserve shall commence upon the effective date of the Contract.  For staged projects, the obligation shall commenc̶ on a pro rata basis for units in each stage upon the effecti̶ date of the Contract for that stage.  For projects construct̶ under Part 883, Subpart D, the amount of this deposit may be adjusted each year by up to the amount of the automatic annual adjustment factor, as required by the HFA.  For all other projects, this amount must be adjusted each year by th̶ amount of the automatic annual adjustment factor.

HUD-52645B (8-80)

(x.)  approved amount, is maintained at a level
determined by the HFA to be sufficient to meet
requirements. Should the reserve achieve that level, the
rate of deposit to the reserve may be reduced with the
approval of the HFA.

(iii)  Funds will be held by the HFA, mortgagee or trustee for
the bondholders, as determined by the HFA, and may be
drawn from the reserve and used only in accordance with
HFA guidelines and with the approval of, or as directed
by, the HFA.

(2)  In the case of HUD-insured projects, the provisions of this
paragraph (d) will apply instead of the otherwise applicable
mortgage insurance requirements, except in the case of
partially-assisted, insured projects which are subject to the
applicable mortgage insurance requirements.

(e)  Limitation on Distributions.  (Paragraphs (e)(2)-(4) are not applicable
to Small or Partially Assisted Projects.)

(1)  Nonprofit owners are not entitled to distributions of project funds.

(2)  For the life of the Contract, project funds may only be distri-
buted to profit-motivated owners at the end of each fiscal year
of project operation following the effective date of the Contract
after all project expenses have been paid, or funds have been
set aside for payment, and all reserve requirements have been met.
The first year's distribution may not be made until cost certifi-
cation, where applicable, has been submitted to HUD.  The HFA may
permit distributions which do not exceed the following maximum
returns:

(i)  For projects for elderly families, the first year's
distribution will be limited to 6 percent on equity.
HUD may provide for increases in subsequent years'
distributions in accordance with applicable HUD
regulations.

(ii)  For projects for nonelderly families, the first year's
distribution will be limited to 10 percent on equity.
HUD may provide for increases in subsequent years'
distributions in accordance with applicable HUD regula-
tions.

(3)  For the purpose of determining the allowable distribution, an
Owner's equity investment shall be computed in accordance with
applicable HUD regulations.

(4)  Any short-fall in return may be made up from surplus project
funds (see paragraph (e)(1)) if permitted by the HFA in future
years in accordance with HFA requirements.

(5)  In the case of HUD-insured projects, the provisions of this
section will apply instead of the otherwise applicable
mortgage insurance program regulations, except in the case of
small and partially-assisted, insured projects which are
subject to the applicable mortgage insurance regulations.

-8-

HUD-52645B (8-80)

rendix Adjustments. Housing assist a pay s will be made in amounts commensurate with Contract Rent adjustments under this section up to the maximum amount authorized under section 2.3(a) of this Contract.

(b) Annual Adjustments.

(1) Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 880 and this Contract. See, however, paragraph (

(2) Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

(c) Special Additional Adjustments. Special additional adjustments shall be granted, to the extent determined necessary by the HFA and HUD, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, assessments, and utilities not covered by regulated rates. The Owner must demonstrate that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by annual adjustments. The Owner shall submit to the HFA supporting data, financial statements and certifications which clearly support the increase. See, however, paragraph (d).

(d) Overall Limitation. Notwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the HFA (and approved by HUD, in the case of adjustments under paragraph (c)); except to the extent that the differences existed with respect to the Contract Rents set at Contract execution or cost certification, where applicable.

(e) Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit 1 by a dated addendum to the exhibit establishing the effective date of the adjustment.

(f) Adjustment of Contract Rents based on Cost Certification. (See section 1.6 for applicability of this paragraph.)

(1) Submission by Owner. Within 90 days following the execution of the Contract (or execution of the Contract for the last stage of the project), the Owner must submit to the HFA a certification of cost. HFA may grant to the Owner two successive 90 day extensions for good cause for the submission of the cost certification. After each extension, HFA shall notify HUD of such extension and the basis for it. The Owner's cost certification must be consistent with HUD requirements and be supported by the unqualified opinion of an Independent Public Accountant.

(2) HFA Certification. Within 15 days of acceptance by the HFA of the Owner's cost certification, the HFA must certify to HUD that it has reviewed and approved the certified cost submitted by the Owner and must submit, with its certification, a summary of the Owner's cost certification. The HFA may impose its own cost certification requirements in addition to any required by HUD.

HUD-52645B (8-80)

HFA certification is less than the ~~t~~ ~~ear~~ accepted by
HUD a the Proposal, the Contract R~~ent~~s ~~il~~ reduced
accordingly.

(4) **Reduction of Maximum ACC Commitment.** If the Contract Rents
are reduced pursuant to paragraph (f)(3) of this section, the
Maximum ACC Commitment and the maximum annual Contract commit-
ment will be reduced. If Contract Rents are reduced based on
certification after Contract execution, any overpayment since
the effective date of the Contract will be recovered from the
Owner by the HFA and returned to HUD.

(g) **Adjustment of Contract Rents to Reflect Actual Cost of Tax Exempt Obli-
gations for Permanent Financing Issued by an HFA.** (See section 1.4 for
applicability of this paragraph.)

(1) **HFA Certification.** After the project is permanently financed, the
HFA shall submit a certification to HUD specifying the actual
financing terms.

(2) **Reduction of Contract Rents.** If the actual debt service to the
Owner under the permanent financing is lower than the anticipated
debt service on which the Contract Rents are based, due to lower
interest rates or to a longer term on the permanent financing,
the initial Contract Rents, or the Contract Rents then in effect,
must be reduced commensurately and the amount of the savings
credited to the project account.

(3) **Increase of Contract Rents.** If the actual debt service to the
Owner under the permanent financing is higher than the anticipated
debt service on which the Contract Rents are based, due to higher
interest rates or to a shorter term on the permanent financing,
the initial Contract Rents or the Contract Rents then in effect
shall, if sufficient contract and budget authority is available, be
increased commensurately. The amount of increase may not exceed
the amount of the Financing Cost Contingency (FCC) specified under
section 1.4(b) of the ACC but not reserved for the project at the
time the proposal was approved. The adjustment must not exceed
the amount necessary to reflect an increase in debt service (based
on the difference between the projected and actual terms of the
financing) resulting from an increase over the projected interest
rate of not more than:

(i) One and one-half percent if the projected override was
three-fourths of one percent or less, or

(ii) One percent if such projected override was more than three-
fourths of one percent but not more than one percent, or

(iii) One-half of one percent if such projected override was more
than one percent.

(4) **Increase in Maximum Annual Commitment.** If the Contract Rents have
been increased in accordance with paragraph (g)(3) of this section
the Maximum ACC Commitment and the maximum annual Contract commit-
ment shall be increased commensurately.

(h) **Adjustment of Contract Rents Due to Property Tax Exemption or Similar
Savings.** The Contract Rents may be reduced to reflect real property
tax exemption or similar savings where the initial Contract Rents were
approved on the assumption that the project would not receive the bene-
of tax abatement or similar savings. The Owner agrees to notify the
HFA in the event such a project begins to receive such an exemption or
similar savings so that the initial Contract Rents or the Contract Rents
then in effect may be reduced.

HUD-52645B/(8-80)

(a) <u>Compliance with Equal Opportunity Requirements.</u> Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's HUD-approved Affirmative Fair Housing Marketing Plan (if required), shown as Exhibit 3, and with all regulations relating to fair housing advertising. Projects shall be managed and operated without regard to race, color, religion, creed, sex, handicap, or national origin.

(b) <u>Security Deposits.</u> The Owner agrees to comply with the Part 883 regulations and requirements, as revised from time to time, regarding security deposits and to comply with all State and local law.

(c) <u>Eligibility, Selection and Admission of Families.</u>

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, computation of the amount of housing assistance payments on behalf of each selected Family and of total Family contributions and recordkeeping in accordance with applicable HUD regulations and requirements.

(2) The Owner shall not charge any applicant or assisted Family any amount in excess of the total Family contribution except as authorized by HUD.

(3) In the initial renting of the Contract Units, the Owner must lease at least that percentage of those units stated in section 1.1(h) to Very Low-Income Families (determined in accordance with HUD-established schedules and criteria). Thereafter the Owner shall exercise best efforts to maintain (or achieve and maintain) at least that percentage of occupancy of the Contract Units by Very Low-Income Families. In addition, at all times, the HFA will use its best efforts to achieve leasing by Owners to Families with a range of incomes so that the average of incomes of all Families in occupancy is at or above 40 percent of the median income in the area.

(4) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the HFA and be consistent with HUD regulations and requirements.

(5) (i) The Owner shall make a reexamination of Family income, composition, and the extent of medical or other unusual expenses incurred by the Family at least as often as required by HUD regulations or other requirements, and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with applicable regulations and requirements.

(ii) If a Family reports a change in income or other circumstances that would result in a decrease of total Family contribution between regularly scheduled reexaminations, the Owner, upon receipt of verification of the change, must promptly make appropriate adjustments in the total Family contribution. The Owner may require in its lease that Families report increases in income or other changes between scheduled reexaminations.

(iii) In connection with any reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families and what the average Family income is.

-11-

Income Families in occupa..., ., or t   average income is b  
40 percent of the median, the Owner shall report the fac  
to the HFA and shall adopt appropriate changes in its  
admission policies.

      (iv)  A Family's eligibility for housing assistance payments  
continues until its total Family contribution equals the  
total housing expense for the unit it occupies. The  
termination of eligibility at this point will not affect  
the Family's other rights under the lease nor preclude  
resumption of payments as a result of later changes in  
income or other circumstances during the term of this  
Contract.

    (6)  Where fewer than 100 percent of the units in the project are  
covered by this Contract, Families shall be dispersed throughout  
At initial rent-up, the Owner shall lease the units identified i  
Exhibit 1 to eligible families. Thereafter, the Owner may lease  
other units of appropriate size and type to eligible Families in  
accordanc  with Exhibit 1. For projects with units for both  
elderly and non-elderly Families, the respective family types  
may be grouped together.

    (7)  The Owner shall maintain as confidential all information relating  
to section 8 applicants and assisted Families, the disclosure  
of which would constitute an unwarranted invasion of personal  
privacy.

  (d)  Rent Redetermination after Adjustment in Utility Allowance.  In the  
event that the Owner is notified of a HFA determination approving or  
requiring an adjustment in the Utility Allowance applicable to any  
of the Contract Units, the Owner shall promptly make a corresponding  
adjustment in the amount of rent to be paid by the affected Families  
and the amount of housing assistance payments.

  (e)  Processing of Applications and Complaints.  The Owner shall process  
applications for admission, notifications to applicants, and complaint  
by applicants in accordance with applicable HUD and HFA regulations an  
requirements and shall maintain records and furnish such copies or  
other information as may be required by HUD or the HFA.

  (f)  Review; Incorrect Payments.  In making housing assistance payments  
to Owners, the HFA or HUD will review the Owner's determinations under  
this section. If as a result of this review, or other reviews, audits  
or information received by the HFA or HUD at any time, it is determined  
that the Owner has received improper or excessive housing assistance  
payments, the HFA or HUD shall have the right to deduct the amount of  
such overpayments from any amounts otherwise due the Owner, or otherwis  
effect recovery.

2.9  TERMINATION OF TENANCY OR SECTION 8 ASSISTANCE BY THE OWNER.

  The Owner agrees not to terminate any tenancy of or assistance on behalf  
of an assisted Family except in accordance with all HUD regulations and  
other requirements in effect at the time of termination, and any State  
and local law.

2.10  REDUCTION OF NUMBER OF UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

  (a)  Limitation on Leasing to Ineligible Families.  The Owner may not at  
any time during the term of this Contract lease more than 10 percent  
of the assisted units in the project to families which are ineligible  
under section 8 requirements at initial occupancy without the prior  
approval of HUD and the HFA.  Failure on the part of the Owner to

6

. . . . . . . . . . . . . . . . this provision is a violation of the . . . . . . . and grounds . . . al . . . ailable legal remedies, inclu . . } sper . . . performance of the Contra . . . suspension or debarment from h . . progr . . , and reduction of the number of units under the Contract, as set forth in paragraph (b) of this section. (See also section 2.21.)

(b) Reduction for Failure to Lease to Eligible Families. If, at any time, beginning six months after the effective date of the Contract, the Owner fails for a continuous period of six months to have at least 90 percent of the assisted units leased or available for leasing by families eligible under section 8 requirements at initial occupancy, the HFA and HUD may, upon at least 30 days' notice, reduce the number of units to the number of units actually leased or available for leasing, plus 10 percent (rounded up). This reduction, however, will not be made if the failure to lease units to eligible families is permitted in writing by the HFA and HUD under paragraph (a) of this section.

(c) Restoration. HUD will agree to an amendment of the ACC and the HFA may agree to amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph (b) of this section if:

   (1) HUD and the HFA determine that the restoration is justified by demand,

   (2) The Owner otherwise has a record of compliance with its obligations under the Contract, and

   (3) Contract authority is available. (HUD will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out its agreement.)

2.11 NONDISCRIMINATION.

   (a) General. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, national origin, or handicap.

   (b) Members of Certain Classes. The Owner shall not automatically exclude anyone from participation in, or deny anyone the benefits of, the Housing Assistance Payments Program because of membership in a class, such as unmarried mothers, recipients of public assistance, handi-, capped persons.

   (c) Title VIII of the Civil Rights Act of 1968. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, which prohibits discrimination in the sale, rental, financing and advertising of housing on the basis of race, color, religion, sex, or national origin, and any related rules and regulations.

   (d) Title VI of the Civil Rights Act of 1964 and Executive Order 11063. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, et seq.; the HUD regula- tions issued thereunder, 24 CFR, Subtitle A, Part 1; the HUD requireme pursuant to these regulations; and Executive Order 11063 and any regul tions and requirements issued thereunder, to the end that, in accordance with that Act, Executive Order 11063, and the regulatons a

HUD-52645B (8-80)

quir n ts of HUD, no person in the U   d Sta   all, on the
grounds . race, color, creed, or natio   origi   be excluded from
participation in, or be denied the benefits of, the Housing Assistance
Payments Program, or be otherwise subjected to discrimination.  This
provision is included pursuant to the regulations of HUD, 24 CFR,
Subtitle A, Part 1 issued under Title VI of the Civil Rights Act of
1964, HUD regulations issued pursuant to Executive Order 11063 and
the HUD requirements pursuant to the regulations.  The obligation of
the Owner to comply therewith insures to the benefit of the United
States of America, HUD, and the HFA, any of which shall be entitled
to invoke any remedies available by law to redress any breach or to
compel compliance by the Owner.

(e)  Section 504 of the Rehabilitation Act of 1973.  The Owner shall comply
with all the requirements imposed by section 504 of the Rehabilitation
Act of 1973, as amended, and any applicable rules and regulations.
Section 504 provides that no otherwise qualified handicapped person
shall, solely by reason of handicap, be excluded from participation
in, be denied the benefits of, or otherwise be subjected to discrimi-
nation under any program or activity receiving Federal financial
assistance.

(f)  Employees of Owner.

(1)  In carrying out the obligations under this Contract, the Owner
will not discriminate against any employee or applicant for employ-
ment because of race, color, creed, religion, sex, handicap or
national origin.  The Owner will take affirmative action to ensure
that applicants are employed, and that employees are treated during
employment, without regard to race, color, creed, religion, sex,
handicap or national origin.  Such action shall include, but not
be limited to, the following:  employment, upgrading, demotion, or
transfer; recruitment or recruitment advertising; layoff or termina
tion; rates of pay or other forms of compensation; and selection fo
training, including apprenticeship.

(2)  The Owner agrees to post in conspicuous places, available to
employees and applicants for employment, notices to be provided
by HUD setting forth the provisions of this nondiscrimination
clause.  The Owner will in all solicitations or advertisements
for employees placed by or on behalf of the Owner state that all
qualified applicants will receive consideration for employment
without regard to race, color, creed, religion, sex, handicap
or national origin.  The Owner will incorporate the foregoing
requirements of this paragraph in all of its contracts for pro-
ject work, except contracts for standard commercial supplies or
raw materials, and will require all of its contractors for such
work to incorporate such requirements in all subcontracts for
project work.

(g)  Age Discrimination Act of 1975.  The Owner shall comply with any rules
and regulations issued or adopted by HUD under the Age Discrimination
Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits
discrimination on the basis of age in programs and activities receiving
Federal financial assistance.

2.12  COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS.

The Owner and the HFA agree to cooperate with HUD in the conducting of
compliance reviews and complaint investigations pursuant to or permitted
by all applicable civil rights statutes, Executive Orders, and rules and
regulations.

(See section 1… for applic…ility this section.)

(a) The project assisted under this Contract is subject to the requirement of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 170lu. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

(b) Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of section 3 and the regulations issued by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract The requirements of the regulations include, but are not limited to, development and implementation of an affirmative action plan for utiliz business concerns located within, or owned in substantial part by perso residing in, the area of the project; the making of a good faith effort as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph (d) of this section in all contracts for work in connection with the project. The Owner certifies and agrees that it is under no contractual or other disability which would prevent it from complying with these requirements.

(c) Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders issued by HUD thereunder prior to execution of this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, its contractors and subcontractors, its successors and assigns. Failure to fulfill these requirements shall subject the Owner its contractors and subcontractors, its successors, and assigns to the sanctions specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

(d) The Owner shall incorporate or cause to be incorporated into any con-tract or subcontract for work pursuant to this Agreement in excess of $50,000 cost, the following clause:

EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 170lu. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area, and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B The parties to this Contract will comply with the provisions of section 3 and the regulations issued pursuant thereto by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

contractor will send each labo organiz  or representa-
tive of workers with which he has a collect  bargaining agreement
or other contract or understanding, if any, a notice advising the
labor organization or workers' representative of his commitments
under this section 3 clause and shall post copies of the notice
in conspicuous places available to employees and applicants for
employment or training.

"D  The contractor will include this section 3 clause in every sub-
contract for work in connection with the project and will, at
the direction of the applicant for or recipient of Federal
financial assistance, take appropriate action pursuant to the
subcontract upon finding that the subcontractor is in violation
of regulations issued by HUD, 24 CFR, Part 135.  The contractor
will not subcontract with any subcontractor where it has notice
or knowledge that the latter has been found in violation of
regulations under 24 CFR, Part 135, and will not let any
subcontract unless the subcontractor has first provided it
with a preliminary statement of ability to comply with the
requirements of these regulations.

"E  Compliance with the provisions of section 3, the regulations set
forth in 24 CFR, Part 135, and all applicable rules and orders of
HUD issued thereunder prior to the execution of the Housing
Assistance Payments Contract, shall be a condition of the Federal
financial assistance provided to the project, binding upon the
Owner, its contractors and subcontractors, it successors, and
assigns.  Failure to fulfill these requirements shall subject
the Owner, its contractors and subcontractors, its successors,
and assigns to those sanctions specified by the Housing
Assistance Payments Contract, and to such sanctions as are
specified by 24 CFR, Section 135.135."

(e)  The Owner agrees that it will be bound by the above section 3 clause
with respect to its own employment practices when it participates in
federally assisted work.

2.14  FLOOD INSURANCE.  (See section 1.4 for applicability.)

The Owner agrees that the project will be covered, during its anticipated
economic or useful life, by flood insurance in an amount at least equal to
its development or project cost (less estimated land cost) or to the maxi-
mum limit of coverage made available with respect to the particular type
of property under the National Flood Insurance Act of 1968, whichever is le

2.15  CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.  (See section 1.4 fo
applicability of this section.)

In compliance with regulations issued by the Environmental Protection Agenc
("EPA"), 40 CFR, Part 15, pursuant to the Clean Air Act, as amended ("Air
Act"), 42 U.S.C. 7401, et seq., the Federal Water Pollution Control Act, as
amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738,
the Owner agrees:

(a)  Not to utilize any facility in the performance of this Contract or any
nonexempt subcontractor which is listed on the EPA List of Violating
Facilities pursuant to section 15.20 of the regulations;

(b)  Promptly to notify the HFA of the receipt of any communication from th
EPA indicating that a facility to be utilized for the Contract is unde
consideration to be listed on the EPA List of Violating Facilities;

(c)  To comply with all the requirements of section 114 of the Air Act and
section 308 of the Water Act relating to inspection, monitoring, entry



-16-                                    HUD-52645B (8-80)

port and information, as well as all other documents specified in section 114 of the Air Act and section 308 of the Water Act, and all regulations and guidelines issued thereunder; and

(d) To include or cause to be included the provisions of this Contract in every nonexempt subcontract and take such action as HUD may direct as a means of enforcing such provisions.

2.16 REPORTS AND ACCESS TO PREMISES AND RECORDS.

(a) The Owner shall furnish any information and reports pertinent to this Contract as reasonably may be required from time to time by the HFA or HUD.

(b) The Owner shall permit the HFA or HUD or any of their duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.17 DISPUTES.

(a) Any dispute concerning a question of fact arising under this Contract which cannot be resolved by the HFA and the Owner may be submitted by either party to the HUD Field Office which will promptly make a decision and furnish a written copy to the Owner and the HFA.

(b) The decision of the Field Office will not be reviewable unless, within 30 calendar days from the date of receipt of the Field Office's determination, either party mails or otherwise furnishes to HUD a written appeal with written justification addressed to the Secretary of Housing and Urban Development. Both parties shall proceed diligently with the performance of the Contract and in accordance with the decision of the Field Office pending resolution of the appeal.

2.18 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF HFA OR PUBLIC HOUSING AGENCY (PHA), MEMBERS OF LOCAL GOVERNING BODY, OR OTHER PUBLIC OFFICIALS.

(a) No person or entity in the following classes shall have an interest, direct or indirect, in this Contract or in any proceeds or benefits arising from it, during his or her tenure or for one year thereafter.

(1) any member or officer of the HFA or PHA (if the PHA is the Owner), except where his or her interest is as tenant;

(2) (i) any employee of the HFA or PHA (if the PHA is the Owner), who formulates policy or influences decisions with respect to the section 8 project;

(ii) any other employee of the HFA or PHA (if the PHA is the Owner), except where his or her interest is as a tenant;

(3) any member of the governing body or the executive officer of the locality (city or county) in which the project is situated;

(4) any other State or local public official (including State legislators), who exercises any functions or responsibilities with respect to the section 8 project;

a personal interest in the p____ct, f____ ____ng an interest b____ ____son of membership on the boards of the ____ under this Contrac (except an employee who does not formulate policy or influence decisions with respect to the section 8 project may have an int____ as a tenant).

(b) If any member of the classes described in paragraph (a) involuntaril____ acquires an interest in the section 8 program or in a section 8 proj____ or had acquired prior to the beginning of his or her tenure any such interest, and if such interest is immediately disclosed to the HFA and the disclosure is entered upon the minutes of the HFA, the HFA, with the prior approval of the HUD Field Office, may waive the prohi____ contained in this section. Any other requests for waivers of paragra____ (a) must be referred to the HUD Headquarters, with appropriate recom____ tions from the Field Office, for a determination of whether a waiver will be granted.

(c) No person to whom a waiver is granted by the HFA or HUD shall be per- mitted (in his or her capacity as member of a class described in paragraph (a)) to exercise responsibilities or functions with respect to an Agreement or a Contract executed, or to be executed, on his or her behalf, or with respect to an Agreement or a Contract to which th____ person is a party.

(d) The Owner shall insert in all contracts, subcontracts, and arrangement____ entered into in connection with the project or any property included ____ planned to be included in the project, shall require its contractors and subcontractors to insert in each of the subcontracts, the provisio____ of paragraphs (a) through (d).

(e) The provisions of paragraphs (a) through (d) of this section shall not____ apply to (1) a utility service if the rates are fixed or controlled by____ governmental agency, (2) the Depositary Agreement, or (3) a temporary management agreement between the HFA and the Owner which meets the requirements of 24 CFR 883.702(c).

## 2.19 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS.

No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contra____ or to any benefits which may arise from it.

## 2.20 ASSIGNMENT, SALE OR FORECLOSURE.

(a) The Owner agrees that it has not made and will not make any sale, assignment, or conveyance or transfer in any fashion, of this Contract, the Agreement, the ACC, or the project or any part of them or any of it____ interest in them, without the prior written consent of the HFA and HUD.

(b) The Owner agrees to notify the HFA and HUD promptly of any proposed action covered by paragraph (a) of this section. The Owner further agrees to request the written consent of the HFA and of HUD.

(c) (1) For purposes of this section, a sale, assignment, conveyance, or transfer includes but is not limited to one or more of the following:

(i) A transfer by the Owner, in whole or in part,

(ii) A transfer by a party having a substantial interest in the Owner,

HUD-52645B (8-80)

.) Transfers by more than one party of interests aggregating a substantial interest in the Owner,

(iv)   Any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution of interests by any other method or means, and

(v)    Any refinancing by the Owner of the project.

(2)  An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.  An assignment by one or more general or limited partners of a limited partnership interest to a limited partner, who will have no more than a 25 percent interest, shall not be considered an assignment, conveyance, or transfer.

(3)  The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(d)  The Owner and the party signing this Contract on behalf of the Owner represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect to it.

(e)  Except where otherwise approved by HUD, the ACC, the Agreement and this Contract shall continue in effect and housing assistance payments will continue in accordance with the terms of the Contract in the event

(1)  Of assignment, sale, or other disposition of the project or the Agreement, Contract or the ACC,

(2)  Of foreclosure, including forclosure by HUD or the HFA,

(3)  Of assignment of the mortgage or deed in lieu of foreclosure,

(4)  The HFA or HUD takes over possession, operation or ownership, or

(5)  The Owner prepays the mortgage.

2.21  DEFAULTS BY HFA AND/OR OWNER.

(a)  Rights of Owner if HFA Defaults under Contract.

(1)  Events of Default.  The occurrence of any of the following events, if the Owner is not in default, is defined as a default under the ACC:

(i)    If the HFA fails to perform or observe any term or condition of this Contract (except as provided in paragraph (a)(1)(v));

(ii)   If the Contract is held to be void, voidable, or ultra vires;

(iii)  If the power or right of the HFA to enter into the Contract is drawn into question in any legal proceeding;

(iv)   If the HFA asserts or claims that the Contract is not binding upon the HFA for any such reason; or



required by section 2.4 of Contı , unless HUD has substantially delayed annual contributions provided for under section 1.4 of the ACC.

(2) Owner Request for HUD Determination of Default.

If the Owner believes that an event as specified in paragraph (a)(1 has occurred, and the Owner is not in default, the Owner may, withi 30 days of the initial occurrence of the event:

(i)   Notify HUD of the occurrence of the event;

(ii)  Provide supporting evidence of the default and of the fact that the Owner is not in default; and

(iii) Request HUD to determine whether there has been a default.

(3) HUD Determination of Default and Curing of Default.

HUD, after notice to the HFA giving it a reasonable opportunity to take corrective action, or to demonstrate that it is not in default, shall make a determination whether the HFA is in default and whether the Owner is not in default. If HUD determines that the HFA is in default and that the Owner is not, HUD shall take appropriate action to require the HFA to cure the default. If necessary for the prompt continuation of the project, HUD shall assume the HFA's right and obligations under the Contract, includin, any funds. HUD shall continue to pay annual contributions with respect to the units covered by this Contract in accordance with the ACC and this Contract until reassigned to the HFA. All rights and obligations of the HFA assumed by HUD will be returned as constituted at the time of the return:

(i)   When HUD is satisfied that all defaults have been cured and that the project will thereafter be administered in accordance with all applicable requirements, or

(ii)  When the Contract is at an end, whichever occurs sooner.

(4) Enforcement by Owner. The provisions of this paragraph (a) are made for the benefit of the Owner, the lender, and the Owner's assignees, if any, who have been specifically approved by HUD prior to the assignment. These provisions shall be enforceable by these parties against HUD by suit at law or in equity.

(b) Rights of HFA and HUD if Owner Defaults under Contract.

(1) Events of Default. A default by the Owner under this Contract shall result if:

(i)   The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease, including failure to correct any deficiencies identified by the HFA or HUD in connection with any annual or other inspection; or

(ii)  The Owner has asserted or demonstrated an intention not to perform some or all of its obligations under this Contract or under any Lease; or

(iii) For projects with mortgages insured by HUD, the Owner has violated or failed to comply with the regulations for the applicable insurance program, with the insured mortgage, or with the regulatory agreement; or the Owner has filed any



HUD-52645B (8-80)

false statement or misrepresentation to HUD in connection with the mortgage insuran...

(2) <u>HFA Determination of Default</u>. Upon determination by the HFA th... default has occurred, the HFA shall notify the Owner and the le... (if other than the HFA) with a copy to HUD, of

    (i)    The nature of the default,

    (ii)   The actions required to be taken and the remedies to be applied on account of the default, and

    (iii)  The time within which the Owner and/or the lender shall respond with a showing that all the required actions have been taken.

If the Owner and/or lender fail to respond or take action to the satisfaction of the HFA, the HFA shall have the right to take corrective action to achieve compliance, in accordance with para (b)(3) or to terminate this Contract with HUD approval, in whole or in part, or to take other corrective action to achieve compli in its discretion, or as directed by HUD.

(3) <u>Corrective Action</u>. Pursuant to paragraph (b)(2) of this section the HFA, in its discretion or as directed by HUD, may take the following corrective actions:

    (i)    Take possession of the project, bring any action necessary to enforce any rights of the Owner growing out of the project operation, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operat the project in accordance with this Contract. If the HFA takes possession, housing assistance payments shall contin in accordance with the Contract.

    (ii)   Collect all rents and charges in connection with the operation of the project and use these funds to pay the necessary expenses of preserving the property and operating the project and to pay the Owner's obligations under the no and mortgage or other loan documents.

    (iii)  Apply to any court, State or Federal, for specific per- formance of this Contract, for an injunction against any violation of the Contract, for the appointment of a receiver to take over and operate the project in accordance with the Contract, or for such other relief as may be appropriate. These remedies are appropriate since the injury to the HFA and/or HUD arising from a default under any of terms of this Contract could be irreparable and the amount of damage would be difficult to ascertain.

    (iv)   Reduce or suspend housing assistance payments.

    (v)    Recover any overpayments.

(4) <u>HUD's Rights</u>.

    (i)    Notwithstanding any other provisions of this Contract, in the event HUD determines that the Owner is in default of its obligations under the Contract, HUD shall have the right, after notice to the Owner, the HFA, the lender (if other than the HFA), and the trustee, if any, giving them a



HUD-52645B (8-80)

reasonable opportunity to take correct action, to proceed in accordance with paragraph (b)(3).

(ii)     In the event HUD takes any action under this section, the Owner and the HFA hereby expressly agree to recognize the rights of HUD to the same extent as if the action were taken by the HFA.  HUD shall not have the right to terminate the Contract except by proceeding in accordance with paragraphs (b)(1), (2), and (3) of this section and with section 2.16(b) of the ACC.

(c)   Remedies Not Exclusive and Non-Waiver of Remedies.  The availability of any remedy under this Contract or the ACC, where applicable, shall not preclude the exercise of any other remedy under this Contract or the ACC or under any provisions of law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies.  Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

HUD-52645B (8-80)