**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREENLEAF LIMITED PARTNERSHIP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-02480 |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ANSWER**

Defendant Illinois Housing Development Authority ("IHDA") makes the following answer to the Complaint:

1.  Plaintiff is the owner of a multifamily rental housing project that is assisted under the U.S. Department of Housing and Urban Development ("HUD") project-based Section 8 Program. Under the project-based Section 8 Program, HUD makes rental assistance payments, called annual contributions, to a public housing agency ("PHA") such as the Defendant, Illinois Housing Development Authority ("IHDA"), in accordance with an Annual Contributions Contract between HUD and the PHA. The PHA, in turn, remits a portion of the annual contributions it receives from HUD to the owner of a project, such as Plaintiff, in the form of housing assistance payments pursuant to a Housing Assistance Payments ("HAP") Contract between the PHA and the owner for the purpose of reducing the amount of rent paid by the tenants who live in the units covered by the HAP Contract.

**ANSWER:**     IHDA admits that Plaintiff is the owner of a multifamily rental housing project that is assisted under the project-based Section 8 program.  The remainder of Paragraph 1 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 1.

2.  In accordance with the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled to an annual increase in the rents payable under the Contract. IHDA has not increased the rents payable under the HAP Contract between Plaintiff and IHDA in accordance with the terms of the Contract since 1994. The failure by IHDA to increase the rents constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    The HAP Contract between Plaintiff and IHDA speaks for itself regarding Plaintiff's entitlement to annual rent increases.  IHDA avers that, as the Contract Administrator for Section 8 HAP Contracts, it is obliged to follow the requirements and directives of the U.S. Department of Housing and Urban Development ("HUD") with respect to making rent increases under those contracts.  IHDA further avers that, since 1994, it has increased or not increased the rents payable under its HAP Contract with Plaintiff in accordance with HUD regulations and directives.  The remainder of Paragraph 2 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 2.

**JURISDICTION AND VENUE**

3.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

**ANSWER:**    Admitted.

4.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

**ANSWER:**    Admitted.

**PARTIES**

5.    Plaintiff is a limited partnership formed under the laws of Illinois. Plaintiff is the owner of Greenleaf Apartments, a 321-unit multifamily rental housing project located in Bolingbrook, Illinois

**ANSWER:**    IHDA admits that Greenleaf Apartments is a 321-unit multifamily rental housing project located in Bolingbrook, Illinois.  IHDA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 and, therefore, denies same.

6.    Defendant was created under the laws of Illinois. Defendant is a State Agency, as defined by 24 C.F.R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937. 42 U.S.C. § 1437a.

**ANSWER:**    Admitted.

2

## FACTS

### The Section 8 Program

7.    This action arises under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"). Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing. Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

**ANSWER:**    Admitted.

8.    Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA. An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to the HAP Contract between the PHA and the owner. The monthly housing assistance payments by the PHA to the owner benefit the low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

**ANSWER:**    Admitted.

9.    HUD has implemented Section 8 through several distinct programs. One such program is the Section 8 Program for State Housing Agencies. Greenleaf Apartments was built, and is managed, under HUD's Section 8 Program for State Housing Agencies.

**ANSWER:**    Admitted.

10.    The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

**ANSWER:**    Admitted.

11.    A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract." 24 C.F.R. § 883.302 (2007).

**ANSWER:**    Admitted.

12.    A Section 8 HAP Contract establishes a contract rent ("Contract Rent") for each unit covered by the HAP Contract. The amount of the monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount the tenant is required by law to pay as rent.

**ANSWER:**    Admitted.

13.    Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract. 24 C.F.R. § 888.201(2007). HUD is required to publish these adjustment factors in the Federal Register at least annually. 24 C.F.R. § 888.202 (2007).

**ANSWER:**    IHDA denies the allegations of Paragraph 13, except admits that under certain of HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents, and that HUD is required to publish these adjustment factors by notice in the Federal Register at least annually.

14.    In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Greenleaf Apartments, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area." P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**    Admitted.

15.    In that same Act, Congress further revised Section 8 by requiring that for the units in a project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0. P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**    Admitted.

16.    These two revisions to Section 8 were originally effective for Fiscal Year 1995 only. The provisions were made permanent beginning with Fiscal Year 1999.

**ANSWER:**    Admitted.

17.    On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 revisions to Section 8 contained in HUD's FY 1995 Appropriations Act.

**ANSWER:**    Admitted.

18.    In accordance with Notice 95-12 and subsequent Notices issued by HUD to further implement the 1994 revisions to Section 8, in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required, when the Contract Rents exceed the applicable Fair Market Rents published by HUD, to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 at least sixty days before the anniversary date of the owner's HAP Contract.

**ANSWER:**    Admitted.

19.    The purpose of form HUD-92273 is to calculate the estimated market rent for a project's units.  If a project's Contract Rents, as adjusted by the applicable annual adjustment factor, are less than the rent calculated on Form-92273, an owner is entitled to the full increase.

**ANSWER:**    IHDA admits that the purpose of Form 92273 is to calculate the estimated market rent for a project's units.  The remainder of Paragraph 19 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 19.

20.    If a project's rents, as adjusted by the applicable annual adjustment factor, are greater than the estimated market rent calculated on Form-92273, then additional calculations are required to ensure that the difference between a project's initial Contract Rents and the rent for a comparable unassisted unit on the effective date of a project's HAP Contract is preserved.

**ANSWER:**    Paragraph 20 contains legal conclusions as to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 20.

### Greenleaf Apartments

21.    Greenleaf Apartments was built under HUD's Section 8 Program for State Housing Agencies. The project consists of 9 efficiencies, 240 one-bedroom units and 72 two-bedroom units.

**ANSWER:**    Admitted.

22.    The original  owner of Greenleaf Apartments was Preston Drive Limited Partnership ("Preston"), an Illinois limited partnership.  In 2002, Preston sold Greenleaf Apartments to Plaintiff.

**ANSWER:**  IHDA is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and, therefore, denies same.

23.    Preston entered into a HAP Contract (the "Greenleaf Contract") with IHDA. A copy of the Contract is attached as Exhibit 1.  HUD signed and approved the Greenleaf Contract. Ex. 1, pp. 5, 5a, 5b and 5c.

**ANSWER:**    Admitted.

24.    There are five stages to the Greenleaf Contract.

**ANSWER:**    Admitted.

25.    The effective date of Stage I of the Greenleaf Contract was October 1, 1981.  Stage I covers 30 one-bedroom and 6 two-bedroom units.

**ANSWER:**    Admitted.

26.    The effective date of Stage II was November 1, 1981. Stage II covers three efficiencies, 50 one-bedroom and 18 two-bedroom units.

**ANSWER:**    Admitted.

27.    The effective date of Stage III was January 1, 1982. Stage III covers three efficiencies, 80 one-bedroom and 24 two-bedroom units.

**ANSWER:**    Admitted.

28.    The effective date of Stage IV was May 1, 1982. Stage IV covers efficiencies, 54 one-bedroom and 16 two-bedroom units.

**ANSWER:**    Admitted.

29.    The effective date of stage V was June 1, 1982. Stage V covers 1 efficiency, 26 one-bedroom and 8 two-bedroom units.

**ANSWER:**    Admitted.

30.    In May 2002, Preston assigned all of its right, title and interest in the Greenleaf Contract to Plaintiff.  HUD and IHDA approved the assignment of the Greenleaf Contract from Preston to Plaintiff in 2002.

**ANSWER:**    Admitted.

31.    The initial term of the Greenleaf Contract was twenty years. Ex. 1, ¶1.2a. The Greenleaf Contract is automatically renewable for four additional 5-year terms unless either party to the Greenleaf Contract notifies the other party of its desire not to renew the

Contract in writing at least sixty days prior to the expiration of the current term of the Contract and the other party agrees in writing to the non-renewal. Ex. 1, ¶1.2(b).

**ANSWER:** The Greenleaf Contract speaks for itself regarding its initial term and renewal provisions, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 31.

32.    The Greenleaf Contract states, "Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." Ex. 1, ¶ 2.7(b)(l).  The "anniversary date of the Contract" between Plaintiff and IHDA is the effective date of each stage of the Contract.  Accordingly, there are five anniversary dates, one for each stage, on which IHDA is required under the Greenleaf Contract to increase the Contract Rents at Greenleaf Apartments for the units covered by that stage.

**ANSWER:** The Greenleaf Contract speaks for itself regarding annual rent increases, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 32.

33.    The initial Contract Rent for the efficiencies at Greenleaf Apartments was $495.  For the one-bedroom and two-bedroom units at Greenleaf Apartments, the initial Contract Rent was $578 and $681, respectively.

**ANSWER:** Admitted.

34.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually by IHDA, as required by the Greenleaf Contract.  There has been only one increase to the Contract Rents at Greenleaf since notice 95-12 was issued. That increase was effective on October 1, 2002 and was applicable to all the units at Greenleaf Apartments.

**ANSWER:** IHDA admits that, before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually.  IHDA further admits that there has been only one increase to the Contract Rents at Greenleaf Apartments since Notice 95-12 was issued; that increase was effective on October 1, 2002, and applied to all the units at Greenleaf Apartments. The remainder of Paragraph 34 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 34.

## COUNT I - BREACH OF CONTRACT

### (Failure to Adjust Contract Rents)

35.    Plaintiff repeats and realleges paragraphs 1-34.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-34.

36.    Under the Greenleaf Contract, Plaintiff is, and has been, entitled, on the anniversary date of each stage of the Contract, to an increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents for the units covered by each stage.

**ANSWER:**    Paragraph 36 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 36.

37.    Contrary to the terms of the Greenleaf Contract, IHDA has not increased the Contract Rents at Greenleaf Apartments annually, as required by the HAP Contract, since HUD issued Notice 95-12. In addition, the October 1, 2002 increase to the Contract Rents at Greenleaf Apartments approved by IHDA was less than the amount required by the Greenleaf Contract.

**ANSWER:**    Paragraph 37 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 37.

38.    IHDA's failure, since HUD issued Notice 95-12, to increase the Contract Rents at Greenleaf Apartments, in accordance with terms of the Greenleaf Contract, constitutes a breach of the Greenleaf Contract.

**ANSWER:**    Paragraph 38 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 38.

39.    This breach by IHDA of the Greenleaf Contract has damaged Plaintiff by reducing the Contract Rents that are required under the Contract which, in turn, has reduced the amount of housing assistance payments to which Plaintiff is entitled under the Greenleaf Contract.

**ANSWER:**    Paragraph 39 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 39.

## COUNT II-BREACH OF CONTRACT

### (Reduction in Annual Adjustment Factors)

40.    Plaintiff repeats and realleges paragraphs 1-39.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-39.

41.    Since Notice 95-12 was issued, HUD has published two tables of annual adjustment factors when HUD published the factors in the Federal Register. Table I was applicable to turnover units, i.e. units that were occupied by a family different from the family that occupied the unit at the time of a project's previous annual rent increase. Table 2 was applicable to non-turnover units, i.e. units that were occupied by the same family as the family that occupied the unit at a project's previous annual rent increase. Table 2 reduced the adjustment factors in Table 1 by .01, except no factor was reduced below 1.0

**ANSWER:**    Admitted.

42.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment factors otherwise applicable to Section 8 projects, including the adjustment factors applicable to Greenleaf Apartments, by .01 for non-turnover units.

**ANSWER:**    IHDA denies the allegations of Paragraph 42, except admits that, since Notice 95-12 was issued, the annual adjustment factor it has applied to Section 8 projects, including Greenleaf Apartments, for non-turnover units has been .01 lower than the adjustment factor for comparable turnover units.

43.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at Greenleaf Apartments constitutes a breach of the Greenleaf Contract and damages Plaintiff by reducing the Contract Rents, and the housing assistance payments, to which Plaintiff is entitled under the Greenleaf HAP Contract.

**ANSWER:**    Paragraph 43 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 43.

## COUNT III-BREACH OF CONTRACT

### (Rent Comparability Study)

44.    Plaintiff repeats and realleges paragraphs 1-43.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-43.

45.    IHDA requires Plaintiff, and owners of other Section 8 projects, to submit a Rent Comparability Study, prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at Greenleaf Apartments.

**ANSWER:**    IHDA denies the allegations of Paragraph 45, except admits that, pursuant to the procedures set forth in Notice 95-12, it requires Plaintiff to submit a Rent Comparability Study, prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at Greenleaf Apartments.

46.    In 2002 Plaintiff submitted a Rent Comparability Study in connection with a rent increase request submitted by Plaintiff to IHDA.

**ANSWER:**    Admitted.

47.    No provision of Plaintiff's HAP Contract with IHDA requires Plaintiff to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiff is entitled under the Greenleaf Contract.

**ANSWER:**    The provisions of Plaintiff's HAP Contract speak for themselves regarding whether they require a Rent Comparability study as a condition for an annual rent increase, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 47.

48.    The requirement to submit a Rent Comparability Study imposed by IHDA on Plaintiff constitutes a breach of the Greenleaf Contract.

**ANSWER:**    Paragraph 48 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 48.

49.    Plaintiff has been damaged by this breach of the Greenleaf Contract by IHDA through the cost incurred by Plaintiff in obtaining the Rent Comparability Study submitted by Plaintiff to IHDA.

**ANSWER:**    Paragraph 49 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 49.

## **DEFENSES**

1.    The Complaint fails to state a claim upon which relief may be granted.

2.    The Complaint is barred by the applicable statutes of limitations, as well as the doctrine of laches.

Respectfully submitted.

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC # 6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Answer** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Martin Durkin
Martin Durkin

## CERTIFICATE OF SERVICE

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Answer** via

U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448


> /s/ Martin Durkin
> Martin Durkin