## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GREENLEAF LIMITED PARTNERSHIP )
)
        Plaintiff, )
)          Case No. 1:08-cv-02480
v. )          Honorable Virginia M. Kendall
)
ILLINOIS HOUSING DEVELOPMENT )
AUTHORITY )
)
        Defendant and )
        Third-Party Plaintiff, )
)
v. )
)
ROY BERNARDI, )
Acting Secretary, United States Department )
of Housing and Urban Development, )
)
        Third-Party Defendant. )

### MEMORANDUM IN SUPPORT OF PLAINTIFF AND DEFENDANT'S
### JOINT MOTION FOR REASSIGNMENT OF RELATED CASE

    Plaintiff Greenleaf Limited Partnership ("Greenleaf") and Defendant Illinois Housing

Development Authority ("IHDA"), pursuant to Local Rule 40.4, jointly move this Court for an

Order reassigning *Sandburg Village Apartments v. Illinois Housing Development Authority*

*(Case No. 08-cv-03446)* now pending before Judge Ronald A. Guzman, to the calendar of Judge

Virginia M. Kendall. In support of this Motion, the parties state as follows:

#### Summary of Argument

    Local Rule 40.4 allows for the reassignment of cases on the basis of relatedness where

the cases involve some of the same issues of fact or law and, *inter alia*, where reassigning the

cases to a single Judge will result in a substantial saving of judicial time and effort. The present

case, *Greenleaf Limited Partnership v. Illinois Housing Development Authority* ("the Greenleaf

Case"), is substantially related to *Sandburg Village Apartments v. Illinois Housing Development Authority* ("the Sandburg Case") such that assigning the cases to Judge Virginia M. Kendall will result in substantial savings of judicial time and effort. The Greenleaf Case and the Sandburg Case both involve nearly identical claims for rent adjustment and related damages against IHDA arising under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

### The Related Cases

Greenleaf filed its Complaint against IHDA on April 30, 2008. The Greenleaf Case has been assigned to Judge Virginia M. Kendall. The parties have since filed a Joint Status Report and the initial status hearing is scheduled for August 20, 2008.

Plaintiff Sandburg Village Apartments, an Illinois Limited Partnership ("Sandburg"), filed its substantially related Complaint against IHDA on June 16, 2008. The Sandburg Case has been assigned to Judge Ronald A. Guzman and initial status hearing has been set for August 20, 2008.

Counsel for IHDA filed appearances, and IHDA filed its Answers to Greenleaf's and Sandburg's respective Complaints, on July 28, 2008. Copies of IHDA's Answers to the Greenleaf and Sandburg Complaints are attached hereto as Exhibits A and B, respectively.

Also on July 28, IHDA filed its Third Party Complaints against Roy Bernardi, as Acting Secretary of the United States Department of Housing and Urban Development ("HUD"). Copies of IHDA's respective Third Party Complaints in the Greenleaf Case and the Sandburg Case are attached hereto as Exhibits C and D.

### Argument

For a case to be reassigned based on relatedness, the moving party must demonstrate that the cases are related under Local Rule 40.4(a) and that reassignment is appropriate pursuant to

Local Rule 40.4(b). *Teacher's Retirement System of Louisiana v. Conrad N. Black, et al.*, No. 04 C 834, 2004 WL 1244236, at *2 (N.D. Ill. May 27, 2004).

Local Rule 40.4(a)(2) provides that two civil cases may be reassigned on the basis of relatedness if "the cases involve some of the same issues of fact or law."

Once two cases are deemed related, Local Rule 40.4(b) permits cases to be reassigned if the following criteria are met:

> (1) both cases are pending in this Court;
>
> (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
>
> (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
>
> (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b).

The Greenleaf Case and the Sandburg Case are related under Local Rule 40.4(a)(2) because they involve nearly identical claims against IHDA under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8").

Specifically, the Greenleaf and Sandburg Complaints both allege that:

> a) Each owns a Section 8-assisted, multifamily rental housing project in Illinois (Ans. to Greenleaf Compl., ¶ 1; Ans. to Sandburg Compl., ¶ 1);
>
> b) Pursuant to Housing Assistance Payments Contracts ("HAP Contracts") between the Plaintiffs and IHDA, IHDA makes monthly housing assistance payments to Greenleaf and Sandburg on behalf of tenants residing at Plaintiffs' respective rental housing projects (Ans. to Greenleaf Compl., ¶¶ 1, 23; Ans. to Sandburg Compl., ¶¶ 1, 22);
>
> c) The respective HAP Contracts require IHDA to annually increase the rents payable to Plaintiffs (Ans. to Greenleaf Compl., ¶¶ 2, 36; Ans. to Sandburg Compl., ¶¶ 2, 35);
>
> d) IHDA has not done so in accordance with the contract terms since HUD issued Notice H 95-12 on March 7, 1995 (Ans. to Greenleaf Compl., ¶ 2, 37; Ans. to Sandburg Compl., ¶ 2, 36);

e) Not increasing the rents since the issuance of Notice H 95-12 constitutes a breach of the HAP Contracts (Ans. to Greenleaf Compl., ¶ 38; Ans. to Sandburg Compl., ¶ ¶ 37);

f) Since Notice H 95-12 was issued, HUD has published, and IHDA has implemented, an adjustment factor that is .01 less than the adjustment factor applicable to rent increases for turnover housing units (Ans. to Greenleaf Compl., ¶¶ 41-42; Ans. to Sandburg Compl., ¶¶ 40-41);

g) IHDA's reduction of the adjustment factor by .01 for non-turnover units constitutes a breach of the HAP Contracts (Ans. to Greenleaf Compl., ¶ 43; Ans. to Sandburg Compl., ¶ 42);

h) Since Notice H 95-12 was issued, Plaintiffs have been required to submit a Rent Comparability Study as a precondition to receiving annual rent increases (Ans. to Greenleaf Compl., ¶¶ 18, 45, 47; Ans. to Sandburg Compl., ¶¶ 18, 44, 47);

i) The requirement to submit a Rent Compatibility Study constitutes a breach of the HAP Contracts (Ans. to Greenleaf Compl., ¶ 48; Ans. to Sandburg Compl., ¶ 47).

IHDA, through its Answers and Third Party Complaints, alternatively claims that:

a) The Complaints are barred by the applicable statute of limitations (Ans. to Greenleaf Compl., p.11; Ans. to Sandburg Compl., p. 11);

b) IHDA entered into Annual Contributions Contracts ("ACC") with HUD, pursuant to which it entered into the HAP Contracts with Greenleaf and Sandburg (Third Party Complaints, ¶ 13);

c) HUD provides all of the funding for the housing assistance payments made to Greenleaf and Sandburg (Third Party Complaints, ¶ 10);

d) IHDA's ability to increase rents is controlled by HUD, and that it is obliged to, and did, administer the HAP Contracts in accordance with HUD requirements and directives (Third Party Complaints, ¶ 12);

e) Such directives include HUD Notice H 95-12, which was issued in March of 1995 in order to comply with Congress' 1994 amendments to Section 8 (the "1994 Amendments") (Third Party Complaints, ¶¶ 18, 22);

f) Any alleged breach of Plaintiffs' HAP Contracts resulted from IHDA's adherence to HUD directives, including Notice H 95-12 (Third Party Complaints, ¶ 22); and

g) IHDA can not provide the relief Plaintiffs seek in any event unless and until HUD permits it to do so and provides the requisite funding (Third Party Complaints, ¶ 23).

Local Rule 40.4(a)(2) as to relatedness is therefore satisfied, as the legal issues raised by the Complaints, Answers, and Third Party Complaints are identical in both cases, including the issues set forth as follows:

a) Whether IHDA was required, under the HAP Contracts, to increase Plaintiffs' contract rents;

b) Whether IHDA properly reduced the rental adjustment factor for non-turnover units;

c) Whether IHDA properly required Plaintiffs to submit Rent Compatibility Studies under the HAP Contracts;

d) Whether the Complaints are barred by the statute of limitations;

e) Whether HUD must provide funding to IHDA for use as additional housing assistance payments to plaintiffs;

f) Whether HUD must indemnify IHDA; and

g) Whether IHDA is entitled to a declaratory judgment as to its rights in applying the 1994 Amendments and Notice H 95-12, and as to its right to have rent adjustments funded by HUD.

Additionally, the four requirements for reassignment set forth in Local Rule 40.4(b) are satisfied in this case.

As to subsections 40.4(b)(1) and (3), respectively, both actions are pending in this Court, and each is in the very early stages of litigation. *Freeman, et al. v. Officer Steven Bogusiewicz, et al.*, No. 03 C 2908, 2004 WL 1879045, at *2 (N.D. Ill. August 11, 2004).

As to subsection (2), valuable judicial resources, and significant litigation costs, may be saved with one judge handling two substantially similar cases involving identical legal issues. *Freeman*, 2004 WL 1879045, at *2; *Teacher's Retirement System of Louisiana*, 2004 WL 1244236, at *2.

Subsection (4) is likewise satisfied. The cases are susceptible of disposition in a single proceeding because they arise from the same and/or analogous facts and raise the same causes of

action based upon the same legal theories. *See Freeman*, 2004 WL 1879045, at *2; *Teacher's Retirement System of Louisiana*, 2004 WL 1244236, at *2.

Greenleaf and Sandburg are represented by the same counsel, and both Greenleaf and Sandburg consent to the reassignment.

WHEREFORE, Plaintiff Greenleaf Limited Partnership and Defendant Illinois Housing Development Authority respectfully request that this Court enter an Order reassigning *Sandburg Village Apartments v. Illinois Housing Development Authority (Case No. 08-cv-03446)* to the docket of Judge Virginia M. Kendall.

Respectfully submitted,

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC #6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
30th Floor
Chicago, IL 60603
312-578-6574 (Telephone)
312-857-6666 (Facsimile)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel:

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
Telephone: (202) 955-3000
Fax: (202) 955-5564
Email: sgordon@hklaw.com

Respectfully submitted,

/s/ Richard A. Wolfe
Richard A. Wolfe
Wolfe and Polovin
180 N. LaSalle Street, Suite 2420
Chicago, IL 60601
(312) 782-1681 (Telephone)
(312) 782-5108 (Telefax)

Attorneys for Plaintiff
*Greenleaf Limited Partnership*

Of Counsel:

Carl A.S. Coan, Jr.
Carl A.S. Coan, III
Coan & Lyons
1100 Connecticut Avenue, N.W.
Suite 1000
Washington, DC 20036
202-728-1070 (Telephone)
202-293-2448 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on, August 7, 2008, I electronically transmitted the foregoing

**Memorandum in Support of Plaintiff and Defendant's Joint Motion for Reassignment of**

**Related Case** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF

system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system

for this case and served via United States Mail, postage prepaid, upon the following non-

CM/ECF participants:

> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448


/s/ Martin G. Durkin, Jr.
Martin G. Durkin, Jr.

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREENLEAF LIMITED PARTNERSHIP     )
                                  )
          Plaintiff,              )
                                  )
                                  )          Case No. 1:08-cv-02480
v.                                )          Honorable Virginia M. Kendall
                                  )
ILLINOIS HOUSING DEVELOPMENT      )
  AUTHORITY                       )
                                  )
          Defendant.              )
_____ )

## ANSWER

Defendant Illinois Housing Development Authority ("IHDA") makes the following answer to the Complaint:

1.  Plaintiff is the owner of a multifamily rental housing project that is assisted under the U.S. Department of Housing and Urban Development ("HUD") project-based Section 8 Program. Under the project-based Section 8 Program, HUD makes rental assistance payments, called annual contributions, to a public housing agency ("PHA") such as the Defendant, Illinois Housing Development Authority ("IHDA"), in accordance with an Annual Contributions Contract between HUD and the PHA. The PHA, in turn, remits a portion of the annual contributions it receives from HUD to the owner of a project, such as Plaintiff, in the form of housing assistance payments pursuant to a Housing Assistance Payments ("HAP") Contract between the PHA and the owner for the purpose of reducing the amount of rent paid by the tenants who live in the units covered by the HAP Contract.

ANSWER:     IHDA admits that Plaintiff is the owner of a multifamily rental housing project that is assisted under the project-based Section 8 program.   The remainder of Paragraph 1 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 1.

2.  In accordance with the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled to an annual increase in the rents payable under the Contract. IHDA has not increased the rents payable under the HAP Contract between Plaintiff and IHDA in accordance with the terms of the Contract since 1994. The failure by IHDA to increase the rents constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    The HAP Contract between Plaintiff and IHDA speaks for itself regarding Plaintiff's entitlement to annual rent increases.  IHDA avers that, as the Contract Administrator for Section 8 HAP Contracts, it is obliged to follow the requirements and directives of the U.S. Department of Housing and Urban Development ("HUD") with respect to making rent increases under those contracts.  IHDA further avers that, since 1994, it has increased or not increased the rents payable under its HAP Contract with Plaintiff in accordance with HUD regulations and directives.  The remainder of Paragraph 2 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 2.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

**ANSWER:**    Admitted.

4.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

**ANSWER:**    Admitted.

## PARTIES

5.    Plaintiff is a limited partnership formed under the laws of Illinois. Plaintiff is the owner of Greenleaf Apartments, a 321-unit multifamily rental housing project located in Bolingbrook, Illinois

**ANSWER:**    IHDA admits that Greenleaf Apartments is a 321-unit multifamily rental housing project located in Bolingbrook, Illinois.  IHDA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 and, therefore, denies same.

6.    Defendant was created under the laws of Illinois. Defendant is a State Agency, as defined by 24 C.F.R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937. 42 U.S.C. § 1437a.

**ANSWER:**    Admitted.

2

## FACTS

### The Section 8 Program

7.      This action arises under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"). Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing.  Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

**ANSWER:**    Admitted.

8.      Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA.   An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to the HAP Contract between the PHA and the owner. The monthly housing assistance payments by the PHA to the owner benefit the low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

**ANSWER:**    Admitted.

9.      HUD has implemented Section 8 through several distinct programs. One such program is the Section 8 Program for State Housing Agencies.  Greenleaf Apartments was built, and is managed, under HUD's Section 8 Program for State Housing Agencies.

**ANSWER:**    Admitted.

10.     The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

**ANSWER:**    Admitted.

11.     A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract." 24 C.F.R. § 883.302 (2007).

**ANSWER:**    Admitted.

12.     A Section 8 HAP Contract establishes a contract rent ("Contract Rent") for each unit covered by the HAP Contract. The amount of the monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount the tenant is required by law to pay as rent.

**ANSWER:**    Admitted.

3

13.   Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract. 24 C.F.R. § 888.201(2007). HUD is required to publish these adjustment factors in the Federal Register at least annually. 24 C.F.R. § 888.202 (2007).

**ANSWER:**   IHDA denies the allegations of Paragraph 13, except admits that under certain of HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents, and that HUD is required to publish these adjustment factors by notice in the Federal Register at least annually.

14.   In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Greenleaf Apartments, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area." P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**   Admitted.

15.   In that same Act, Congress further revised Section 8 by requiring that for the units in a project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0. P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**   Admitted.

16.   These two revisions to Section 8 were originally effective for Fiscal Year 1995 only. The provisions were made permanent beginning with Fiscal Year 1999.

**ANSWER:**   Admitted.

17.   On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 revisions to Section 8 contained in HUD's FY 1995 Appropriations Act.

**ANSWER:**   Admitted.

18.    In accordance with Notice 95-12 and subsequent Notices issued by HUD to
       further implement the 1994 revisions to Section 8, in order for the owner of a Section 8
       project to receive the annual rent increase to which the owner would otherwise be
       entitled under its HAP Contract, the owner is required, when the Contract Rents
       exceed the applicable Fair Market Rents published by HUD, to submit an "Estimate of
       Market Rent by Comparison" on form HUD-92273 at least sixty days before the
       anniversary date of the owner's HAP Contract.

**ANSWER:**    Admitted.

19.    The purpose of form HUD-92273 is to calculate the estimated market rent for
       a project's units. If a project's Contract Rents, as adjusted by the applicable annual
       adjustment factor, are less than the rent calculated on Form-92273, an owner is entitled
       to the full increase.

**ANSWER:**    IHDA admits that the purpose of Form 92273 is to calculate the estimated market

rent for a project's units. The remainder of Paragraph 19 contains legal conclusions to which no

response is required, to the extent an answer is required, IHDA denies the remaining allegations

of Paragraph 19.

20.    If a project's rents, as adjusted by the applicable annual adjustment factor, are
       greater than the estimated market rent calculated on Form-92273, then additional
       calculations are required to ensure that the difference between a project's initial
       Contract Rents and the rent for a comparable unassisted unit on the effective date of
       a project's HAP Contract is preserved.

**ANSWER:**    Paragraph 20 contains legal conclusions as to which no response is required, to

the extent an answer is required, IHDA denies the remaining allegations of Paragraph 20.

**Greenleaf Apartments**

21.    Greenleaf Apartments was built under HUD's Section 8 Program for State
       Housing Agencies. The project consists of 9 efficiencies, 240 one-bedroom units and 72
       two-bedroom units.

**ANSWER:**    Admitted.

22.    The original  owner of Greenleaf Apartments was Preston Drive Limited
       Partnership ("Preston"), an Illinois limited partnership. In 2002, Preston sold Greenleaf
       Apartments to Plaintiff.

**ANSWER:**   IHDA is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and, therefore, denies same.

23.   Preston entered into a HAP Contract (the "Greenleaf Contract") with IHDA. A copy of the Contract is attached as Exhibit 1.   HUD signed and approved the Greenleaf Contract. Ex. 1, pp. 5, 5a, 5b and 5c.

**ANSWER:**   Admitted.

24.   There are five stages to the Greenleaf Contract.

**ANSWER:**   Admitted.

25.   The effective date of Stage I of the Greenleaf Contract was October 1, 1981.   Stage I covers 30 one-bedroom and 6 two-bedroom units.

**ANSWER:**   Admitted.

26.   The effective date of Stage II was November 1, 1981. Stage II covers three efficiencies, 50 one-bedroom and 18 two-bedroom units.

**ANSWER:**   Admitted.

27.   The effective date of Stage III was January 1, 1982. Stage III covers three efficiencies, 80 one-bedroom and 24 two-bedroom units.

**ANSWER:**   Admitted.

28.   The effective date of Stage IV was May 1, 1982. Stage IV covers efficiencies, 54 one-bedroom and 16 two-bedroom units.

**ANSWER:**   Admitted.

29.   The effective date of stage V was June 1, 1982. Stage V covers 1 efficiency, 26 one-bedroom and 8 two-bedroom units.

**ANSWER:**   Admitted.

30.   In May 2002, Preston assigned all of its right, title and interest in the Greenleaf Contract to Plaintiff.  HUD and IHDA approved the assignment of the Greenleaf Contract from Preston to Plaintiff in 2002.

**ANSWER:**   Admitted.

31.   The initial term of the Greenleaf Contract was twenty years. Ex. 1, ¶1.2a. The Greenleaf Contract is automatically renewable for four additional 5-year terms unless either party to the Greenleaf Contract notifies the other party of its desire not to renew the

Contract in writing at least sixty days prior to the expiration of the current term of the Contract and the other party agrees in writing to the non-renewal. Ex. 1, ¶1.2(b).

**ANSWER:**    The Greenleaf Contract speaks for itself regarding its initial term and renewal provisions, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 31.

32.    The Greenleaf Contract states, "Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." Ex. 1, ¶ 2.7(b)(l). The "anniversary date of the Contract" between Plaintiff and IHDA is the effective date of each stage of the Contract. Accordingly, there are five anniversary dates, one for each stage, on which IHDA is required under the Greenleaf Contract to increase the Contract Rents at Greenleaf Apartments for the units covered by that stage.

**ANSWER:**    The Greenleaf Contract speaks for itself regarding annual rent increases, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 32.

33.    The initial Contract Rent for the efficiencies at Greenleaf Apartments was $495. For the one-bedroom and two-bedroom units at Greenleaf Apartments, the initial Contract Rent was $578 and $681, respectively.

**ANSWER:**    Admitted.

34.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually by IHDA, as required by the Greenleaf Contract. There has been only one increase to the Contract Rents at Greenleaf since notice 95-12 was issued. That increase was effective on October 1, 2002 and was applicable to all the units at Greenleaf Apartments.

**ANSWER:**    IHDA admits that, before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually. IHDA further admits that there has been only one increase to the Contract Rents at Greenleaf Apartments since Notice 95-12 was issued; that increase was effective on October 1, 2002, and applied to all the units at Greenleaf Apartments. The remainder of Paragraph 34 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 34.

## COUNT I - BREACH OF CONTRACT

### (Failure to Adjust Contract Rents)

35.     Plaintiff repeats and realleges paragraphs 1-34.

**ANSWER:**     IHDA repeats and realleges its answers to paragraphs 1-34.

36.     Under the Greenleaf Contract, Plaintiff is, and has been, entitled, on the anniversary date of each stage of the Contract, to an increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents for the units covered by each stage.

**ANSWER:**     Paragraph 36 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 36.

37.     Contrary to the terms of the Greenleaf Contract, IHDA has not increased the Contract Rents at Greenleaf Apartments annually, as required by the HAP Contract, since HUD issued Notice 95-12. In addition, the October 1, 2002 increase to the Contract Rents at Greenleaf Apartments approved by IHDA was less than the amount required by the Greenleaf Contract.

**ANSWER:**     Paragraph 37 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 37.

38.     IHDA's failure, since HUD issued Notice 95-12, to increase the Contract Rents at Greenleaf Apartments, in accordance with terms of the Greenleaf Contract, constitutes a breach of the Greenleaf Contract.

**ANSWER:**     Paragraph 38 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 38.

39.     This breach by IHDA of the Greenleaf Contract has damaged Plaintiff by reducing the Contract Rents that are required under the Contract which, in turn, has reduced the amount of housing assistance payments to which Plaintiff is entitled under the Greenleaf Contract.

**ANSWER:**     Paragraph 39 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 39.

## COUNT II-BREACH OF CONTRACT

### (Reduction in Annual Adjustment Factors)

40.    Plaintiff repeats and realleges paragraphs 1-39.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-39.

41.    Since Notice 95-12 was issued, HUD has published two tables of annual adjustment factors when HUD published the factors in the Federal Register. Table I was applicable to turnover units, i.e. units that were occupied by a family different from the family that occupied the unit at the time of a project's previous annual rent increase. Table 2 was applicable to non-turnover units, i.e. units that were occupied by the same family as the family that occupied the unit at a project's previous annual rent increase. Table 2 reduced the adjustment factors in Table 1 by .01, except no factor was reduced below 1.0

**ANSWER:**    Admitted.

42.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment factors otherwise applicable to Section 8 projects, including the adjustment factors applicable to Greenleaf Apartments, by .01 for non-turnover units.

**ANSWER:**    IHDA denies the allegations of Paragraph 42, except admits that, since Notice 95-12 was issued, the annual adjustment factor it has applied to Section 8 projects, including Greenleaf Apartments, for non-turnover units has been .01 lower than the adjustment factor for comparable turnover units.

43.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at Greenleaf Apartments constitutes a breach of the Greenleaf Contract and damages Plaintiff by reducing the Contract Rents, and the housing assistance payments, to which Plaintiff is entitled under the Greenleaf HAP Contract.

**ANSWER:**    Paragraph 43 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 43.

## COUNT III-BREACH OF CONTRACT

### (Rent Comparability Study)

44.    Plaintiff repeats and realleges paragraphs 1-43.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-43.

45.    IHDA requires Plaintiff, and owners of other Section 8 projects, to submit a Rent Comparability Study, prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at Greenleaf Apartments.

**ANSWER:**    IHDA denies the allegations of Paragraph 45, except admits that, pursuant to the procedures set forth in Notice 95-12, it requires Plaintiff to submit a Rent Comparability Study, prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at Greenleaf Apartments.

46.    In 2002 Plaintiff submitted a Rent Comparability Study in connection with a rent increase request submitted by Plaintiff to IHDA.

**ANSWER:**    Admitted.

47.    No provision of Plaintiff's HAP Contract with IHDA requires Plaintiff to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiff is entitled under the Greenleaf Contract.

**ANSWER:**    The provisions of Plaintiff's HAP Contract speak for themselves regarding whether they require a Rent Comparability study as a condition for an annual rent increase, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 47.

48.    The requirement to submit a Rent Comparability Study imposed by IHDA on Plaintiff constitutes a breach of the Greenleaf Contract.

**ANSWER:**    Paragraph 48 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 48.

49.    Plaintiff has been damaged by this breach of the Greenleaf Contract by IHDA through the cost incurred by Plaintiff in obtaining the Rent Comparability Study submitted by Plaintiff to IHDA.

**ANSWER:**    Paragraph 49 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 49.

## DEFENSES

1.    The Complaint fails to state a claim upon which relief may be granted.

2.     The Complaint is barred by the applicable statutes of limitations, as well as the doctrine of laches.

Respectfully submitted.

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC # 6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Answer** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Martin Durkin
Martin Durkin

## CERTIFICATE OF SERVICE

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Answer** via

U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448

/s/ Martin Durkin
Martin Durkin

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDBURG VILLAGE APARTMENTS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-03446 |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWER

Defendant Illinois Housing Development Authority ("IHDA") makes the following

answer to the Complaint:

1.      Plaintiff is the owner of a multifamily rental housing project that is assisted under the
U.S. Department of Housing and Urban Development ("HUD") project-based Section
8 Program. Under the project-based Section 8 Program, HUD makes rental assistance
payments, called annual contributions, to a public housing agency ("PHA") such as the
Defendant, Illinois Housing Development Authority ("IHDA"). These payments are
made in accordance with an Annual Contributions Contract between HUD and the
PHA. The PHA, in turn, remits a portion of the annual contributions it receives from
HUD to the owner of a project, such as Plaintiff, in the form of housing assistance
payments pursuant to a Housing Assistance Payments ("HAP") Contract between the
PHA and the owner for the purpose of reducing the amount of rent paid by the tenants
who live in the units covered by the HAP Contract.

**ANSWER:**    IHDA admits that Plaintiff is the owner of a multifamily rental housing project

that is assisted under the project-based Section 8 program.   The remainder of Paragraph 1

contains legal conclusions to which no response is required, to the extent an answer is required,

IHDA denies the remaining allegations of Paragraph 1.

2.      In accordance with the HAP Contract between Plaintiff and IHDA, Plaintiff is
entitled to an annual increase in the rents and the housing assistance payments to which
Plaintiff is entitled under the Contract.   Since 1994, IHDA has not, in accordance
with the terms of the Contract, increased the rents or housing assistance payments
payable under the HAP Contract between Plaintiff and IHDA.   The failure by

IHDA to increase the rents, and the housing assistance payments to which Plaintiff is entitled under the HAP Contract, constitutes a breach of the Contract between Plaintiff and IHDA.

**ANSWER:**   The HAP Contract between Plaintiff and IHDA speaks for itself regarding Plaintiff's entitlement to annual rent increases.   IHDA avers that, as the Contract Administrator for Section 8 HAP Contracts, it is obliged to follow the requirements and directives of the U.S. Department of Housing and Urban Development ("HUD") with respect to making rent increases under those contracts.   IHDA further avers that, since 1994, it has increased or not increased the rents payable under its HAP Contract with Plaintiff in accordance with HUD regulations and directives.   The remainder of Paragraph 2 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 2.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

**ANSWER:**   Admitted.

4.   Venue in this Court is proper under 28 U.S.C. § 1391(b).

**ANSWER:**   Admitted.

## PARTIES

5.   Plaintiff is a limited partnership that was formed under the laws of Illinois. Plaintiff is the owner of Sandburg Village Apartments ("Sandburg"), a 128-unit multifamily rental housing project located in Galesburg, Illinois.

**ANSWER:**   IHDA admits that Sandburg Village Apartments is a 128-unit multifamily rental housing project located in Galesburg, Illinois.   IHDA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 and, therefore, denies same.

2

6.      The Defendant was created under the laws of Illinois. Defendant is a State Agency, as defined by 24 C.F. R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937. 42 U.S.C. § 1437a.

**ANSWER:**    Admitted.

## FACTS

### The Section 8 Program

7.      This action arises under Section 8 of the United States Housing Act of 1937 Act, 42 U.S.C. § 1437f ("Section 8"). Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing. Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

**ANSWER:**    Admitted.

8.      Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA. An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to a HAP Contract between the PHA and the owner. The monthly housing assistance payments by the PHA to the owner benefit the low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

**ANSWER:**    Admitted.

9.      HUD has implemented Section 8 through several distinct programs.    One such program is the Section 8 Program for State Housing Agencies. Sandburg was built, and is managed, under HUD's Section 8 Program for State Housing Agencies.

**ANSWER:**    Admitted.

10.     The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

**ANSWER:**    Admitted.

11.     A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract." 24 C.F.R. § 883.302 (2007).

**ANSWER:**    Admitted.

12.    A Section 8 HAP Contract establishes a rent ("Contract Rent") for each unit covered by the HAP Contract. The monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount the tenant is required by law to pay as rent.

**ANSWER:**    Admitted.

13.    Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the annual increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract. 24 C.F.R. § 888.201(2007).  HUD is required to publish these adjustment factors by notice in the Federal Register at least annually. 24 C.F.R. § 888.202 (2007).

**ANSWER:**    IHDA denies the allegations of Paragraph 13, except admits that under certain of

HUD's Section 8 Programs, including the Program for State Housing Agencies, annual

adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents, and

that HUD is required to publish these adjustment factors by notice in the Federal Register at least

annually.

14.    In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Sandburg, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area." P.L. No. 103-327, 108 Stat. 2298, 2315(1994).

**ANSWER:**    Admitted.

15.    In that same Act, Congress further revised Section 8 by requiring that for the units in a Section 8 project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0.  P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**    Admitted.

16.    These two revisions to Section 8 (the "1994 Amendments") were originally effective for Fiscal Year 1995 only.  Congress made the 1994 Amendments applicable to most of fiscal years 1996, 1997 and 1998.  They were made permanent beginning with Fiscal Year 1999.

**ANSWER:**    Admitted.

17.    On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 Amendments.

**ANSWER:**    Admitted.

18.    In accordance with Notice 95-12, and subsequent Notices issued by HUD to further implement the 1994 Amendments, in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required, when the Contract Rents exceed the applicable Fair Market Rents published by HUD, to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 ("Form 92273") at least sixty days before the anniversary date of the owner's HAP Contract.

**ANSWER:**    Admitted.

19.    The purpose of Form 92273 is to calculate the estimated market rent for a project's units. If a project's Contract Rents, as adjusted by the applicable annual adjustment actor, are less than the rent calculated on Form 92273, an owner is entitled to the full increase.

**ANSWER:**    IHDA admits that the purpose of Form 92273 is to calculate the estimated market

rent for a project's units.  The remainder of Paragraph 19 contains legal conclusions to which no

response is required, to the extent an answer is required, IHDA denies the remaining allegations

of Paragraph 19.

20.    If a project's rents, as adjusted by the applicable annual adjustment factor, are greater than the estimated market rent calculated on Form 92273, then additional calculations are required to ensure that the difference between a project's initial Contract Rents and the rent for a comparable unassisted unit on the effective date of a project's HAP Contract is preserved.

**ANSWER:**    Paragraph 20 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 20.

### Sandburg Village Apartments

21.    Sandburg was built under HUD's    Section 8 Program    for State Housing Agencies. The project consists of 44 one-bedroom units, 4 one-bedroom handicap units, 62 two-bedroom units, 2 two-bedroom handicap units and 16 three-bedroom units.

**ANSWER:**   Admitted.

22.    Plaintiff entered into a HAP Contract (the "Sandburg Village Contract") with IHDA
       effective October 1, 1980. A copy of the HAP Contract is attached as Exhibit 1. HUD
       signed and approved the HAP Contract between Plaintiff and IHDA.

**ANSWER:**   Admitted.

23.    There are six stages to the Sandburg Village Contract.

**ANSWER:**   Admitted.

24.    The effective date of Stage I of the Sandburg Village Contract was October 1, 1980.
       Stage I covers 12 two-bedroom and 12 three-bedroom units.

**ANSWER:**   Admitted.

25.    The effective date of Stage II and Stage III was November 1, 1980. Stage II covers
       4 two-bedroom and 4 three-bedroom units. Stage III covers 12 one-bedroom and 12 two-
       bedroom units.

**ANSWER:**   Admitted.

26.    The effective dale of stage IV and Stage V was December 1, 1980. Stage IV covers
       8 one-bedroom, 4 one-bedroom handicap, 10 two-bedroom and 2 two-bedroom handicap
       units.  Stage V covers 12 one-bedroom and 12 two-bedroom units.

**ANSWER:**   Admitted.

27.    The effective date of stage VI was March 1, 1981.     Stage VI covers 12 one-
       bedroom and 12 two-bedroom units

**ANSWER:**   Admitted.

28.    The initial term of the Sandburg Village Contract was five years. Ex. 1, §1 .lb. The
       Sandburg Village Contract is automatically renewable for seven additional five-year
       terms unless either party to the Contract notifies the other parry of its desire not to renew
       in writing at least sixty days prior to the expiration of the current term of the Contract,
       and the other party agrees in writing to the non-renewal. Ex. 1, §§ l.lc and 1.4a.

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding its initial term and

renewal provisions, to the extent an answer is required, IHDA denies the remaining allegations

of Paragraph 28.

6

29.    The Sandburg Village Contract states, "On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government." Ex. 1, § 1.9b (2) (emphasis added).

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding annual rent increases,

to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 29.

30.    There are six anniversary dates of the Sandburg Village Contract, the effective date of each stage of the Contract.    IHDA is required by the Sandburg Village Contract to increase the Contracts Rents on the anniversary date for the units covered by each stage of the Contract.

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding anniversary dates and

increases of the Contract Rents on the anniversary date(s), to the extent an answer is required,

IHDA denies the remaining allegations of Paragraph 30.

31.    The initial Contract Rents at Sandburg were: 1-bedroom-$318; 1-bedroom handicap-$335; 2-bedroom-$377; 2-bedroom handicap-$398; and 3-bedroom-$425.

**ANSWER:**    IHDA denies the allegations of Paragraph 31.

32.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Sandburg was increased annually by IHDA, as required by Plaintiffs HAP Contract with IHDA.

**ANSWER:**    IHDA denies the allegations of Paragraph 32, except admits that, before Notice

95-12 was issued, the Contract Rent for each unit type at Sandburg Village Apartments was

increased annually.

33.    Although there have been increases in the Contract Rent for each unit type at Sandburg since Notice 95-12 was issued, the Contract Rents have not been increased annually as required by the Sandburg Village Contract.    In addition, the increases that have been made were less than the amount to which Plaintiff was entitled under the Sandburg Village Contract.

**ANSWER:**    IHDA denies the allegations of Paragraph 33, except admits that there have been

increases in the Contract Rent for each unit type at Sandburg Village since Notice 95-12 was

issued.    The remainder of Paragraph 33 contains legal conclusions to which no response is

7

required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 33.

## COUNT I - BREACH OF CONTRACT

### (Failure to Increase Contract Rents)

34.    Plaintiff repeats and realleges paragraphs 1-33.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-33.

35.    Under the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled, on the anniversary date of each stage of the Contract, to an annual increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents at Sandburg.

**ANSWER:**    Paragraph 35 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 35.

36.    Contrary to the terms of the HAP Contract between Plaintiff and IHDA, IHDA has not increased the Contract Rents at Sandburg annually, as required by the HAP Contract, since HUD issued Notice 95-12 on March 7, 1995. In addition, the increases to the Contract Rents at Sandburg made by IHDA since Notice 95-12 was issued were for an amount less than the amount to which Plaintiff was entitled under the HAP Contract.

**ANSWER:**    Paragraph 36 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 36.

37.    IHDA's failure to increase the Contract Rents at Sandburg in accordance with the terms of the Sandburg Village Contract since HUD issued Notice 95-12 constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    Paragraph 37 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 37.

38.    This breach of the Sandburg Village Contract by IHDA has damaged Plaintiff by reducing the Contract Rents that are required by the Contract which, in turn, has reduced the housing assistance payments to which Plaintiff is entitled under the Sandburg Village Contract.

**ANSWER:**    Paragraph 38 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 38.

## COUNT II-BREACH OF CONTRACT

### (Reduction in Annual Adjustment Factors)

39.    Plaintiff repeats and realleges paragraphs 1-38.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-38.

40.    Since Notice 95-12 was issued, HUD has published two tables of annual
adjustment factors when HUD published the factors in the Federal Register. Table I has
been applicable to turnover units, i.e. units that were occupied by a family different
from the family that occupied the unit at the time of a project's previous annual rent
increase. For non-turnover units, i.e. units that were occupied by the same family
as the family that occupied the unit at a project's previous annual rent increase,
Table 2 has reduced the adjustment factors in Table 1 by .01, except no factor was
reduced below 1.0.

**ANSWER:**    Admitted.

41.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment
factors otherwise applicable to Section 8 projects, including the adjustment factors
applicable to Sandburg, by .01 for non-turnover units.

**ANSWER:**    IHDA denies the allegations in Paragraph 41, except admits that, since Notice 95-

12 was issued, the annual adjustment factor it has applied to Section 8 projects, including

Sandburg Village Apartments, for non-turnover units has been .01 lower than the adjustment

factor for comparable turnover units.

42.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at
Sandburg results in Contract Rents that are lower than the Contract Rents to which
Plaintiff is entitled under the HAP Contract between Plaintiff and IHDA.    This
constitutes a breach of the HAP Contract between Plaintiff and IHDA and damages
Plaintiff by reducing the Contract Rents, and the housing assistance payments, to which
Plaintiff is entitled under its HAP Contract with IHDA.

**ANSWER:**    Paragraph 42 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 42.

## COUNT III-BREACH OF CONTRACT

### (Rent Comparability Study)

43.    Plaintiff repeats and realleges paragraphs 1-42.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-42.

44.    IHDA requires Plaintiff, and owners of other Section 8 projects, to submit a Rent Comparability Study, prepared at Plaintiffs expense, before deciding whether to increase the Contract Rents at Sandburg Village Apartments.

**ANSWER:**    IHDA denies the allegations in Paragraph 44, except admits that, pursuant to the

procedures set forth in Notice 95-12, it requires Plaintiff to submit a Rent Comparability Study,

prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at

Sandburg Village Apartments.

45.    In 2000 Plaintiff submitted a Rent Comparability Study in connection with a rent increase request submitted by Plaintiff to IHDA.

**ANSWER:**    Admitted.

46.    No provision of Plaintiffs HAP Contract with IHDA requires Plaintiff to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiff is entitled under the Sandburg Village Contract.

**ANSWER:**    The provisions of Plaintiff's HAP Contract speak for themselves regarding

whether they require a Rent Comparability study as a condition for an annual rent increase, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 46.

47.    The requirement to submit a Rent Comparability Study imposed by IHDA on Plaintiff constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    IHDA denies the allegations of Paragraph 47.

48.    Plaintiff has been damaged by this breach of the Sandburg Village Contract by IHDA through the cost incurred by Plaintiff in obtaining the Rent Comparability Study submitted by Plaintiff to IHDA.

**ANSWER:**     Paragraph 48 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 48.

**DEFENSES**

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     The Complaint is barred by the applicable statutes of limitations, as well as the

doctrine of laches.

Respectfully submitted.


/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC # 6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*


Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Answer** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Martin Durkin
Martin Durkin

### CERTIFICATE OF SERVICE

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Answer** via

U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448

/s/ Martin Durkin
Martin Durkin

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREENLEAF LIMITED PARTNERSHIP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-02480 |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY | ) | |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROY BERNARDI, | ) | |
| Acting Secretary, United States Department | ) | |
| of Housing and Urban Development, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**THIRD PARTY COMPLAINT**

1.      Third-party plaintiff, the Illinois Housing Development Authority ("IHDA"),

brings this third-party complaint against the Secretary of the United States Department of

Housing and Urban Development ("HUD"), seeking relief in the event that IHDA is found liable

to plaintiff for breach of contract in this matter.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction of this action, which arises under federal law, pursuant

to 28 U.S.C. §§ 1331, 1361, 2201, 2202, and 5 U.S.C. §§ 701 - 706.

3.      Sovereign immunity is waived by 5 U.S.C. § 702 and 42 U.S.C. § 1404a.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(e).

## PARTIES

5.      Third-party plaintiff, Illinois Housing Development Authority, was created under the laws of Illinois and is a public housing agency as defined by the United States Housing Act of 1937 ("1937 Act"), 42 U.S.C. § 1437a(b)(6)(B).

6.      Third-party defendant, Roy Bernardi, is the Acting Secretary of HUD, and is sued in his official capacity.

## FACTS

### The Section 8 Program

7.      This action arises under Section 8 of the 1937 Act, 42 U.S.C. § 1437f ("Section 8").  Pursuant to Section 8, HUD provides rent subsidies on behalf of low-income families living in rental housing owned primarily by private persons and entities.

8.      Under Section 8, rent subsidies are provided by means of a Housing Assistance Payment Contract ("HAP Contract") with a private owner of multifamily rental housing that establishes Contract Rents for apartment units which are leased to low-income families; pursuant to the HAP Contract, "housing assistance payments" are made to the owner to cover all or a portion of those Contract Rents.

9.      Some HAP Contracts are made directly between HUD and the housing owner.

10.     Alternatively, Section 8 authorizes the Secretary of HUD to enter into an Annual Contributions Contract ("ACC") with a public housing agency ("PHA"), pursuant to which the PHA then enters into a HAP Contract with the housing owner.   HUD provides all of the funding for the housing assistance payments and prescribes the form of the ACC and the HAP Contract.

11.     Each HAP Contract entered into by a PHA pursuant to Section 8 is approved by HUD, thereby signifying that it has executed the ACC and that the ACC has been properly

authorized, that the faith of the United States is solemnly pledged for the payment of annual

contributions pursuant to the ACC; and that funds have been obligated by the Government for

such payments to assist the PHA in the performance of its obligations under the HAP Contract.

12.    The PHA serves as the "Contract Administrator" with respect to any HAP

Contract to which it is a party and is responsible for monitoring the housing owner's performance

of its obligations under the HAP Contract. The PHA is obliged to administer the HAP Contract

in accordance with HUD requirements and directives and HUD is obliged to fund all housing

assistance payments that are owed pursuant to the HAP Contract.

### IHDA's Participation in the Section 8 Program

13.    IHDA is party to an ACC with HUD and a HAP Contract with plaintiff regarding

the multifamily housing project at issue in this action. The term of this HAP Contract, with

automatic renewals, extends at least until 2021.

14.    IHDA entered into similar HAP Contracts and ACCs under the Section 8 program

with respect to numerous other multifamily housing projects in Illinois.

15.    IHDA has administered the HAP Contracts for all of its Section 8 projects,

including Greenleaf Apartments, in accordance with HUD requirements and directives, and

HUD has funded all housing assistance payments made pursuant to those HAP Contracts.

### The Changes in Rent Increase Procedures

16.    Each HAP Contract provides for annual increases of the Contract Rents under

specified conditions.

17.    In 1994 Congress amended Section 8 to place certain additional limitations on

annual increases in Contract Rents. Pub.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

Subsequent statutory amendments cumulatively made these limitations (the "1994 amendments")

applicable to subsequent years. *See* Pub.L. No. 105-33, § 2004, 111 Stat. 257 (1997); Pub.L. No.

105-65, § 201(C)(1), 111 Stat. 1364 (1997); Pub.L. No. 104-204, § 201(g), 110 Stat. 2893

(1996).

18.    On March 7, 1995, HUD issued Notice H 95-12 for the purpose of implementing

the revisions to Section 8 made by Congress. This directive imposed additional requirements

beyond those contained in existing HAP Contracts or the 1994 amendments.

19.    IHDA has administered the HAP Contracts for all of its Section 8 projects in

accordance with Notice H 95-12 and the 1994 amendments, and has only adjusted Contract

Rents as directed and permitted by HUD.

20.    Various housing owners who are parties to HAP Contracts executed before

enactment of the 1994 amendments have challenged the application of those amendments and

Notice H 95-12 to their HAP Contracts as a breach of their contract rights. Certain federal courts

have ruled in favor of these owners.

### The Instant Action

21.    The claims asserted by plaintiff in this action are consistent with the claims

previously made by other similarly situated housing owners in other federal courts.

22.    The alleged breaches of plaintiff's HAP Contract – relating to failure to adjust

Contract Rents, reduction in annual adjustment factors, and requirement of a rent comparability

study at the owner's expense – all result from IHDA following HUD directives, including the

1994 amendments and Notice H 95-12.

23.    IHDA cannot grant Plaintiff the relief it seeks herein unless and until HUD directs

or permits IHDA to do so, which has not yet happened, and IHDA cannot provide this relief until

HUD provides the requisite funding.

4

24.    The alleged breaches of plaintiff's HAP Contract affect not only past rent increases that were not granted, but also future annual rent increases for Greenleaf Apartments.

25.    The legal issues relating to the alleged breaches of plaintiff's HAP Contract also affect future annual rent increases for some or all of the other Section 8 projects for which IHDA has entered into similar pre-1994 HAP Contracts and ACCs.

26.    IHDA cannot properly and uniformly administer the Section 8 HAP Contracts to which it is a party, including plaintiff's Section 8 HAP contract, without clarification of (a) its legal rights and obligations with respect to the calculation of annual rent increases, and (b) HUD's rights and obligations with respect to the calculation and funding of annual rent increases.

## COUNT I

### (Administrative Procedure Act)

27.    The allegations of paragraphs 1 through 26 are incorporated by reference as if set forth fully herein.

28.    If IHDA has breached plaintiff's HAP Contract and has applied incorrect requirements and procedures to the adjustment of Contract Rents, it has done so at the direction of HUD and pursuant to HUD requirements.

29.    If HUD has caused IHDA to breach plaintiff's HAP Contract and to apply incorrect requirements and procedures to the adjustment of Contract Rents for other HAP Contracts to which IHDA is a party,  HUD's actions are arbitrary, capricious, an abuse of discretion, contrary to law, and contrary to constitutional right, in violation of 5 U.S.C. § 706.

30.    If HUD has caused IHDA to breach plaintiff's HAP Contract and to apply incorrect requirements and procedures to the adjustment of Contract Rents for other HAP Contracts to which IHDA is a party, HUD must provide any additional housing assistance

payments, retroactive or prospective, to which plaintiff or other Section 8 housing owners are entitled when adjustments to the Contract Rents are calculated correctly and in conformance with applicable legal requirements.

## COUNT II

### (Contract/Indemnification)

31.    The allegations of paragraphs 1 through 30 are incorporated by reference as if set forth fully herein.

32.    If HUD has caused IHDA to breach its Section 8 HAP Contract with plaintiff, HUD has breached the related ACC with IHDA.

33.    If HUD has caused IHDA to breach its Section 8 HAP Contract with plaintiff, IHDA is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches.

## COUNT III

### (Declaratory Judgment)

34.    The allegations of paragraphs 1 through 33 are incorporated by reference as if set forth fully herein.

35.    IHDA seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs.

WHEREFORE, if the Court finds that IHDA has breached the plaintiff's HAP Contract, then IHDA prays that the Court:

A.    Rule that any breach by IHDA of plaintiff's HAP Contract was caused by HUD;

B.    Declare HUD's actions that caused the claimed breaches of plaintiff's HAP Contract are arbitrary, capricious, an abuse of discretion, contrary to law, and/or contrary to constitutional right, in violation of 5 U.S.C. § 706;

C.    Order that HUD shall perform, and/or allow IHDA to perform, future adjustments of the Contract Rents for HAP Contracts to which IHDA is a party in accordance with applicable legal requirements;

D.    Declare the respective rights and responsibilities of IHDA and HUD in applying the 1994 amendments and Notice H 95-12 with respect to determining and funding future adjustments of Contract Rents for the HAP Contracts to which IHDA is a party.

E.    Order HUD to provide any additional housing assistance payments to which plaintiff or other Section 8 housing owners are entitled when Contract Rents are adjusted in a lawful and proper fashion;

F.    Declare that HUD has breached its ACC with IHDA covering Village West;

G.    Declare that IHDA is entitled to indemnification from HUD for all costs and expenses it has sustained or will sustain as a result of the claimed breaches of plaintiff's HAP Contract caused by HUD; and

H.    Award IHDA its costs, disbursements and attorney's fees in this action; and

I.    Grant such other and further relief as is just and proper.

Respectfully submitted,

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC #6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Third Party Complaint** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.


/s/ Martin Durkin
Martin Durkin

## CERTIFICATE OF SERVICE

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Third Party Complaint** via U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448

/s/ Martin Durkin
Martin Durkin

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Sandburg Village Apartments | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-03446 |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| Illinois Housing Development Authority | ) | |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Roy Bernardi, | ) | |
| Acting Secretary | ) | |
| United States Department of  Housing | ) | |
| and Urban Development, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**THIRD PARTY COMPLAINT**

1.      Third-party plaintiff, the Illinois Housing Development Authority ("IHDA"),

brings this third-party complaint against the Secretary of the United States Department of

Housing and Urban Development ("HUD"), seeking relief in the event that IHDA is found liable

to plaintiff for breach of contract in this matter.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction of this action, which arises under federal law, pursuant

to 28 U.S.C. §§ 1331, 1361, 2201, 2202, and 5 U.S.C. §§ 701 - 706.

3.      Sovereign immunity is waived by 5 U.S.C. § 702 and 42 U.S.C. § 1404a.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(e).

**PARTIES**

5.    Third-party plaintiff, Illinois Housing Development Authority, was created under the laws of Illinois and is a public housing agency as defined by the United States Housing Act of 1937 ("1937 Act"), 42 U.S.C. § 1437a(b)(6)(B).

6.    Third-party defendant, Roy Bernardi, is the Acting Secretary of HUD, and is sued in his official capacity.

**FACTS**

**The Section 8 Program**

7.    This action arises under Section 8 of the 1937 Act, 42 U.S.C. § 1437f ("Section 8"). Pursuant to Section 8, HUD provides rent subsidies on behalf of low-income families living in rental housing owned primarily by private persons and entities.

8.    Under Section 8, rent subsidies are provided by means of a Housing Assistance Payment Contract ("HAP Contract") with a private owner of multifamily rental housing that establishes Contract Rents for apartment units which are leased to low-income families; pursuant to the HAP Contract, "housing assistance payments" are made to the owner to cover all or a portion of those Contract Rents.

9.    Some HAP Contracts are made directly between HUD and the housing owner.

10.    Alternatively, Section 8 authorizes the Secretary of HUD to enter into an Annual Contributions Contract ("ACC") with a public housing agency ("PHA"), pursuant to which the PHA then enters into a HAP Contract with the housing owner. HUD provides all of the funding for the housing assistance payments and prescribes the form of the ACC and the HAP Contract.

11.    Each HAP Contract entered into by a PHA pursuant to Section 8 is approved by HUD, thereby signifying that it has executed the ACC and that the ACC has been properly

authorized, that the faith of the United States is solemnly pledged for the payment of annual

contributions pursuant to the ACC; and that funds have been obligated by the Government for

such payments to assist the PHA in the performance of its obligations under the HAP Contract.

12.   The PHA serves as the "Contract Administrator" with respect to any HAP

Contract to which it is a party and is responsible for monitoring the housing owner's performance

of its obligations under the HAP Contract. The PHA is obliged to administer the HAP Contract

in accordance with HUD requirements and directives and HUD is obliged to fund all housing

assistance payments that are owed pursuant to the HAP Contract.

### IHDA's Participation in the Section 8 Program

13.   IHDA entered into an ACC with HUD and a HAP Contract with plaintiff

Sandburg Village Apartments regarding the multifamily housing project at issue in this action in

1980. The term of this HAP Contract, with automatic renewals, extends to 2020.

14.   IHDA entered into similar contractual arrangements under the Section 8 program

with respect to numerous other multifamily housing projects in Illinois.

15.   IHDA has administered the HAP Contracts for all of its Section 8 projects,

including Sandburg Village Apartments, in accordance with HUD requirements and directives,

and HUD has funded all housing assistance payments made pursuant to those HAP Contracts.

### The Changes in Rent Increase Procedures

16.   Each HAP Contract provides for annual increases of the Contract Rents under

specified conditions.

17.   In 1994 Congress amended Section 8 to place certain additional limitations on

annual increases in Contract Rents. Pub.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

Subsequent statutory amendments cumulatively made these limitations (the "1994 amendments")

applicable to subsequent years. *See* Pub.L. No. 105-33, § 2004, 111 Stat. 257 (1997); Pub.L. No.

105-65, § 201(C)(1), 111 Stat. 1364 (1997); Pub.L. No. 104-204, § 201(g), 110 Stat. 2893

(1996).

18.    On March 7, 1995, HUD issued Notice H 95-12 for the purpose of implementing

the revisions to Section 8 made by Congress. This directive imposed additional requirements

beyond those contained in existing HAP Contracts or the 1994 amendments.

19.    IHDA has administered the HAP Contracts for all of its Section 8 projects in

accordance with Notice H 95-12 and the 1994 amendments, and has only adjusted Contract

Rents as directed and permitted by HUD.

20.    Various housing owners who are parties to HAP Contracts executed before

enactment of the 1994 amendments have challenged the application of those amendments and

Notice H 95-12 to their HAP Contracts as a breach of their contract rights. Certain federal courts

have ruled in favor of these owners.

### The Instant Action

21.    The claims asserted by plaintiff in this action are consistent with the claims

previously made by other similarly situated housing owners in other federal courts.

22.    The alleged breaches of plaintiff's HAP Contract – relating to failure to adjust

Contract Rents, reduction in annual adjustment factors, and requirement of a rent comparability

study at the owner's expense – all result from IHDA following HUD directives, including the

1994 amendments and Notice H 95-12.

23.    IHDA cannot grant Plaintiff the relief it seeks herein unless and until HUD directs

or permits IHDA to do so, which has not yet happened, and IHDA cannot provide this relief until

HUD provides the requisite funding.

24.     The alleged breaches of plaintiff's HAP Contract affect not only past rent increases that were not granted, but also future annual rent increases for Sandburg Village Apartments.

25.     The legal issues relating to the alleged breaches of plaintiff's HAP Contract also affect future annual rent increases for some or all of the other Section 8 projects for which IHDA has entered into similar pre-1994 HAP Contracts and ACCs.

26.     IHDA cannot properly and uniformly administer the Section 8 HAP Contracts to which it is a party, including plaintiff's Section 8 HAP contract, without clarification of (a) its legal rights and obligations with respect to the calculation of annual rent increases, and (b) HUD's rights and obligations with respect to the calculation and funding of annual rent increases.

## COUNT I

### (Administrative Procedure Act)

27.     The allegations of paragraphs 1 through 26 are incorporated by reference as if set forth fully herein.

28.     If IHDA has breached plaintiff's HAP Contract and has applied incorrect requirements and procedures to the adjustment of Contract Rents, it has done so at the direction of HUD and pursuant to HUD requirements.

29.     If HUD has caused IHDA to breach plaintiff's HAP Contract and to apply incorrect requirements and procedures to the adjustment of Contract Rents for other HAP Contracts to which IHDA is a party,  HUD's actions are arbitrary, capricious, an abuse of discretion, contrary to law, and contrary to constitutional right, in violation of 5 U.S.C. § 706.

30.     If HUD has caused IHDA to breach plaintiff's HAP Contract and to apply incorrect requirements and procedures to the adjustment of Contract Rents for other HAP

Contracts to which IHDA is a party, HUD must provide any additional housing assistance payments, retroactive or prospective, to which plaintiff or other Section 8 housing owners are entitled when adjustments to the Contract Rents are calculated correctly and in conformance with applicable legal requirements.

## COUNT II

### (Contract/Indemnification)

31.     The allegations of paragraphs 1 through 30 are incorporated by reference as if set forth fully herein.

32.     If HUD has caused IHDA to breach its Section 8 HAP Contract with plaintiff, HUD has breached the related ACC with IHDA.

33.     If HUD has caused IHDA to breach its Section 8 HAP Contract with plaintiff, IHDA is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches.

## COUNT III

### (Declaratory Judgment)

34.     The allegations of paragraphs 1 through 33 are incorporated by reference as if set forth fully herein.

35.     IHDA seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs.

WHEREFORE, if the Court finds that IHDA has breached the plaintiff's HAP Contract, then IHDA prays that the Court:

A.    Rule that any breach by IHDA of plaintiff's HAP Contract was caused by HUD;

B.    Declare HUD's actions that caused the claimed breaches of plaintiff's HAP Contract are arbitrary, capricious, an abuse of discretion, contrary to law, and/or contrary to constitutional right, in violation of 5 U.S.C. § 706;

C.    Order that HUD shall perform, and/or allow IHDA to perform, future adjustments of the Contract Rents for HAP Contracts to which IHDA is a party in accordance with applicable legal requirements;

D.    Declare the respective rights and responsibilities of IHDA and HUD in applying the 1994 amendments and Notice H 95-12 with respect to determining and funding future adjustments of Contract Rents for the HAP Contracts to which IHDA is a party.

E.    Order HUD to provide any additional housing assistance payments to which plaintiff or other Section 8 housing owners are entitled when Contract Rents are adjusted in a lawful and proper fashion;

F.    Declare that HUD has breached its ACC with IHDA covering Village West;

G.    Declare that IHDA is entitled to indemnification from HUD for all costs and expenses it has sustained or will sustain as a result of the claimed breaches of plaintiff's HAP Contract caused by HUD; and

H.    Award IHDA its costs, disbursements and attorney's fees in this action; and

I.    Grant such other and further relief as is just and proper.

7

Respectfully submitted,

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC #6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Third Party Complaint** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Martin Durkin
Martin Durkin

## CERTIFICATE OF SERVICE

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Third Party Complaint** via U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448

/s/ Martin Durkin
Martin Durkin