UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Greenleaf Limited Partnership | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Sandburg Village Apartments, | ) | |
| An Illinois Limited Partnership | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | Case No.1:08-cv-2480 |
| | ) | Honorable Virginia M. Kendall |
| | ) | |
| v. | ) | |
| | ) | |
| Illinois Housing Development | ) | |
| Authority | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## CONSOLIDATED AMENDED COMPLAINT

This Consolidated Amended Complaint is filed in accordance with the Court's August 19, 2008 Minute Entry. *See* Notification of Docket Entry, Document No. 22. The purpose of this Consolidated Amended Complaint is to include all claims from case no. 08-cv-3446, which has been reassigned to the calendar of Judge Kendall as a related case, with the claims of this action as originally filed.

## INTRODUCTION

1.      Each Plaintiff is the owner of a multifamily rental housing project that is assisted under the U.S. Department of Housing and Urban Development ("HUD") project-based Section 8 Program. Under the project-based Section 8 Program, HUD makes rental assistance payments, called annual contributions, to a public housing agency ("PHA") such as the Defendant, Illinois

Housing Development Authority ("IHDA"). These payments are made in accordance with an Annual Contributions Contract between HUD and the PHA. The PHA, in turn, remits a portion of the annual contributions it receives from HUD to the owner of a project, such as Plaintiffs, in the form of housing assistance payments pursuant to a Housing Assistance Payments ("HAP") Contract between the PHA and the owner for the purpose of reducing the amount of rent paid by the tenants who live in the units covered by the HAP Contract.

2.      In accordance with the HAP Contracts between Plaintiffs and IHDA, Plaintiffs are entitled to an annual increase in the rents and the housing assistance payments payable under the Contracts. IHDA has not increased the rents, or the housing assistance payments payable under the HAP Contracts between Plaintiffs and IHDA, in accordance with the terms of the Contracts since 1994. The failure by IHDA to increase the rents, and the housing assistance payments to which Plaintiffs are entitled under the HAP Contracts, in accordance with the HAP Contracts constitutes a breach of the Contracts between Plaintiffs and IHDA.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

4.      Venue in this Court is proper under 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff Greenleaf Limited Partnership ("Greenleaf") is a limited partnership formed under the laws of Illinois. Greenleaf is the owner of Greenleaf Apartments, a 321-unit multifamily housing rental project located in Bolingbrook, Illinois.

6.      Plaintiff Sandburg Village Apartments, An Illinois Limited Partnership ("Sandburg") is a limited partnership that was formed under the laws of Illinois. Sandburg is the owner of Sandburg Village Apartments ("Sandburg Village"), a 128-unit multifamily rental housing project located in Galesburg, Illinois.

7.      The Defendant was created under the laws of Illinois.  Defendant is a State Agency, as defined by 24 C.F. R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937.  42 U.S.C. § 1437a.

## FACTS

### The Section 8 Program

8.      This action arises under Section 8 of the United States Housing Act of 1937 Act, 42 U.S.C. § 1437f ("Section 8").  Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing. Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

9.      Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA.  An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to a HAP Contract between the PHA and the owner.  The monthly housing assistance payments by the PHA to the owner benefit the low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

10.     HUD has implemented Section 8 through several distinct programs.  One such program is the Section 8 Program for State Housing Agencies.  Greenleaf Apartments and Sandburg Village were built, and are managed, under HUD's Section 8 Program for State Housing Agencies.

11.     The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

12.     A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract."  24 C.F.R. § 883.302 (2007).

13.     A Section 8 HAP Contract establishes a rent ("Contract Rent") for each unit covered by the HAP Contract.  The monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount of rent that the tenant is required by law to pay.

14.     Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the annual increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract.  24 C.F.R. § 888.201(2007).   HUD is required to publish these adjustment factors by notice in the Federal Register at least annually.  24 C.F.R. § 888.202 (2007).

15.     In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Greenleaf Apartments and Sandburg Village, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area."  P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

16.     In that same Act, Congress further revised Section 8 by requiring that for the units in a Section 8 project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual

adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0. P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

17.     These two revisions to Section 8 (the "1994 Amendments") were originally effective for Fiscal Year 1995 only. Congress made the 1994 Amendments applicable to most of fiscal years 1996, 1997 and 1998. They were made permanent beginning with Fiscal Year 1999.

18.     On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 Amendments.

19.     In accordance with Notice 95-12, and subsequent Notices issued by HUD to further implement the 1994 Amendments, in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required, when the Contract Rents exceed the applicable Fair Market Rents published by HUD, to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 ("Form 92273") at least sixty days before the anniversary date of the owner's HAP Contract.

20.     The purpose of Form 92273 is to calculate the estimated market rent for a project's units. If a project's Contract Rents, as adjusted by the applicable annual adjustment factor, are less than the rent calculated on Form 92273, an owner is entitled to the full increase.

21.     If a project's rents, as adjusted by the applicable annual adjustment factor, are greater than the estimated market rent calculated on Form 92273, then additional calculations are required to ensure that the difference between a project's initial Contract Rents and the

rent for a comparable unassisted unit on the effective date of a project's HAP Contract is preserved.

### Greenleaf Apartments

22.    Greenleaf Apartments was built under HUD's Section 8 Program for State Housing Agencies.  The project consists of 9 efficiencies, 240 one-bedroom units and 72 two-bedroom units.

23.    The original owner of Greenleaf Apartments was Preston Drive Limited Partnership ("Preston"), an Illinois limited partnership.  In 2002, Preston sold Greenleaf Apartments to Greenleaf.

24.    Preston entered into a HAP Contract (the "Greenleaf Contract") with IHDA.  A copy of the Contract is attached as Exhibit 1.  HUD signed and approved the Greenleaf Contract. Ex. 1, pp. 5, 5a, 5b and 5c.

25.    There are five stages to the Greenleaf Contract.

26.    The effective date of Stage I of the Greenleaf Contract was October 1, 1981. Stage I covers 30 one-bedroom and 6 two-bedroom units.

27.    The effective date of Stage II was November 1, 1981.  Stage II covers three efficiencies, 50 one-bedroom and 18 two-bedroom units.

28.    The effective date of Stage III was January 1, 1982.  Stage III covers three efficiencies, 80 one-bedroom and 24 two-bedroom units.

29.    The effective date of Stage IV was May 1, 1982.  Stage IV covers two efficiencies, 54 one-bedroom and 16 two-bedroom units.

30.    The effective date of stage V was June 1, 1982.  Stage V covers 1efficiency, 26 one-bedroom and 8 two-bedroom units.

31.    In May 2002, Preston assigned all of its right, title and interest in the Greenleaf Contract to Greenleaf.  HUD and IHDA approved the assignment of the Greenleaf Contract from Preston to Greenleaf in 2002.

32.    The initial term of the Greenleaf Contract was twenty years.  Ex. 1, ¶ 1.2a.  The Greenleaf Contract is automatically renewable for four additional 5-year terms unless either party to the Greenleaf Contract notifies the other party of its desire not to renew the Contract in writing at least sixty days prior to the expiration of the current term of the Contract and the other party agrees in writing to the non-renewal.  Ex. 1, ¶ 1.2(b).

33.    The Greenleaf Contract states, "Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract."  Ex. 1, ¶ 2.7(b)(1).  The "anniversary date of the Contract" between Plaintiff and IHDA is the effective date of each stage of the Contract.  Accordingly, there are five anniversary dates, one for each stage, on which IHDA is required under the Greenleaf Contract to increase the Contract Rents at Greenleaf Apartments for the units covered by that stage.

34.    The initial Contract Rent for the efficiencies at Greenleaf Apartments was $495. For the one-bedroom and two-bedroom units at Greenleaf Apartments, the initial Contract Rent was $578 and $681, respectively.

35.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Greenleaf Apartments was increased annually by IHDA, as required by the Greenleaf Contract.  There has been only one increase to the Contract Rents at Greenleaf since notice 95-12 was issued.  That increase was effective on October 1, 2002 and was applicable to all the units at Greenleaf Apartments.

### Sandburg Village Apartments

36.     Sandburg Village was built under HUD's Section 8 Program for State Housing Agencies.  The project consists of 44 one-bedroom units, 4 one-bedroom handicap units, 62 two-bedroom units, 2 two-bedroom handicap units and 16 three-bedroom units.

37.     Sandburg entered into a HAP Contract (the "Sandburg Village Contract") with IHDA effective October 1, 1980.  A copy of the HAP Contract is attached as Exhibit 2.  HUD signed and approved the HAP Contract between Plaintiff and IHDA.

38.     There are six stages to the Sandburg Village Contract.

39.     The effective date of Stage I of the Sandburg Village Contract was October 1, 1980. Stage I covers 12 two-bedroom and 12 three-bedroom units.

40.     The effective date of Stage II and Stage III was November 1, 1980.  Stage II covers 4 two-bedroom and 4 three-bedroom units.  Stage III covers 12 one-bedroom and 12 two-bedroom units.

41.     The effective date of Stage IV and Stage V was December 1, 1980.  Stage IV covers 8 one-bedroom, 4 one-bedroom handicap, 10 two-bedroom and 2 two-bedroom handicap units.  Stage V covers 12 one-bedroom and 12 two-bedroom units.

42.     The effective date of Stage VI was March 1, 1981.  Stage VI covers 12 one-bedroom and 12 two-bedroom units.

43.     The initial term of the Sandburg Village Contract was five years. Ex. l, §1.lb.  The Sandburg Village Contract is automatically renewable for seven additional five-year terms unless either party to the Contract notifies the other party of its desire not to renew in writing at least sixty days prior to the expiration of the current term of the Contract, and the other party agrees in writing to the non-renewal. Ex. 1, §§l.lc and 1.4a.

44.    The Sandburg Village Contract states, "On each anniversary date of the Contract, the Contract Rents **shall** be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government." Ex. 1, §1.9b (2) (emphasis added).

45.    There are six anniversary dates of the Sandburg Village Contract, the effective date of each stage of the Contract.  IHDA is required by the Sandburg Village Contract to increase the Contracts Rents on the anniversary date for the units covered by each stage of the Contract.

46.    The initial Contract Rents at Sandburg Village were: 1-bedroom-$318; 1-bedroom handicap-$335; 2-bedroom-$377; 2-bedroom handicap-$398; and 3-bedroom-$425.

47.    Before Notice 95-12 was issued, the Contract Rent for each unit type at Sandburg Village was increased annually by IHDA, as required by Sandburg's HAP Contract with IHDA.

48.    Although there have been increases in the Contract Rent for each unit type at Sandburg Village since Notice 95-12 was issued, the Contract Rents have not been increased annually as required by the Sandburg Village Contract.  In addition, the increases that have been made were less than the amount to which Sandburg was entitled under the Sandburg Village Contract.

### COUNT I - BREACH OF CONTRACT
### (Failure to Increase Contract Rents)

49.    Plaintiffs reallege paragraphs 1-48.

50.    Under the HAP Contracts between Plaintiffs and IHDA, Plaintiffs are entitled, on the anniversary date of each stage of their Contracts, to an annual increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents at Plaintiffs' projects.

51.     Contrary to the terms of the HAP Contracts between Plaintiffs and IHDA, IHDA has not increased the Contract Rents at Plaintiffs' projects annually, as required by the HAP Contracts, since HUD issued Notice 95-12 on March 7, 1995.  In addition, the increases to the Contract Rents at Plaintiffs' projects made by IHDA since Notice 95-12 was issued were for an amount less than the amount to which Plaintiffs were entitled under their HAP Contracts with IHDA.

52.     IHDA's failure to increase the Contract Rents at Plaintiffs' projects in accordance with the terms of Plaintiffs' HAP Contracts since HUD issued Notice 95-12 constitutes a breach of the HAP Contracts between Plaintiffs and IHDA.

53.     This breach of Plaintiffs' HAP Contracts by IHDA has damaged Plaintiffs by reducing the Contract Rents that are required by the Contracts which, in turn, has reduced the housing assistance payments to which Plaintiffs are entitled under Plaintiffs' HAP Contracts with IHDA.

## COUNT II-BREACH OF CONTRACT
### (Reduction in Annual Adjustment Factors)

54.     Plaintiffs reallege paragraphs 1-53.

55.     Since Notice 95-12 was issued, HUD has published two tables of annual adjustment factors when HUD published the factors in the Federal Register. Table I has been applicable to turnover units, i.e. units that were occupied by a family different from the family that occupied the unit at the time of a project's previous annual rent increase.  For non-turnover units, i.e. units that were occupied by the same family as the family that occupied the unit at a project's previous annual rent increase, Table 2 has reduced the adjustment factors in Table 1 by .01, except no factor was reduced below 1.0.

56.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment factors otherwise applicable to Section 8 projects, including the adjustment factors applicable to Plaintiffs' projects, by .01 for non-turnover units.

57.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at Plaintiffs' projects results in Contract Rents that are lower than the Contract Rents to which Plaintiffs are entitled under the HAP Contracts between Plaintiffs and IHDA.  This constitutes a breach of the HAP Contracts between Plaintiffs and IHDA and damages Plaintiffs by reducing the Contract Rents, and the housing assistance payments, to which Plaintiffs are entitled under their HAP Contracts with IHDA.

## COUNT III-BREACH OF CONTRACT
### (Rent Comparability Study)

58.    Plaintiffs reallege paragraphs 1-57.

59.    IHDA requires Plaintiffs, and other Section 8 project owners, to submit a Rent Comparability Study, prepared at Plaintiffs' expense, before deciding whether to increase the Contract Rents at Plaintiffs' projects.

60.    In 2002, Greenleaf submitted a Rent Comparability Study in connection with a rent increase request submitted by Greenleaf to IHDA.

61.    In 2000, Sandburg submitted a Rent Comparability Study in connection with a rent increase request submitted by Sandburg to IHDA.

62.    No provision of Plaintiffs' HAP Contracts with IHDA requires Plaintiffs to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiffs are entitled under their HAP Contracts.

63.    The requirement to submit a Rent Comparability Study imposed by IHDA on Plaintiffs constitutes a breach of the HAP Contracts between Plaintiffs and IHDA.

64.     Plaintiffs have been damaged by this breach by IHDA of the HAP Contracts between Plaintiffs and IHDA through the cost incurred by Plaintiffs in obtaining the Rent Comparability Studies submitted by Plaintiffs to IHDA.

WHEREFORE, Plaintiff pray that the Court:

(i)     Find that IHDA has breached the HAP Contracts between Plaintiffs and IHDA;

(ii)    Award Plaintiffs compensatory damages for the breaches by IHDA of Plaintiffs' HAP Contracts with IHDA;

(iii)   Order IHDA to increase the current Contract Rents at Plaintiffs' projects to reflect the annual increases to which Plaintiffs have been entitled in accordance with the HAP Contracts between Plaintiffs and IHDA;

(iv)    Award Plaintiffs their costs and expenses of this action, including attorney fees; and

(v)     Award any other relief to which Plaintiffs are entitled or that the Court determines is appropriate

Respectfully Submitted,

GREENLEAF LIMITED PARTNERSHIP

and

SANDBURG VILLAGE APARTMENTS,
AN ILLINOIS LIMITED PARTNERSHIP

By Its Attorneys:

September 3, 2008                    /s/ Richard A. Wolfe_____
                                     Richard A. Wolfe
                                     Wolfe and Polovin
                                     180 W. LaSalle Street
                                     Suite 2420
                                     Chicago, IL 60601
                                     (312) 782-1681 (Telephone)
                                     (312) 782-5108 (Facsimile)


Of Counsel:

Carl A.S. Coan, Jr.
Carl A.S. Coan, III
Coan & Lyons
1100 Connecticut Avenue, N.W.
Suite 1000
Washington, DC  20036
(202) 728-1070 (Telephone)
(202) 293-2448 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2008, I electronically transmitted the foregoing

**Consolidated Amended Complaint** to the Clerk of the Court, using the ECF system for filing,

and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed

on the ECF system for this case.

/s/ Richard A. Wolfe
Richard A. Wolfe

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**GREENLEAF LIMITED PARTNERSHIP**

**and**

**SANDBURG VILLAGE APARTMENTS, AN**
**ILLINOIS LIMITED PARTNERSHIP**

**v.**

**ILLINOIS HOUSING DEVELOPMENT AUTHORITY**

**Case No. 1:08-cv-2480**
**Honorable Virginia M. Kendall**

**CONSOLIDATED AMENDED COMPLAINT**

**EXHIBIT 1 – Part I**

Case 1:08-cv-02480   Document 35-4   Filed 09/08/2008   Page 2 of 17

DEPARTMENT OF HOUSING ASSISTANCE
STATE HOUSING AGENCIES

PART I OF THE

HOUSING ASSISTANCE PAYMENTS CONTRACT

Type of Project: Constructed under 24 CFR
Part 883, Subpart D with or     or
without set-aside ___X___

Processed under 24 CFR
Part 880 or Part 881,
Subparts C & D using
set-aside _____

Small Project_____ or Partially-Assisted Project_____ or Other 100% a
New Construction _____ or Substantial Rehabilitation ___X___

Type of Financing:_____ State Agency Tax-Exempt Loan _____

[For example: subject to Part 811, HUD-insured; State agency
tax exempt loan, not HUD-insured.]

ACC/HAP CONTRACT LIST NUMBER AND DATE: C-68-958, 9/29/80

MASTER SECTION 8 ACC NUMBER: _____ C-1065 _____

DATE OF ACC PART I FOR THIS PROJECT: September 30, 1980

SECTION 8 PROJECT NUMBER: IL06-H121-180

FHA PROJECT NUMBER (if applicable): None

HFA PROJECT NUMBER: ML-74

This Housing Assistance Payments Contract (Contract) is entered into by and
between the _____ ILLINOIS HOUSING DEVELOPMENT AUTHORITY _____
(HFA) which is a State Housing Finance and/or Development Agency and a public
housing agency as defined in the United States Housing Act of 1937, 42 U.S.C.
1437, et seq. (Act) and Preston Drive Limited Partnership, an Illinois Limited
_____ Partnership _____ (Owner), and approved by the United
States of America acting through the Department of Housing and Urban Development
(HUD), pursuant to the Act and the Department of Housing and Urban Development
Act, 42 U.S.C. 3531, et seq. The purpose of this Contract is to provide housing
assistance payments on behalf of Eligible Families leasing decent, safe and
sanitary units from the Owner.

1.1  SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS AND SCOPE OF CONTRACT.

   (a)  Effective Date of Contract:   OCTOBER 1 _____, 1981 .

   (b)  Fiscal Year. The ending date of each Fiscal Year shall be  June 30
_____ . [Insert March 31, June 30, September 30
or December 31, as approved by HUD.] The Fiscal Year for the project
shall be the 12-month period ending on this date. However, the first
Fiscal Year for the project is the period beginning with the effective
date of the Contract and ending on the last day of the Fiscal Year
which is not less than 12 months after the effective date. If the
first Fiscal Year exceeds 12 months, the maximum total annual housing
assistance payment in section 1.1(c) will be adjusted by the addition
of the pro rata amount applicable to the period of operation in excess
of 12 months.

ment for housing assistance payments under this contract (see
tion 7 is $ 2,378,952                      year. [Insert
amount authorized under the ACC for housing assistance payments.]
This amount may be increased or decreased by appropriate amendment
in accordance with this Contract.

(d)  Statement of Services, Maintenance and Utilities Provided by the Owner.
[This information may be made an additional Exhibit under paragraph (e).]

(1)  Services and Maintenance:

(2)  Equipment:

See Exhibit 6

(3)  Utilities:

(4)  Other:

(e)  Contents of Contract.  This Contract consists of Part I, Part II
(except as indicated in section 1.4), and the following exhibits:

Exhibit 1:  The schedule showing the number of units by size
            ("Contract Units") and their applicable rents
            ("Contract Rents").

Exhibit 2:  Daily Debt Service.  [This exhibit shall be added when
            necessary for purposes of section 2.4(d) of this
            Contract or section 2.3(f) of the Agreement.]

Exhibit 3:  The Affirmative Fair Housing Marketing Plan, if
            applicable.

Exhibit 4:  The Agreement to Enter Into Housing Assistance Payments
            Contract (Agreement).

Exhibit 5:  Project Description.

Additional exhibits: [Specify additional exhibits, if any, such as
Agreement for Completion, Statement of Services, Maintenance and
Utilities provided by Owner.  If none, insert "None."]
Exhibit 6:  Statement of Services, Maintenance and Utilities Provided by
Exhibit 7:  Substantial Completion Certifications of Owner and IHDA
Exhibit 8:  Pledge Agreement

(f)  Percent of Units to be Leased to Very Low-Income Families.  In the
initial renting of the Contract Units, the minimum percentage of
those units required to be leased to Very Low-Income Families
(see section 2.8(c)(3)) shall be    thirty    percent.

-2-                              HUD-52645A (8-80)

... ~~-shed  incorporated by reference ...  ... ...  ...re agreement
...ween  Owner and the HFA with respe...  ...o the  ...ters contained in
it.  Neither party is bound by any representations or agreements of any
kind except as contained in this Contract, any applicable regulations,
and agreements entered into in writing by the parties which are not
inconsistent with this Contract.

(h)  **Rights of Other Parties.**  Except as specifically provided in this Contrac
the parties hereto do not intend to give, vest or confer upon any parties
not executing this Contract any rights, entitlements, benefits or causes
of action hereunder, nor shall this Contract be construed to give rise in
any fashion to such rights, entitlements, benefits or causes of action.

## 1.2  TERM OF CONTRACT; OBLIGATION TO OPERATE PROJECT FOR FULL TERM.

(a)  **Initial Term.**  The initial term of this Contract for any unit shall be
20 years, unless sooner terminated with the approval of HUD.  The term
shall commence with the effective date of this Contract for such unit.

(b)  **Renewal Terms.**  The Contract may be renewed for additional terms of
not more than five years each, as follows.

Renewal Term #1 _____5_____ years.

Renewal Term #2 _____5_____ years.

Renewal Term #3 _____5_____ years.

Renewal Term #4 _____5_____ years.

[Attach exhibit showing additional renewal terms, if necessary.]
Renewals shall be automatic unless either party notifies the other
in writing, no later than 60 days prior to the expiration of the
current term, of its desire not to renew, and the other party agrees
in writing that there shall be no renewal.

(c)  **Maximum Total Term.**  The total Contract term for any unit, including
all renewals, shall not exceed the shorter of (1) ____40____ years or
(2) a period terminating on the date of the originally scheduled
maturity date on the permanent financing.  [Insert in (1) a number
of years equal to the maximum anticipated number of years during
which assistance payments will be made, consistent with HUD regulations
and requirements.]

(d)  **Staged Completion.**  If the project is completed in stages, the term
shall be separately related to the units in each stage unless the
HFA and the Owner agree that only the units in the first stage will
be assisted for the maximum term of the Contract.  However, the total
Contract term for the units in all stages, beginning with the effective
date of the Contract for the first stage, shall not exceed the total
Contract term stated in paragraph (c), plus two years.

(e)  **Obligation to Operate Project in Accordance with Contract.**  The Owner
agrees to continue operation of the project in accordance with this
Contract during the initial and any renewal terms.  This does not
preclude the parties from agreeing not to renew.

## 1.3  ANNUAL CONTRIBUTIONS CONTRACT.

(a)  **Identification of Annual Contributions Contract (ACC).**  The HFA has enter
into an ACC identified above with HUD for this project.  Under the ACC,
HUD agrees to provide financial assistance to the HFA pursuant to section
of the U.S. Housing Act of 1937 for the purpose of making housing assis-
tance payments.  A copy of the ACC shall be provided upon request.



HUD-52645A (8-80)

p— ion of annual contributions payable under the ACC of the housing owner, as—d or modify the ACC in any manner which would reduce the amount of the annual contributions, except as authorized in the ACC and this Contract.

(c) HUD Assurance. The approval of this Contract by HUD is an assurance by HUD to the Owner that:

(1) HUD has executed the ACC and the ACC has been properly authorized;

(2) The faith of the United States is solemnly pledged to the payment of annual contributions pursuant to the ACC;

(3) HUD has obligated funds for these payments to assist the HFA in the performance of its obligations under the Contract; and

(4) HUD and the HFA will not, without the consent of the Owner, amend or modify the ACC in any manner which would reduce the amount of annual contributions payable under it for housing assistance payments except as authorized in the ACC and this Contract.

1.4 APPLICABILITY OF CERTAIN PROVISIONS OF THIS CONTRACT.    Applic.   Not Applic.

(a) 2.4(1).  Payments to Trustee by HFA.
Applicability:  Applies
where the Owner and the HFA request.                              x

(b) [If the Contract Rents are adjusted under section 2.4 of the Agreement, and either section 2.7(f) or (g) of this Contract has been checked "applicable" at the time of execution of the Agreement, it should be changed to "not applicable" when the Contract is executed.]

(1) 2.7(f).  Adjustment of Contract Rents
Based on Cost Certification.
Applicability:  All projects
unless (1) the Contract Rents do
not exceed comparable rents; or
(2) the Contract Rents do not
exceed comparable rents by more
than 10 percent for Small and
Partially-Assisted Projects.                                                X

(2) 2.7(g).  Adjustment of Contract Rents to
Reflect Actual Cost of Tax Exempt
Obligations.  Applicability:  All
projects using a set-aside and
constructed under Part 883,
Subpart D.                                                      X

(c) 2.13.  Training, Employment and Contracting
Opportunities.  Applicability:  All
projects for which the total initial
Contract Rents over the term of the
Contract including all renewals
exceed $500,000.                                                X

—4—

(d)   2.14.   Flood Insurance.  Applicability:  All
                                                          X

(e)   2.15.   Clean Air and Federal Water Pollution
              Control Acts.  Applicability:  All
              projects for which the total initial
              Contract Rents over the term of the
              Contract including all renewals
              exceed $100,000.
                                                          X

WARNING:  18 U.S.C. 1001 provides, among other things, that whoever knowingly and
willfully makes or uses a document or writing containing any false, fictitious,
or fraudulent statement or entry, in any matter within the jurisdiction of any
department or agency of the United States, shall be fined not more than $10,000
or imprisoned for not more than five years, or both.

OWNER   Preston Drive Limited Partners
        By  Security Properties-'75, G

By _____
*   Michael Utt

                                    _____
Approved:                                  Attorney-In-Fact
                                             (Official Title)
United States of America
Secretary of Housing and           Date  SEPTEMBER 30        , 19 81
  Urban Development


                                   HFA ILLINOIS HOUSING DEVELOPMENT AUTHO

By _____  By _____
*                                   *   Kenneth B. Marshall

_____
        Director Housing Division          _____
          (Official Title)                   Manager-Production Services
                                                (Official Title)
Date     JAN  8 1982       , 19____  Date  SEPTEMBER 30        , 19 81

[If the project is to be completed and accepted in stages, execution of the
Contract with respect to the several stages appears on the following pages of
this Contract.]

*Type name of signatory under signature line.

                              -5-                    HUD-52645A (8-80)

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| One-Bedrooms | 30 | Elderly | $ 578 |
| Two-Bedrooms | 6 | Elderly | $ 681 |

<u>Stage I</u>

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).



-6-                                              HUD-52645A (8-80)

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ...

## Stage 1

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1a is __OCTOBER 1_____, 19 81 .

Approved:

United States of America
Secretary of Housing and
Urban Development

By _____
*

__Director Housing Division__
(Official Title)

Date____JAN 8 1982____, 19____

OWNER By: Preston Drive Limited Partnership
Security Properties-'75,Gene:

By _____
* Michael Utt

____Attorney-In-Fact____
(Official Title)

Date__SEPTEMBER 30____, 19 81

HFA __Illinois Housing Development Autho

By _____
* Kenneth B. Marshall

____Manager-Production Services____
(Official Title)

Date__SEPTEMBER 30____, 19 81

## EXECUTION OF CONTRACT WITH RESPECT TO
## CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

## Stage 2

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1b is _____, 19____ .

Approved:

United States of America
Secretary of Housing and
Urban Development

By_____
*

_____
(Official Title)

Date_____, 19____

*Type name of signatory under
signature line

OWNER_____

By_____
*

_____
(Official Title)

Date_____, 19____

HFA_____

By_____
*

_____
(Official Title)

Date_____, 19____

HUD-52645A (8-80)*

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

## Stage 1

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1a is _____, 19_____.

Approved:                                   OWNER_____

United States of America                    By_____
Secretary of Housing and                    *
    Urban Development

                                            _____
                                                    (Official Title)

By_____         Date_____, 19____
*

_____
        (Official Title)

Date_____, 19____            HFA_____

                                            By_____
                                            *

                                            _____
                                                    (Official Title)

                                            Date_____, 19____


EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

## Stage 2

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1b is _____NOVEMBER 1_____, 19 81.

Approved:                                   Preston Drive Limited Partnership
                                            OWNER By Security Properties-'75,General Part
United States of America
Secretary of Housing and                    By _____
    Urban Development                       * Michael Utt

                                            _____Attorney-In-Fact_____
                                                    (Official Title)

By _____            Date___OCTOBER 21_____, 19 81
*

_____Director Housing Division___
        (Official Title)

Date___FEB 8  1982_____, 19____            HFA Illinois Housing Development Authority

                                            By _____
*Type name of signatory under               * Kenneth B. Marshall
  signature line
                                            _____Manager-Production Services_____
                                                    (Official Title)

                                            Date___OCTOBER 21_____, 19 81


HUD-52645A (8-80)*

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

### Stage 3

This Contract is hereby executed with respect to the units described in Exhibit 1c.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1c is ___JANUARY 1___, 19 82.

Approved:

United States of America
Secretary of Housing and
Urban Development


By_____
*
___DEPUTY DIRECTOR, MFHD___
           (Official Title)

Date_____APRIL 6___, 1982


Preston Drive Limited Partnership
OWNER By: /Security Properties-'75, General Part

By_____
*  Michael Utt


_____Attorney-In-Fact_____
           (Official Title)

Date___DECEMBER 30___, 19 81


HFA_Illinois Housing Development Authority
By_____
*  Kenneth B. Marshall

_____Manager-Production Services_____
           (Official Title)

Date___DECEMBER 30___, 19 81


*Type name of signatory under signature line.

-5b-                    HUD-52645A (8-80) *

CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

### Stage 4

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1d is _____ May 1 _____, 1982 .

| | |
|---|---|
| Approved: | Preston Drive Limited Partnership |
| | OWNER By: Security Properties-'75, General Part: |
| United States of America | |
| Secretary of Housing and | By _____ Michael Utt _____ |
| Urban Development | * Michael Utt |
| | _____ Attorney-In-Fact _____ |
| By _____ | (Official Title) |
| * | Date _____ APRIL 30 _____, 1982 |
| DEPUTY DIRECTOR MFMD | |
| (Official Title) | |
| Date _____ JULY 27 _____, 1982 | HFA Illinois Housing Development Authority |
| | By _____ Kenneth B. Marshall _____ |
| | * Kenneth B. Marshall |
| | _____ Manager-Production Services _____ |
| | (Official Title) |
| | Date _____ APRIL 30 _____, 1982 |

### EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

### Stage 5

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1e is _____, 19_____.

| | |
|---|---|
| Approved: | OWNER _____ |
| United States of America | By _____ |
| Secretary of Housing and | * |
| Urban Development | |
| | _____ |
| | (Official Title) |
| By _____ | Date _____, 19____ |
| * | |
| _____ | HFA _____ |
| (Official Title) | |
| Date _____, 19____ | By _____ |
| | * |
| *Type name of signatory under signature line | _____ |
| | (Official Title) |
| | Date _____, 19____ |

HUD-52645A (8-80)*

CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGE

### Stage 4

This Contract is hereby executed with respect to the units described in Exhibit 1a.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1d is _____, 19_____.

Approved:

United States of America
Secretary of Housing and
Urban Development

By_____
*

_____
(Official Title)

Date_____, 19____

OWNER_____

By_____
*

_____
(Official Title)

Date_____, 19____

HFA_____

By_____
*

_____
(Official Title)

Date_____, 19____

### EXECUTION OF CONTRACT WITH RESPECT TO
### CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

### Stage 5

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1e is _____JUNE 1_____, 19 82 .

Approved:

United States of America
Secretary of Housing and
Urban Development

By_____
*

___DEPUTY DIRECTOR MFHD___
(Official Title)

Date___JULY 27___, 19 82

*Type name of signatory under
signature line

Preston Drive Limited Partnership
OWNER By: Security Properties-'75, General Partn

By_____
*   Michael Utt

___Attorney-In-Fact___
(Official Title)

Date___MAY 27___, 19 82

HFA___Illinois Housing Development Authority

By_____
*   Kenneth B. Marshall

___Manager-Production Services___
(Official Title)

Date___MAY 27___, 19 82

HUD-52645A (8-80)*

EXHIBIT 1

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| One-Bedrooms | 30 | Elderly | $ 578 |
| Two-Bedrooms | 6 | Elderly | $ 681 |

Stage I

[1]/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed.  It may, however, be amended in accordance with program rules before the Contract is executed.  When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

[2]/ If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).



SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 3 | Elderly | $ 495 |
| One-Bedrooms | 50 | Elderly | $ 578 |
| Two-Bedrooms | 18 | Elderly | $ 681 |

STAGE II

1/
This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/
If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

-6-

HUD-52645A (8-80) *

EXHIBIT 1 - C

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 3 | Elderly | $ 495 |
| One-Bedrooms | 80 | Elderly | $ 578 |
| Two-Bedrooms | 24 | Elderly | $ 681 |

Stage III

[1]/
This Exhibit must be completed and attached to the Contract at the time the Agreement is executed.  It may, however, be amended in accordance with program rules before the Contract is executed.  When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

[2]/
If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

HUD-52645A (8-80) *

## EXHIBIT 1-D

### SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS [1]

| Number of Bedrooms | Number of Units [2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 2 | Elderly | $ 495 |
| One-Bedrooms | 54 | Elderly | $ 578 |
| Two-Bedrooms | 16 | Elderly | $ 681 |

STAGE IV

FLOORS 2 AND 3 OF BUILDING 504

1/
This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/
If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

HUD-52645A (8-80)

EXHIBIT 1-E

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS[1]

| Number of Bedrooms | Number of Units[2] | Household Type (elderly, non-elderly family, large nonelderly family) | Contract Rent |
|---|---|---|---|
| Efficiencies | 1 | Elderly | $ 495 |
| One-Bedrooms | 26 | Elderly | $ 578 |
| Two-Bedrooms | 8 | Elderly | $ 681 |

STAGE V

FIRST FLOOR OF BUILDING 504

1/
This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g., at the time of an annual adjustment) this format should be used.

2/
If less than 100 percent of units in the project are covered by this Contract, identify the specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

HUD-52645A (8-80)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREENLEAF LIMITED PARTNERSHIP

and

SANDBURG VILLAGE APARTMENTS, AN
ILLINOIS LIMITED PARTNERSHIP

v.

ILLINOIS HOUSING DEVELOPMENT AUTHORITY

Case No. 1:08-cv-2480
Honorable Virginia M. Kendall

CONSOLIDATED AMENDED COMPLAINT

EXHIBIT 1 – Part II

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
STATE HOUSING AGENCIES

PART II OF THE

HOUSING ASSISTANCE PAYMENTS CONTRACT

*ML-74*

By and Between _____ ILLINOIS HOUSING DEVELOPMENT AUTHORITY _____ (HFA)
and _ Preston Drive Limited Partnership, an Illinois Limited Partnership _ (Owner

Check Type of Project:   Constructed under Part 883,      Processed under Part 8
                         Subpart D, With or Without   or  881, Subparts C & D,
                         Set-Aside        X               Using Set-Aside ____

                         New Construction _____ or Substantial Rehabilitation  X

SECTION 8 PROJECT NUMBER: _____ IL06-H121-180 _____

FHA PROJECT NUMBER (if applicable): ____ None _____

HFA PROJECT NUMBER: _____ ML-74 _____

2.1  OWNER'S WARRANTIES; AMENDMENTS.

   (a)  Legal Capacity.  The Owner warrants that it has the legal right to
        execute this Contract and to lease dwelling units covered by this
        Contract.

   (b)  Completion of Work.  The Owner warrants that the project as described
        in section 1.1 is in good tenantable condition and that the project
        has been completed in accordance with the terms and conditions of the
        Agreement to Enter into Housing Assistance Payments Contract (Agreement)
        or will be completed in accordance with the Agreement for Completion
        (see attached exhibit, where applicable).  The Owner further warrants
        that it will remedy any defects or omissions covered by this warranty if
        called to its attention within 12 months of the effective date of this
        Contract.  The Owner and the HFA agree that the continuation of this
        Contract shall be subject to the Owner meeting the requirements of the
        Agreement for Completion.

2.2  FAMILIES TO BE HOUSED; HFA ASSISTANCE.

   (a)  Families To Be Housed.  The Contract Units are to be leased by the
        Owner to eligible Lower-Income Families (Families) for occupancy
        by such Families solely as private dwellings and as their principal
        place of residence.  (See also section 2.10.)

   (b)  HFA Assistance.

        (1)  The HFA hereby agrees to make housing assistance payments on
             behalf of Families for the Contract Units, to enable the
             Families to lease Decent, Safe, and Sanitary housing pursuant
             to section 8 of the Act.

        (2)  If there is a Utility Allowance and if the Allowance exceeds the
             total Family contribution, the Owner shall pay the Family the amount
             of the excess.  The HFA will pay funds to the Owner in trust solely
             for the purpose of making this payment.  Any pledge by the Owner of
             payments properly payable under this Contract shall not be construed

include payments covered by th. parag. , (b)(2). (See
24 CFR 883.602(e).)

2.3 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

(a) Maximum Annual Contract Commitment. Notwithstanding any other
provisions of this Contract (other than paragraph (b) of this
section) or any provisions of any other contract between the HFA
and the Owner, the HFA shall not be obligated to make and shall not
make any housing assistance payments under this Contract in excess of
the amount identified in section 1.1(c). However, this amount may
be reduced commensurately with any reduction in the number of Contract
Units or in the Contract Rents or pursuant to any other provisions of
this Contract (except reductions in Contract Rents pursuant to section
2.7(g)(2) to reflect lower than anticipated debt service).

(b) Project Account.

(1) A project account will be established and maintained by HUD,
consistent with its responsibilities under section 8(c)(6) of
the Act, as a specifically identified and segregated account
for the project. The account will be established and maintained
in an amount determined by HUD, out of the amounts by which the
Maximum ACC Commitment (exclusive of any Financing Cost Contin-
gency) exceeds the amount actually paid out under the ACC each
year. Payments will be made from this account for housing
assistance payments (and fees for HFA administration, if
appropriate) when needed to cover increases in Contract Rents
or decreases in tenant rents and for other costs specifically
approved by the Secretary.

(2) If funds are available in the project account, the maximum
annual contribution otherwise payable for any fiscal year may
be increased by the amount, if any, as may be required for
increases reflected in the estimate of required annual
contribution applicable to that fiscal year as approved by
HUD in accordance with section 2.11 of the ACC.

(3) Whenever a HUD-approved estimate of the required Annual Con-
tribution for a fiscal year exceeds the maximum ACC Commitment
then in effect (exclusive of any Financing Cost Contingency) and
would cause the amount in the project account to be less than
40 percent of the Maximum ACC Commitment, HUD will, within a
reasonable period of time, take such additional steps authorized
by section 8(c)(6) of the U.S. Housing Act of 1937 as may be
necessary to assure that payments under the ACC and the Contract
will be adequate to cover increases in Contract Rents and decrease
in rents payable by tenants, including (as provided in that secti
of the Act) "the reservation of annual contributions authority fo
the purpose of amending housing assistance contracts, or the allo
of a portion of new authorizations for the purpose of amending
housing assistance contracts."

(4) Any amount remaining in the account after payment of the last
annual contribution with respect to the project shall be applied
by HUD in accordance with law.

2.4 HOUSING ASSISTANCE PAYMENTS TO OWNERS.

(a) Housing Assistance Payments on Behalf of Families.

(1) Housing assistance payments shall be paid to the Owner for
units under lease for occupancy by Families in accordance with



HUD-52645B (8-80)

Contract. The housing assist' payment ll cover the
difference between the Contract Re and t portion of the rent
payable by the Family as determined in accordance with the HUD-
established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of
a Family and the amount of rent payable by the Family shall
be subject to change by reason of changes in Family Income,
family composition, extent of exceptional medical or other
unusual expenses or program rules in accordance with the
HUD-established schedules and criteria; or by reason of a
change in any applicable Utility Allowance approved or
required by the HFA. Any such change shall be effective
as of the date stated in a notification of the change to
the Family, which need not be at the end of the Lease term.

(b) <u>Vacancies During Rent-up</u>. If a Contract Unit is not leased as of
the effective date of the Contract, the Owner is entitled to
housing assistance payments in the amount of 80 percent of the
Contract Rent for the unit for a vacancy period not exceeding 60
days from the effective date of the Contract, provided that the
Owner (1) commenced marketing and otherwise complied with section
2.1(d) of the Agreement, (2) has taken and continues to take all
feasible actions to fill the vacancy, including, but not limited to,
contacting applicants on its waiting list, if any, requesting the
HFA and other appropriate sources to refer eligible applicants, and
advertising the availability of the unit in a manner specifically
designed to reach eligible families, and (3) has not rejected any
eligible applicant, except for good cause acceptable to the HFA.

(c) <u>Vacancies after Rent-up</u>. If an eligible family vacates a unit, the
Owner is entitled to housing assistance payments in the amount of 80
percent of the Contract Rent for the first 60 days of vacancy if the
Owner:

(1) Certifies that it did not cause the vacancy by violating the
lease, the Contract or any applicable law or by moving a
Family to another unit;

(2) Notified the HFA of the vacancy or prospective vacancy and the
reasons for it immediately upon learning of the vacancy or
prospective vacancy;

(3) Has fulfilled and continues to fulfill the requirements
specified in the last sentence of section 2.2(d)(1) of the
Agreement and paragraphs (b)(2) and (3) of this section; and

(4) Certifies that any eviction resulting in a vacancy was
carried out in compliance with section 2.9.

(d) <u>Vacancies for Longer than 60 Days</u>. If an assisted unit continues
to be vacant after the period specified in paragraph (b) or (c) of
this section, the Owner may apply to receive additional payments
for the vacancy period in an amount equal to the principal and
interest payments required to amortize that portion of the debt
service attributable to the vacant unit (see Exhibit 2) for up
to 12 additional months for the unit if:

(1) The unit was in decent, safe and sanitary condition during
the vacancy period for which payments are claimed;

(2) The Owner has fulfilled and continues to fulfill the require-
ments specified in paragraph (b) or (c) of this section, as
appropriate; and



-3-

satisfaction of that:

> (i) For the period of vacancy, the project is not providing the Owner with revenues at least equal to project expenses (exclusive of depreciation), and the amount of payments requested is not more than the portion of the deficiency attributable to the vacant unit, and
>
> (ii) The project can achieve financial soundness within a reasonable time.

(e) **Prohibition of Double Compensation for Vacancies.** The Owner is not entitled to payments for vacant units to the extent it can collect for vacancy from other sources (such as security deposits, other amounts collected from the Family, payments from the HFA under section 2.8(b), and governmental payments under other programs). If the Owner collects any of the Family's share of the rent for a vacancy period in an amount which, when added to the vacancy payment, results in more than the Contract Rent, the excess must be reimbursed as the HFA directs.

(f) **HFA Not Obligated for Family Rent.** The HFA has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with section 2.8(b) of this Contract. The financial obligation of the HFA is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

(g) **Owner's Monthly Requests for Payments.**

(1) The Owner shall submit monthly requests to the HFA or as directed by the HFA for housing assistance payments. Each request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or number of each unit, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit 1 for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit (or, where applicable, the amount to be paid the Family in accordance with section 2.2(b)(2)); and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by it that to the best of its knowledge and belief (i) the dwelling units are in decent, safe, and sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, (iv) none of the amount claimed has been previously claimed or paid under this Contract, and (v) the Owner has not received and will not receive any payments or other considerations from the Family, the HFA, HUD, or any other public or private source for the unit beyond that authorized in this Contract and the lease.

(3) If the Owner has received an excessive payment, the HFA in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.



HUD-52645B (8-80)

(4) The Owner's monthly requests for housing assistance payments a subject to penalty under 18 U.S. 1001 which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(h) Recoupment of Savings in Financing Cost.

(1) If interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months after the first year is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an appropriate amount reflecting the savings will be credited by HUD to the Project Account and withheld by the HFA from housing assistance payments payable to the Owner. If during the course of the same year there is any period of three months in which the debt service of the interim financing is greater than anticipated under the permanent financing, an adjustment will be made so that only the net amount of savings in debt service for the year is credited by HUD to the project account and withheld by the HFA from the Owner. No increased payments will be made to the Owner for any net excess for the year of the actual interim debt service over the anticipated debt service under the permanent financing. Nothing in this paragraph will be construed as requiring a permanent reduction in the Contract Rents or pre-cluding adjustments of Contract Rents in accordance with section 2.7.

(2) The computation and recoupment under this paragraph may be made on an annual, quarterly or other periodic basis, but no later than as of the end of each fiscal year. However, if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the HFA. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the debt service for the interim financing for the period is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph (h)(2)(i) is of the aggregate Contract Rents for all Contract Units for the period;

(iii) Apply the percentage found in paragraph (h)(2)(ii) to the aggregate Contract Rents for those Contract Units included in the Owner's claims for payments for the period; and

(iv) The amount found in paragraph (h)(2)(iii) shall be credited to the project account and withheld from the next housing assistance payment(s) to the Owner.

HUD-52645B (8-80)

(1) **Payments to Trustee by HFA.** (See sect. 1.4 f. .licability of
.his .igraph.) The amount of the ho .ng as. .ance payment
determined in accordance with the provisions of this Contract, up
to the amount of the mortgage repayments due the HFA from the Owner
pursuant to the mortgage loan made by the HFA for the project, shall
be credited to the Owner and transferred monthly by the HFA from the
account maintained under the General Depositary Agreement pursuant
to the ACC to the trustee under the note or bond resolution of the
HFA under which the notes or bonds to provide the mortgage loan were
issued. Any amount of the housing assistance payment in excess of
such credit shall be paid by the HFA directly to the Owner.

## 2.5 MAINTENANCE, OPERATION AND INSPECTION.

(a) **Maintenance and Operation.** The Owner agrees to maintain and operate
the Contract Units, unassisted units, if any, and related facilities
to provide Decent, Safe, and Sanitary housing including the provisions
of all the services, maintenance and utilities set forth in section
1.1(d) or (e). The Owner also agrees to comply with the lead-based
paint regulations at 24 CFR Part 35. If the HFA determines that the
Owner is not meeting one or more of these obligations, the HFA shall
have the right to take action under section 2.21(b).

(b) **Inspection.**

(1) Prior to occupancy of any Contract Unit by a Family, the Owner and
the Family shall inspect the unit and both shall certify, on forms
prescribed or approved by the HFA, that they have inspected the
unit and have determined it to be Decent, Safe, and Sanitary in
accordance with the criteria provided in the forms. The Owner
shall keep copies of these reports on file for at least three
years.

(2) The HFA shall inspect or cause to be inspected the Contract Units
and related facilities at least annually and at such other times
(including prior to initial occupancy and rerenting of any unit)
as may be necessary to assure that the Owner is meeting its
obligation to maintain the units in Decent, Safe, and Sanitary
condition including the provision of the agreed-upon utilities
and other services. The HFA shall take into account complaints
by occupants and any other information coming to its attention
in scheduling inspections and shall notify the Owner and the
Family of its determination.

(c) **Units Not Decent, Safe, and Sanitary.** If the HFA notifies the Owner
that it has failed to maintain a dwelling unit in Decent, Safe,
and Sanitary condition and the Owner fails to take corrective action
within the time prescribed in the notice, the HFA may exercise any
of its rights or remedies under the Contract, including reduction or
suspension of housing assistance payments, even if the Family con-
tinues to occupy the unit. If, however, the Family wishes to be
rehoused in another dwelling unit with Section 8 assistance and the
HFA does not have other section 8 funds for such purposes, the HFA
may use the abated housing assistance payments for the purpose of
rehousing the Family in another dwelling unit. If the Family
continues to occupy the unit, it will do so in accordance with the
terms of its lease, including the termination date and amount of
rent payable by the Family.

(d) **Notification of Abatement.** Any reduction or suspension of housing
assistance payments shall be effective as provided in written notifi-
cation to the Owner. The Owner shall promptly notify the Family of
any such abatement.



-6-

HUD-52645B (R-80)

werr ded and Underoccupied Units.    re th  '] determines a unit
is L  r or smaller than appropriate  r an c  ible family, the
Owner agrees to correct the situation in accordance with HUD regula-
tions and requirements in effect at the time of the determination.

2.6 **FINANCIAL REQUIREMENTS.**

(a) <u>Submission of Financial and Operating Statements.</u>

The Owner must submit to the HFA:

(1) Within 60 days after the end of each fiscal year of the project,
financial statements for the project audited by an Independent
Public Accountant in a form approved by HUD, and

(2) Other statements as to project operation, financial conditions
and occupancy as the HFA may require pertinent to administration
of the Contract and monitoring of project operations.

(b) <u>HFA Financial Records.</u>  The HFA agrees to keep copies of annual financial
statements for 3 years and make them available to HUD upon request.

(c) <u>Use of Project Funds.</u>  (Not applicable to Partially Assisted Projects.

(1) Project funds must be used for the benefit of the project, to
make mortgage payments, to pay operating expenses, to make
required deposits to the replacement reserve in accordance with
paragraph (d) of this section  .  .
.  To the extent the HFA
determines that project funds are more than needed for these
purposes, the surplus project funds must be deposited with the
HFA, mortgagee or other HFA-approved depositary in an interest-
bearing account. Withdrawals from this account will be made
only with the approval of the HFA and for project purposes,
including the reduction of housing assistance payments. Upon
termination of the Contract, any excess funds must be remitted
to HUD.

(2) In the case of HUD-insured projects, the provisions of this
paragraph (c) will apply instead of the otherwise applicable
mortgage insurance requirements, except in the case of partially
assisted, insured projects which are subject to the applicable
mortgage insurance requirements.

(d) <u>Replacement Reserve.</u>  (The HFA may exempt Partially-Assisted Projects
constructed under Part 883, Subpart D from this paragraph. All other
Partially-Assisted Projects are exempt from this paragraph.)

(1) The Owner shall establish and maintain, at the direction of the
HFA, a replacement reserve in an interest-bearing account to
aid in funding extraordinary maintenance and repair and replace-
ment of capital items. The account shall be established and
maintained in a manner consistent with Section 883.703.

(i) The obligation of the Owner to deposit into the replacement
reserve shall commence upon the effective date of the
Contract. For staged projects, the obligation shall commence
on a pro rata basis for units in each stage upon the effecti
date of the Contract for that stage. For projects construct
under Part 883, Subpart D, the amount of this deposit may
be adjusted each year by up to the amount of the automatic
annual adjustment factor, as required by the HFA. For all
other projects, this amount must be adjusted each year by th
amount of the automatic annual adjustment factor.



HUD-52645B (8-80)

(ii)  and reserve must be maintained at a level
determined by the HFA to be sufficient to meet projected
requirements. Should the reserve achieve that level, the
rate of deposit to the reserve may be reduced with the
approval of the HFA.

(iii)  Funds will be held by the HFA, mortgagee or trustee for
the bondholders, as determined by the HFA, and may be
drawn from the reserve and used only in accordance with
HFA guidelines and with the approval of, or as directed
by, the HFA.

(2)  In the case of HUD-insured projects, the provisions of this
paragraph (d) will apply instead of the otherwise applicable
mortgage insurance requirements, except in the case of
partially-assisted, insured projects which are subject to the
applicable mortgage insurance requirements.

(e)  **Limitation on Distributions.**  (Paragraphs (e)(2)-(4) are not applicable
to Small or Partially Assisted Projects.)

(1)  Nonprofit owners are not entitled to distributions of project funds.

(2)  For the life of the Contract, project funds may only be distri-
buted to profit-motivated owners at the end of each fiscal year
of project operation following the effective date of the Contract
after all project expenses have been paid, or funds have been
set aside for payment, and all reserve requirements have been met.
The first year's distribution may not be made until cost certifi-
cation, where applicable, has been submitted to HUD. The HFA may
permit distributions which do not exceed the following maximum
returns:

(i)  For projects for elderly families, the first year's
distribution will be limited to 6 percent on equity.
HUD may provide for increases in subsequent years'
distributions in accordance with applicable HUD
regulations.

(ii)  For projects for nonelderly families, the first year's
distribution will be limited to 10 percent on equity.
HUD may provide for increases in subsequent years'
distributions in accordance with applicable HUD regula-
tions.

(3)  For the purpose of determining the allowable distribution an
Owner's equity investment shall be computed in accordance with
applicable HUD regulations.

(4)  Any short-fall in return may be made up from surplus project
funds (see paragraph (e)(1)) if permitted by the HFA in future
years in accordance with HFA requirements.

(5)  In the case of HUD-insured projects, the provisions of this
section will apply instead of the otherwise applicable
mortgage insurance program regulations, except in the case of
small and partially-assisted, insured projects which are
subject to the applicable mortgage insurance regulations.

HUD-52645B (8-80)

2.7

( rundir  l Adjustments. Housing assist  e pay  s will be made in amounts commensurate with Contract Rent adjustme...s under this section up to the maximum amount authorized under section 2.3(a) of this Contract.

**(b)** Annual Adjustments.

    **(1)** Upon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 889 and this Contract. See, however, paragraph (

    **(2)** Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

**(c)** Special Additional Adjustments. Special additional adjustments shall be granted, to the extent determined necessary by the HFA and HUD, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, assessments, and utilities not covered by regulated rates. The Owner must demonstrate that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by annual adjustments. The Owner shall submit to the HFA supporting data, financial statements and certifications which clearly support the increase. See, however, paragraph (d).

**(d)** Overall Limitation. Notwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the HFA (and approved by HUD, in the case of adjustments under paragraph (c)); except to the extent that the differences existed with respect to the Contract Rents set at Contract execution or cost certification, where applicable.

**(e)** Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit 1 by a dated addendum to the exhibit establishing the effective date of the adjustment.

**(f)** Adjustment of Contract Rents based on Cost Certification. (See section 1.4 for applicability of this paragraph.)

    **(1)** Submission by Owner. Within 90 days following the execution of the Contract (or execution of the Contract for the last stage of the project), the Owner must submit to the HFA a certification of cost. HFA may grant to the Owner two successive 90 day extensions for good cause for the submission of the cost certification. After each extension, HFA shall notify HUD of such extension and the basis for it. The Owner's cost certification must be consistent with HUD requirements and be supported by the unqualified opinion of an Independent Public Accountant.

    **(2)** HFA Certification. Within 15 days of acceptance by the HFA of the Owner's cost certification, the HFA must certify to HUD that it has reviewed and approved the certified cost submitted by the Owner and must submit, with its certification, a summary of the Owner's cost certification. The HFA may impose its own cost certification requirements in addition to any required by HUD.



HUD-52645B (8-80)

Reduction of Contract Rents. If the approved cost shown on the
HFA Certification is less than the cost accepted by
HUD in the Proposal, the Contract Amount will be reduced
accordingly.

(4) **Reduction of Maximum ACC Commitment.** If the Contract Rents
are reduced pursuant to paragraph (f)(3) of this section, the
Maximum ACC Commitment and the maximum annual Contract commit-
ment will be reduced. If Contract Rents are reduced based on
certification after contract execution, any overpayment since
the effective date of the Contract will be recovered from the
Owner by the HFA and returned to HUD.

(g) **Adjustment of Contract Rents to Reflect Actual Cost of Tax Exempt Obli-
gations for Permanent Financing Issued by an HFA.** (See section 1.4 for
applicability of this paragraph.)

(1) **HFA Certification.** After the project is permanently financed, the
HFA shall submit a certification to HUD specifying the actual
financing terms.

(2) **Reduction of Contract Rents.** If the actual debt service to the
Owner under the permanent financing is lower than the anticipated
debt service on which the Contract Rents are based, due to lower
interest rates or to a longer term on the permanent financing,
the initial Contract Rents, or the Contract Rents then in effect,
must be reduced commensurately and the amount of the savings
credited to the project account.

(3) **Increase of Contract Rents.** If the actual debt service to the
Owner under the permanent financing is higher than the anticipated
debt service on which the Contract Rents are based, due to higher
interest rates or to a shorter term on the permanent financing,
the initial Contract Rents or the Contract Rents then in effect
shall, if sufficient contract and budget authority is available, be
increased commensurately. The amount of increase may not exceed
the amount of the Financing Cost Contingency (FCC) specified under
section 1.4(b) of the ACC but not reserved for the project at the
time the proposal was approved. The adjustment must not exceed
the amount necessary to reflect an increase in debt service (based
on the difference between the projected and actual terms of the
financing) resulting from an increase over the projected interest
rate of not more than:

  (i) One and one-half percent if the projected override was
      three-fourths of one percent or less, or

  (ii) One percent if such projected override was more than three-
       fourths of one percent but not more than one percent, or

  (iii) One-half of one percent if such projected override was more
        than one percent.

(4) **Increase in Maximum Annual Commitment.** If the Contract Rents have
been increased in accordance with paragraph (g)(3) of this section,
the Maximum ACC Commitment and the maximum annual Contract commit-
ment shall be increased commensurately.

(h) **Adjustment of Contract Rents Due to Property Tax Exemption or Similar
Savings.** The Contract Rents may be reduced to reflect real property
tax exemption or similar savings where the initial Contract Rents were
approved on the assumption that the project would not receive the benefit
of tax abatement or similar savings. The Owner agrees to notify the
HFA in the event such a project begins to receive such an exemption or
similar savings so that the initial Contract Rents or the Contract Rents
then in effect may be reduced.



HUD-52645B (8-80)

(a) **Compliance with Equal Opportunity Requirements.** Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's HUD-approved Affirmative Fair Housing Marketing Plan (if required), shown as Exhibit 3, and with all regulations relating to fair housing advertising. Projects shall be managed and operated without regard to race, color, religion, creed, sex, handicap, or national origin.

(b) **Security Deposits.** The Owner agrees to comply with the Part 883 regulations and requirements, as revised from time to time, regarding security deposits and to comply with all State and local law.

(c) **Eligibility, Selection and Admission of Families.**

   (1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, computation of the amount of housing assistance payments on behalf of each selected Family and of total Family contributions and recordkeeping in accordance with applicable HUD regulations and requirements.

   (2) The Owner shall not charge any applicant or assisted Family any amount in excess of the total Family contribution except as authorized by HUD.

   (3) In the initial renting of the Contract Units, the Owner must lease at least that percentage of those units stated in section 1.1(h) to Very Low-Income Families (determined in accordance with HUD-established schedules and criteria). Thereafter the Owner shall exercise best efforts to maintain (or achieve and maintain) at least that percentage of occupancy of the Contract Units by Very Low-Income Families. In addition, at all times, the HFA will use its best efforts to achieve leasing by Owners to Families with a range of incomes so that the average of incomes of all Families in occupancy is at or above 40 percent of the median income in the area.

   (4) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the HFA and be consistent with HUD regulations and requirements.

   (5) (i) The Owner shall make a reexamination of Family income, composition, and the extent of medical or other unusual expenses incurred by the Family at least as often as required by HUD regulations or other requirements, and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with applicable regulations and requirements.

      (ii) If a Family reports a change in income or other circumstances that would result in a decrease of total Family contribution between regularly scheduled reexaminations, the Owner, upon receipt of verification of the change, must promptly make appropriate adjustments in the total Family contribution. The Owner may require in its lease that Families report increases in income or other changes between scheduled reexaminations.

      (iii) In connection with any reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families and what the average Family income is.

-11-                    HUD-52645B (8-80)

If there are fewer than t' 'greed   '.ntage of Very Lo'
Income Families in occupa.. .., or t   average income is b
40 percent of the median, the Owner shall report the fac'
to the HFA and shall adopt appropriate changes in its
admission policies.

    (iv)  A Family's eligibility for housing assistance payments
continues until its total Family contribution equals the
total housing expense for the unit it occupies. The
termination of eligibility at this point will not affect
the Family's other rights under the lease nor preclude
resumption of payments as a result of later changes in
income or other circumstances during the term of this
Contract.

    (6)  Where fewer than 100 percent of the units in the project are
covered by this Contract, Families shall be dispersed throughout
At initial rent-up, the Owner shall lease the units identified i
Exhibit 1 to eligible families. Thereafter, the Owner may lease
other units of appropriate size and type to eligible Families in
accordanc  with Exhibit 1. For projects with units for both
elderly and non-elderly Families, the respective family types
may be grouped together.

    (7)  The Owner shall maintain as confidential all information relating
to section 8 applicants and assisted Families, the disclosure
of which would constitute an unwarranted invasion of personal
privacy.

(d)  <u>Rent Redetermination after Adjustment in Utility Allowance.</u>  In the
event that the Owner is notified of a HFA determination approving or
requiring an adjustment in the Utility Allowance applicable to any
of the Contract Units, the Owner shall promptly make a corresponding
adjustment in the amount of rent to be paid by the affected Families
and the amount of housing assistance payments.

(e)  <u>Processing of Applications and Complaints.</u>  The Owner shall process
applications for admission, notifications to applicants, and complaint
by applicants in accordance with applicable HUD and HFA regulations an'
requirements and shall maintain records and furnish such copies or
other information as may be required by HUD or the HFA.

(f)  <u>Review; Incorrect Payments.</u>  In making housing assistance payments
to Owners, the HFA or HUD will review the Owner's determinations under
this section. If as a result of this review, or other reviews, audits
or information received by the HFA or HUD at any time, it is determined
that the Owner has received improper or excessive housing assistance
payments, the HFA or HUD shall have the right to deduct the amount of
such overpayments from any amounts otherwise due the Owner, or otherwis'
effect recovery.

## 2.9  <u>TERMINATION OF TENANCY OR SECTION 8 ASSISTANCE BY THE OWNER.</u>

The Owner agrees not to terminate any tenancy of or assistance on behalf
of an assisted Family except in accordance with all HUD regulations and
other requirements in effect at the time of termination, and any State
and local law.

## 2.10  <u>REDUCTION OF NUMBER OF UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.</u>

(a)  <u>Limitation on Leasing to Ineligible Families.</u>  The Owner may not at
any time during the term of this Contract lease more than 10 percent
of the assisted units in the project to families which are ineligible
under section 8 requirements at initial occupancy without the prior
approval of HUD and the HFA. Failure on the part of the Owner to



...copy with this prohibition is a violation of the  ntract and grounds
    r al'  vailable legal remedies, inclu   t sper    .  performance of the
    Contrac  , suspension or debarment from h.. progr.   , and reduction of the
    number of units under the Contract, as set forth in paragraph (b) of
    this section.  (See also section 2.21.)

(b)  Reduction for Failure to Lease to Eligible Families.  If, at any time,
     beginning six months after the effective date of the Contract, the
     Owner fails for a continuous period of six months to have at least
     90 percent of the assisted units leased or available for leasing by
     families eligible under section 8 requirements at initial occupancy,
     the HFA and HUD may, upon at least 30 days' notice, reduce the number
     of units to the number of units actually leased or available for
     leasing, plus 10 percent (rounded up).  This reduction, however, will
     not be made if the failure to lease units to eligible families is
     permitted in writing by the HFA and HUD under paragraph (a) of this
     section.

(c)  Restoration.  HUD will agree to an amendment of the ACC and the HFA
     may agree to amendment of the Contract to provide for subsequent
     restoration of any reduction made pursuant to paragraph (b) of this
     section if:

     (1)  HUD and the HFA determine that the restoration is justified by
          demand,

     (2)  The Owner otherwise has a record of compliance with its obliga-
          tions under the Contract, and

     (3)  Contract authority is available.  (HUD will take such steps
          authorized by section 8(c)(6) of the Act as may be necessary
          to carry out its agreement.)

2.11  NONDISCRIMINATION.

(a)  General.  The Owner shall not in the selection of Families, in the
     provision of services, or in any other manner, discriminate against
     any person on the grounds of race, color, creed, religion, sex,
     national origin, or handicap.

(b)  Members of Certain Classes.  The Owner shall not automatically exclude
     anyone from participation in, or deny anyone the benefits of, the
     Housing Assistance Payments Program because of membership in a class,
     such as unmarried mothers, recipients of public assistance, handi-
     capped persons.

(c)  Title VIII of the Civil Rights Act of 1968.  The Owner shall comply
     with all requirements imposed by Title VIII of the Civil Rights Act
     of 1968, which prohibits discrimination in the sale, rental, financing
     and advertising of housing on the basis of race, color, religion, sex,
     or national origin, and any related rules and regulations.

(d)  Title VI of the Civil Rights Act of 1964 and Executive Order 11063.
     The Owner shall comply with all requirements imposed by Title VI of
     the Civil Rights Act of 1964, 42 U.S.C. 2000d, et seq.; the HUD regula-
     tions issued thereunder, 24 CFR, Subtitle A, Part 1; the HUD requireme
     pursuant to these regulations; and Executive Order 11063 and any regul
     tions and requirements issued thereunder, to the end that, in
     accordance with that Act, Executive Order 11063, and the regulatons a

HUD-52645B (8-80)

quirements of HUD, no person in the United States shall, on the grounds of race, color, creed, or national origin be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of HUD, 24 CFR, Subtitle A, Part 1 issued under Title VI of the Civil Rights Act of 1964, HUD regulations issued pursuant to Executive Order 11063 and the HUD requirements pursuant to the regulations. The obligation of the Owner to comply therewith insures to the benefit of the United States of America, HUD, and the HFA, any of which shall be entitled to invoke any remedies available by law to redress any breach or to compel compliance by the Owner.

(e) Section 504 of the Rehabilitation Act of 1973. The Owner shall comply with all the requirements imposed by section 504 of the Rehabilitation Act of 1973, as amended, and any applicable rules and regulations. Section 504 provides that no otherwise qualified handicapped person shall, solely by reason of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity receiving Federal financial assistance.

(f) Employees of Owner.

(1) In carrying out the obligations under this Contract, the Owner will not discriminate against any employee or applicant for employment because of race, color, creed, religion, sex, handicap or national origin. The Owner will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, creed, religion, sex, handicap or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2) The Owner agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by HUD setting forth the provisions of this nondiscrimination clause. The Owner will in all solicitations or advertisements for employees placed by or on behalf of the Owner state that all qualified applicants will receive consideration for employment without regard to race, color, creed, religion, sex, handicap or national origin. The Owner will incorporate the foregoing requirements of this paragraph in all of its contracts for project work, except contracts for standard commercial supplies or raw materials, and will require all of its contractors for such work to incorporate such requirements in all subcontracts for project work.

(g) Age Discrimination Act of 1975. The Owner shall comply with any rules and regulations issued or adopted by HUD under the Age Discrimination Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits discrimination on the basis of age in programs and activities receiving Federal financial assistance.

2.12 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS.

The Owner and the HFA agree to cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to or permitted by all applicable civil rights statutes, Executive Orders, and rules and regulations.



HUD-52645B (8-80)

2.13    EMPLOYMENT AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER
        INCOME PERSONS.   (See section 1.4 for applicability this section.)

(a)  The project assisted under this Contract is subject to the requirement
     of section 3 of the Housing and Urban Development Act of 1968, as
     amended, 12 U.S.C. 1701u.  Section 3 requires that, to the greatest
     extent feasible, opportunities for training and employment be given
     lower-income residents of the project area and contracts for work in
     connection with the project be awarded to business concerns which are
     located in, or owned in substantial part by persons residing in, the
     area of the project.

(b)  Notwithstanding any other provision of this Contract, the Owner shall
     carry out the provisions of section 3 and the regulations issued by
     HUD as set forth in 24 CFR, Part 135, and all applicable rules and
     orders of HUD issued thereunder prior to the execution of this Contract
     The requirements of the regulations include, but are not limited to,
     development and implementation of an affirmative action plan for utiliz
     business concerns located within, or owned in substantial part by perso
     residing in, the area of the project; the making of a good faith effort
     as defined by the regulations, to provide training, employment, and
     business opportunities required by section 3; and incorporation of the
     "section 3 clause" specified by section 135.20(b) of the regulations
     and paragraph (d) of this section in all contracts for work in
     connection with the project.  The Owner certifies and agrees that it
     is under no contractual or other disability which would prevent it
     from complying with these requirements.

(c)  Compliance with the provisions of section 3, the regulations set forth
     in 24 CFR, Part 135, and all applicable rules and orders issued by HUD
     thereunder prior to execution of this Contract, shall be a condition of
     the Federal financial assistance provided to the project, binding upon
     the Owner, its contractors and subcontractors, its successors and
     assigns.  Failure to fulfill these requirements shall subject the Owner
     its contractors and subcontractors, its successors, and assigns to the
     sanctions specified by this Contract, and to such sanctions as are
     specified by 24 CFR, Section 135.135.

(d)  The Owner shall incorporate or cause to be incorporated into any con-
     tract or subcontract for work pursuant to this Agreement in excess of
     $50,000 cost, the following clause:

     EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

     "A  The work to be performed under this Contract is on a project
         assisted under a program providing direct Federal financial
         assistance from HUD and is subject to the requirements of
         section 3 of the Housing and Urban Development Act of 1968, as
         amended, 12 U.S.C. 1701u.  Section 3 requires that, to the
         greatest extent feasible, opportunities for training and
         employment be given lower-income residents of the project area,
         and contracts for work in connection with the project be awarded
         to business concerns which are located in, or owned in substantial
         part by persons residing in, the area of the project.

     "B  The parties to this Contract will comply with the provisions of
         section 3 and the regulations issued pursuant thereto by HUD as
         set forth in 24 CFR, Part 135, and all applicable rules and
         orders of HUD issued thereunder prior to the execution of this
         Contract.  The parties to this Contract certify and agree that
         they are under no contractual or other disability which would
         prevent them from complying with these requirements.

contractor will send each labo    ganiz    n, or representa-
ti.. of workers with which he has a collect.. bargaining agreemer
or other contract or understanding, if any, a notice advising the
labor organization or workers' representative of his commitments
under this section 3 clause and shall post copies of the notice
in conspicuous places available to employees and applicants for
employment or training.

"D    The contractor will include this section 3 clause in every sub-
contract for work in connection with the project and will, at
the direction of the applicant for or recipient of Federal
financial assistance, take appropriate action pursuant to the
subcontract upon finding that the subcontractor is in violation
of regulations issued by HUD, 24 CFR, Part 135. The contractor
will not subcontract with any subcontractor where it has notice
or knowledge that the latter has been found in violation of
regulations under 24 CFR, Part 135, and will not let any
subcontract unless the subcontractor has first provided it
with a preliminary statement of ability to comply with the
requirements of these regulations.

"E    Compliance with the provisions of section 3, the regulations set
forth in 24 CFR, Part 135, and all applicable rules and orders of
HUD issued thereunder prior to the execution of the Housing
Assistance Payments Contract, shall be a condition of the Federal
financial assistance provided to the project, binding upon the
Owner, its contractors and subcontractors, it successors, and
assigns. Failure to fulfill these requirements shall subject
the Owner, its contractors and subcontractors, its successors,
and assigns to those sanctions specified by the Housing
Assistance Payments Contract, and to such sanctions as are
specified by 24 CFR, Section 135.135."

(e)    The Owner agrees that it will be bound by the above section 3 clause
with respect to its own employment practices when it participates in
federally assisted work.

2.14    FLOOD INSURANCE.  (See section 1.4 for applicability.)

The Owner agrees that the project will be covered, during its anticipated
economic or useful life, by flood insurance in an amount at least equal to
its development or project cost (less estimated land cost) or to the maxi-
mum limit of coverage made available with respect to the particular type
of property under the National Flood Insurance Act of 1968, whichever is le

2.15    CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.  (See section 1.4 fo
applicability of this section.)

In compliance with regulations issued by the Environmental Protection Agenc
("EPA"), 40 CFR, Part 15, pursuant to the Clean Air Act, as amended ("Air
Act"), 42 U.S.C. 7401, et seq., the Federal Water Pollution Control Act, as
amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738,
the Owner agrees:

(a)    Not to utilize any facility in the performance of this Contract or any
nonexempt subcontractor which is listed on the EPA List of Violating
Facilities pursuant to section 15.20 of the regulations;

(b)    Promptly to notify the HFA of the receipt of any communication from th
EPA indicating that a facility to be utilized for the Contract is unde
consideration to be listed on the EPA List of Violating Facilities;

(c)    To comply with all the requirements of section 114 of the Air Act and
section 308 of the Water Act relating to inspection, monitoring, entry



port  .nd information, as well as al. .her  1..ements specified in
section 114 of the Air Act and section 308 of the Water Act, and all
regulations and guidelines issued thereunder; and

(d)  To include or cause to be included the provisions of this Contract in
every nonexempt subcontract and take such action as HUD may direct as
a means of enforcing such provisions.

## 2.16  REPORTS AND ACCESS TO PREMISES AND RECORDS.

(a)  The Owner shall furnish any information and reports pertinent to this
Contract as reasonably may be required from time to time by the HFA or
HUD.

(b)  The Owner shall permit the HFA or HUD or any of their duly authorized
representatives to have access to the premises and, for the purpose of
audit and examination, to have access to any books, documents, papers
and records of the Owner that are pertinent to compliance with this
Contract, including the verification of information pertinent to the
housing assistance payments.

## 2.17  DISPUTES.

(a)  Any dispute concerning a question of fact arising under this Contract
which cannot be resolved by the HFA and the Owner may be submitted by
either party to the HUD Field Office which will promptly make a decision
and furnish a written copy to the Owner and the HFA.

(b)  The decision of the Field Office will not be reviewable unless,
within 30 calendar days from the date of receipt of the Field
Office's determination, either party mails or otherwise furnishes
to HUD a written appeal with written justification addressed to the
Secretary of Housing and Urban Development.  Both parties shall
proceed diligently with the performance of the Contract and in
accordance with the decision of the Field Office pending resolution
of the appeal.

## 2.18  INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF HFA OR PUBLIC HOUSING AGENCY (PHA), MEMBERS OF LOCAL GOVERNING BODY, OR OTHER PUBLIC OFFICIALS.

(a)  No person or entity in the following classes shall have an interest,
direct or indirect, in this Contract or in any proceeds or benefits
arising from it, during his or her tenure or for one year thereafter.

(1)  any member or officer of the HFA or PHA (if the PHA is the Owner),
except where his or her interest is as tenant;

(2)  (i)   any employee of the HFA or PHA (if the PHA is the Owner),
who formulates policy or influences decisions with respect to
the Section 8 project;

(ii)  any other employee of the HFA or PHA (if the PHA is the
Owner), except where his or her interest is as a tenant;

(3)  any member of the governing body or the executive officer of the
locality (city or county) in which the project is situated;

(4)  any other State or local public official (including State
legislators), who exercises any functions or responsibilities
with respect to the section 8 project;

HUD-52645B (8-80)

a personal interest in the p ct, ng an interest b son of membership on the board of the under this Contrac (except an employee who does not formulate policy or influence decisions with respect to the section 8 project may have an int as a tenant).

(b) If any member of the classes described in paragraph (a) involuntaril acquires an interest in the section 8 program or in a section 8 proj or had acquired prior to the beginning of his or her tenure any such interest, and if such interest is immediately disclosed to the HFA and the disclosure is entered upon the minutes of the HFA, the HFA, with the prior approval of the HUD Field Office, may waive the prohi contained in this section. Any other requests for waivers of paragr (a) must be referred to the HUD Headquarters, with appropriate recomm tions from the Field Office, for a determination of whether a waiver will be granted.

(c) No person to whom a waiver is granted by the HFA or HUD shall be per- mitted (in his or her capacity as member of a class described in paragraph (a)) to exercise responsibilities or functions with respect to an Agreement or a Contract executed, or to be executed, on his or her behalf, or with respect to an Agreement or a Contract to which th person is a party.

(d) The Owner shall insert in all contracts, subcontracts, and arrangemen entered into in connection with the project or any property included planned to be included in the project, shall require its contractors and subcontractors to insert in each of the subcontracts, the provisio of paragraphs (a) through (d).

(e) The provisions of paragraphs (a) through (d) of this section shall not apply to (1) a utility service if the rates are fixed or controlled by governmental agency, (2) the Depositary Agreement, or (3) a temporary management agreement between the HFA and the Owner which meets the requirements of 24 CFR 883.702(c).

## 2.19    INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS.

No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contra or to any benefits which may arise from it.

## 2.20    ASSIGNMENT, SALE OR FORECLOSURE.

(a) The Owner agrees that it has not made and will not make any sale, assignment, or conveyance or transfer in any fashion, of this Contract, the Agreement, the ACC, or the project or any part of them or any of it interest in them, without the prior written consent of the HFA and HUD.

(b) The Owner agrees to notify the HFA and HUD promptly of any proposed action covered by paragraph (a) of this section. The Owner further agrees to request the written consent of the HFA and of HUD.

(c) (1) For purposes of this section, a sale, assignment, conveyance, or transfer includes but is not limited to one or more of the following:

(i) A transfer by the Owner, in whole or in part,

(ii) A transfer by a party having a substantial interest in the Owner,

HUD-52645B (8-80)



.) Transfers by more than one ..rty o1 .terests aggregating
a substantial interest in the Owner,

(iv)   Any other similarly significant change in the ownership
of interests in the Owner, or in the relative distribu-
tion of interests by any other method or means, and

(v)   Any refinancing by the Owner of the project.

(2)   An assignment by the Owner to a limited partnership, in which
no limited partner has a 25 percent or more interest and of which
the Owner is the sole general partner, shall not be considered
an assignment, conveyance, or transfer.  An assignment by one or
more general or limited partners of a limited partnership interest
to a limited partner, who will have no more than a 25 percent
interest, shall not be considered an assignment, conveyance, or
transfer.

(3)   The term "substantial interest" means the interest of any general
partner, any limited partner having a 25 percent or more interest
in the organization, any corporate officer or director, and any
stockholder having a 10 percent or more interest in the organizati

(d)   The Owner and the party signing this Contract on behalf of the Owner
represent that they have the authority of all of the parties having
ownership interests in the Owner to agree to this provision on their
behalf and to bind them with respect to it.

(e)   Except where otherwise approved by HUD, the ACC, the Agreement and
this Contract shall continue in effect and housing assistance payments
will continue in accordance with the terms of the Contract in the event

(1)   Of assignment, sale, or other disposition of the project or the
Agreement, Contract or the ACC,

(2)   Of foreclosure, including forclosure by HUD or the HFA,

(3)   Of assignment of the mortgage or deed in lieu of foreclosure,

(4)   The HFA or HUD takes over possession, operation or ownership,
or

(5)   The Owner prepays the mortgage.

2.21   DEFAULTS BY HFA AND/OR OWNER.

(a)   Rights of Owner if HFA Defaults under Contract.

(1)   Events of Default.  The occurrence of any of the following events,
if the Owner is not in default, is defined as a default under the
ACC:

(i)   If the HFA fails to perform or observe any term or con-
dition of this Contract (except as provided in paragraph
(a)(1)(v));

(ii)   If the Contract is held to be void, voidable, or ultra
vires;

(iii)   If the power or right of the HFA to enter into the Con-
tract is drawn into question in any legal proceeding;

(iv)   If the HFA asserts or claims that the Contract is not
binding upon the HFA for any such reason; or



HUD-52645B (8-80)

(v) If the HFA fails to make payments to the owner as required by section 2.4 of the Contract, unless HUD has substantially delayed annual contributions provided for under section 1.4 of the ACC.

(2) <u>Owner Request for HUD Determination of Default.</u>

If the Owner believes that an event as specified in paragraph (a)(1 has occurred, and the Owner is not in default, the Owner may, withi 30 days of the initial occurrence of the event:

(i) Notify HUD of the occurrence of the event;

(ii) Provide supporting evidence of the default and of the fact that the Owner is not in default; and

(iii) Request HUD to determine whether there has been a default.

(3) <u>HUD Determination of Default and Curing of Default.</u>

HUD, after notice to the HFA giving it a reasonable opportunity to take corrective action, or to demonstrate that it is not in default, shall make a determination whether the HFA is in default and whether the Owner is not in default. If HUD determines that the HFA is in default and that the Owner is not, HUD shall take appropriate action to require the HFA to cure the default. If necessary for the prompt continuation of the project, HUD shall assume the HFA's right and obligations under the Contract, includin any funds. HUD shall continue to pay annual contributions with respect to the units covered by this Contract in accordance with the ACC and this Contract until reassigned to the HFA. All rights and obligations of the HFA assumed by HUD will be returned as constituted at the time of the return:

(i) When HUD is satisfied that all defaults have been cured and that the project will thereafter be administered in accordance with all applicable requirements, or

(ii) When the Contract is at an end, whichever occurs sooner.

(4) <u>Enforcement by Owner.</u> The provisions of this paragraph (a) are made for the benefit of the Owner, the lender, and the Owner's assignees, if any, who have been specifically approved by HUD prior to the assignment. These provisions shall be enforceable by these parties against HUD by suit at law or in equity.

(b) <u>Rights of HFA and HUD if Owner Defaults under Contract.</u>

(1) <u>Events of Default.</u> A default by the Owner under this Contract shall result if:

(i) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease, including failure to correct any deficiencies identified by the HFA or HUD in connection with any annual or other inspection; or

(ii) The Owner has asserted or demonstrated an intention not to perform some or all of its obligations under this Contract or under any Lease; or

(iii) For projects with mortgages insured by HUD, the Owner has violated or failed to comply with the regulations for the applicable insurance program, with the insured mortgage, or with the regulatory agreement; or the Owner has filed any



false statement or misrepresentation to HUD in connec[...]
with the mortgage insuran[...]

(2) **HFA Determination of Default.** Upon determination by the HFA th[...] default has occurred, the HFA shall notify the Owner and the le[...] (if other than the HFA) with a copy to HUD, of

   (i)   The nature of the default,

   (ii)   The actions required to be taken and the remedies to be applied on account of the default, and

   (iii)   The time within which the Owner and/or the lender shall respond with a showing that all the required actions have been taken.

If the Owner and/or lender fail to respond or take action to the satisfaction of the HFA, the HFA shall have the right to take corrective action to achieve compliance, in accordance with para (b)(3) or to terminate this Contract with HUD approval, in whole or in part, or to take other corrective action to achieve compli[...] in its discretion, or as directed by HUD.

(3) **Corrective Action.** Pursuant to paragraph (b)(2) of this section the HFA, in its discretion or as directed by HUD, may take the following corrective actions:

   (i)   Take possession of the project, bring any action necessary to enforce any rights of the Owner growing out of the project operation, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operat[...] the project in accordance with this Contract. If the HFA takes possession, housing assistance payments shall contin[...] in accordance with the Contract.

   (ii)   Collect all rents and charges in connection with the operation of the project and use these funds to pay the necessary expenses of preserving the property and operating the project and to pay the Owner's obligations under the no[...] and mortgage or other loan documents.

   (iii)   Apply to any court, State or Federal, for specific performance of this Contract, for an injunction against any violation of the Contract, for the appointment of a receiver to take over and operate the project in accordance with the Contract, or for such other relief as may be appropriate. These remedies are appropriate since the injury to the HFA and/or HUD arising from a default under any of terms of this Contract could be irreparable and the amount of damage would be difficult to ascertain.

   (iv)   Reduce or suspend housing assistance payments.

   (v)   Recover any overpayments.

(4) **HUD's Rights.**

   (i)   Notwithstanding any other provisions of this Contract, in the event HUD determines that the Owner is in default of its obligations under the Contract, HUD shall have the right, after notice to the Owner, the HFA, the lender (if other than the HFA), and the trustee, if any, giving them a

HUD-52645B (8-80)

reasonable opportunity to tak  correct   action, to proceed in accordance with paragraph (b)(3).

(ii)    In the event HUD takes any action under this section, the Owner and the HFA hereby expressly agree to recognize the rights of HUD to the same extent as if the action were taken by the HFA.  HUD shall not have the right to terminate the Contract except by proceeding in accordance with paragraphs (b)(1), (2), and (3) of this section and with section 2.16(b) of the ACC.

(c)  Remedies Not Exclusive and Non-Waiver of Remedies.  The availability of any remedy under this Contract or the ACC, where applicable, shall not preclude the exercise of any other remedy under this Contract or the ACC or under any provisions of law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies.  Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

HUD-52645B (8-80)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**GREENLEAF LIMITED PARTNERSHIP**

**and**

**SANDBURG VILLAGE APARTMENTS, AN**
**ILLINOIS LIMITED PARTNERSHIP**

**v.**

**ILLINOIS HOUSING DEVELOPMENT AUTHORITY**

**Case No. 1:08-cv-2480**
**Honorable Virginia M. Kendall**

**CONSOLIDATED AMENDED COMPLAINT**

**EXHIBIT 2**

IML-115

HDA Form No. LD-30(A)

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM**
**HOUSING FINANCE AND DEVELOPMENT AGENCIES**

**HOUSING ASSISTANCE PAYMENTS CONTRACT**

| Master Section 8 ACC No. and Date C-1065    10/29/75 | ACC List No. and Date 1-31-79 | Proj. No. IL50-H121-008 |
|---|---|---|

## PART I

THIS HOUSING ASSISTANCE PAYMENTS CONTRACT ("Contract") is entered into by and between the ILLINOIS HOUSING DEVELOPMENT AUTHORITY, a housing finance agency ("HFA"), which is a public housing agency as defined in the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq* ("Act"), at Section 1437(b), and ___Sandburg Village Apartments, an Illinois ___ __ Limited Partnership__ _____ ("Owner"), and approved by the United States of America acting through the Department of Housing and Urban Development ("Government"), pursuant to the Act and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*

The parties hereto agree as follows:

SECTION 1.1    *Significant Dates and Other Items; Contents of Contract.*

(a) *Effective Date of Contract.*   The effective date of this Contract is ___Oct. 1___ 19_80_. [This date shall be no earlier than the date of approval by the Government.]

(b) *Initial Term of Contract.*   The initial term of this Contract (see Section 1.4(a)) shall be ___five___ __ ( __5__ ) years [not to exceed five (5) years] beginning with the effective date of this Contract and ending ___Sept. 30___, 19_85_.

(c) *Number and Length of Optional Additional Terms.*   The number and length of optional additional terms (see Section 1.4(a)) shall be __ seven ___ _____ ( __7__ ) terms of ___five___ __ ( __5__ ) years each [not to exceed five (5) years each]

(d) *Maximum Total Term of Contract.*   The maximum total term of this Contract for any unit, including renewals, shall be as specified in Section 1.4(a).

(e) *Fiscal Year.*   The ending date of each Fiscal Year (see Section 1.4(b)) shall be June 30

(f) *Annual Contributions Contract.*   The Annual Contributions Contract applicable to this Contract ("ACC") (see Section 1.5(a)) is the ACC dated ___January 31_____, 19_79_ with respect to Project No. __IL50-H121-008__.

(g) *Maximum Housing Assistance Commitment.*   The maximum amount of the commitment for housing assistance payments under this Contract (see Section 1.6(a)) is _____ __six hundred thirteen thousand two hundred twenty-four__ _____ Dollars ($_613,224___) per annum. [Enter amount specified in the ACC for housing assistance payments, exclusive of the Financing Cost Contingency.] This amount shall be subject to increase pursuant to Section 1.5(e)(2) or 1.5(f)(3) of the Agreement or Section 1.9(e)(3) of this Contract, as appropriate.

(h) *Percent of Units to be Leased to Very Low-Income Families.*   In the initial renting of the Contract Units, the minimum percentage of those units required to be leased to Very Low-Income Families (see Section 1.10(c)(1)) shall be ___thirty___ percent (_30_ %).

(i) *Contents of Contract.*   This Contract consists of Part I, Part II and the following exhibits:

*Exhibit A:*   The schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

*Exhibit B:*   The Project description;

*Exhibit C:*   The statement of services, maintenance and utilities to be provided by Owner.

*Exhibit D:*   The Affirmative Fair Housing Marketing Plan, if applicable; and

*Additional Exhibits:*   None.

This Contract, including said exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except as contained in agreements entered into in writing which are not inconsistent with this Contract.

SECTION 1.2.   *Owner's Warranties.*

(a) *Legal Capacity.*   The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

(b) *Completion of Work.*   The Owner warrants that the Project as described in Exhibit B is in good and tenantable condition and that the Project has been completed in accordance with the

1

HFA

**IHDA Form   . LD-30(A)**

terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the Project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within twelve (12) months of the effective date of this Contract. The Owner and the HFA agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4(b) of the Agreement.

SECTION 1.3.   *Families to be Housed, HFA Assistance.*

(a) *Families to be Housed.*   The Contract Units are to be leased by the Owner to eligible Lower-Income Families ("Families") for use and occupancy by such Families solely as private dwellings.

(b) *HFA Assistance.*

(1)  The HFA hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe and Sanitary housing pursuant to Section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

(2)  If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the HFA upon receipt of funds from the HFA for that purpose.

SECTION 1.4.   *Term of Contract, Fiscal Year.*

(a) *Term of Contract.*

*Alternative 1—General:*   The initial term of this Contract shall be as stated in Section 1.1(b). This Contract may be renewed for the number and length of additional terms stated in Section 1.1(c), provided that the total Contract term for any unit, including renewals, shall not exceed the following: (1) if a combination of interim and permanent financing is utilized for the Project, ___forty___ ( _40_ ) years [insert number equal to the anticipated term of the permanent financing plus a period not to exceed seven (7) years], or a period terminating on the date of the last payment of principal due on said permanent financing, whichever is less, or (2) if permanent financing alone, rather than a combination of interim and permanent financing, is utilized for the Project, ___N.A.___ (_____) years [insert number equal to the term of the permanent financing plus a period not to exceed thirteen (13) months], or a period terminating on the date of the last payment of principal due on said permanent financing, whichever is less. Renewals shall be automatic unless either party notifies the other in writing, no later than sixty (60) days prior to the expiration of the current term, of his desire not to renew, and the other party agrees in writing that there shall be no renewal. If the Project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; provided, however, that the total Contract term for the units in all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term for any unit specified in this paragraph, plus two (2) years.

*Alternative 2—For Certain Substantial Rehabilitation Projects:*   For a Substantial Rehabilitation project, where the relative cost of the rehabilitation is less than fifteen percent (15%) of the value of the Project after completion of the rehabilitation, the Contract shall be for one (1) term of not more than five (5) years for any dwelling unit. .If the Project is completed in stages, this term shall be separately related to the units in each stage; provided, however, that the total Contract term for the unit in all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contract term, plus two (2) years.

(b) *Fiscal Year.*   The Fiscal Year for the Project shall be the twelve (12) month period ending on the date stated in Section 1.1(e); provided, however, that the first Fiscal Year for the Project shall be the period beginning with the effective date of the Contract and ending on the last day of said established Fiscal Year which is not less than twelve (12) months after such effective date. If the first Fiscal Year exceeds twelve (12) months, the maximum total annual housing assistance payment in Section 1.6(a) may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of twelve (12) months.

SECTION 1.5.   *Annual Contributions Contract.*

(a) *Identification of Annual Contributions Contract.*   The HFA has entered into an Annual Contributions Contract with the Government, as identified in Section 1.1(f), under which the Government will provide financial assistance to the HFA pursuant to Section 8 of the Act for the purpose of making housing assistance payments. A copy of the ACC shall be provided upon request.

(b) *HFA Pledge of ACC Payments.*   The HFA hereby pledges to the payment of housing assistance payments pursuant to this Contract the annual contributions payable under the ACC for such housing assistance payments. The HFA shall not, without the consent of the Owner, amend or modify the ACC in any manner which would reduce the amount of such annual contributions, except as authorized in the ACC and this Contract.

2

HFA _____

Owner _____ 

IHDA For.    .. LD-30(A)

(c) *Government Approval of Housing Assistance Payments Contract.* The approval of this Contract by the Government signifies that the Government has executed the ACC and that the ACC has been properly authorized, that the faith of the United States is solemnly pledged to the payment of annual contributions pursuant to said ACC, and that funds have been obligated by the Government for such payments to assist the HFA in the performance of its obligations under this Contract.

SECTION 1.6.   *Maximum Housing Assistance Commitment; Project Account.*

(a) *Maximum Housing Assistance Commitment.* Notwithstanding any other provisions of this Contract (other than paragraph (b) of this Section) or any provisions of any other contract between the HFA and the Owner, the HFA shall not be obligated to make and shall not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1(g); provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents or pursuant to any other provision of the ACC or this Contract (except reductions in Contract Rents pursuant to Section 1.9(c)(1)).

(b) *Project Account.* As provided in the ACC, in order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Rents or decreases in Family Income:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under Section 8(c)(6) of the Act out of amounts by which the Maximum ACC Commitments per year (exclusive of any Financing Cost Contingency) exceeds amounts paid under the ACC for any year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph (a) of this Section to cover increases in Contract Rents or decreases in Family Incomes (see Section 1.9). Any amount remaining in said account after payment of the last housing assistance payment with respect to the Project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the Maximum ACC Commitment then in effect (exclusive of any Financing Cost Contingency), and would cause the amount in the Project Account to be less than an amount equal to forty percent (40%) of such Maximum ACC Commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by Section 8(c)(6) of the Act as may be necessary to carry out this assurance, including (as provided in that section of the Act) "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

SECTION 1.7.   *Housing Assistance Payments to Owners.*

(a) *General.*

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition or extent of exceptional medical or other unusual expenses in accordance with the Government-established schedules and criteria; or by reason of adjustment by the HFA of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

(b) *Vacancies During Rent-Up.* If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of eighty percent (80%) of the Contract Rent for the unit for a vacancy period not exceeding sixty (60) days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 1.3(b) of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on his waiting list, if any, requesting the HFA and other appropriate sources to refer eligible applicants, and advertising the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the HFA.

(c) *Vacancies After Rent-Up.*

(1) If a Family vacates its unit (other than as a result of action by the Owner which is in violation of the Lease or the Contract or any applicable law), the Owner shall receive housing assistance payments in the amount of eighty percent (80%) of the Contract Rent for a vacancy period not exceeding sixty (60) days; provided, however, that if the Owner collects any of the Family's share of the rent for this period in an amount which, when added to the eighty percent (80%) payments, results in more than the Contract Rent, such excess shall be payable to the

3

HFA _____

Owner _____

IHDA Form No. LD-30(A)

Government or as the Government may direct. (See also Section 1.10(b).) The Owner shall not be entitled to any payment under this subparagraph unless he: (i) immediately upon learning of the vacancy, has notified the HFA of the vacancy or prospective vacancy and the reasons for the vacancy, and (ii) has taken and continues to take the actions specified in paragraphs (b)(2) and (b)(3) of this Section.

(2) If the Owner evicts a Family, he shall not be entitled to any payment under paragraph (c)(1) of this Section unless the request for such payment is supported by a certification that (i) he gave such Family a written notice of the proposed eviction, stating the grounds and advising the Family that it had ten (10) days within which to present its objections to the Owner in writing or in person, and (ii) the proposed eviction was not in violation of the Lease or the Contract or any applicable law.

(d) *Limitation on Payments for Vacant Units.* The Owner shall not be entitled to housing assistance payments with respect to vacant units under this Section to the extent he is entitled to payments from other sources (e.g., payments for losses of rental income incurred for holding units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.10(b) of this Contract).

(e) *HFA Not Obligated for Family Rent.* The HFA has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.10(b) of this Contract.

(f) *Owner's Monthly Requests for Payments.*

(1) The Owner shall submit monthly requests to the HFA or as directed by the HFA for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit (or, where appropriate, the amount to be paid the Family in accordance with Section 1.3(b)(2); and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling unit is in decent, safe and sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the HFA or the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than Ten Thousand Dollars ($10,000.00) or imprisoned for not more than five (5) years, or both.

(g) *Recoupment of Savings in Financing Cost.*

(1) In the event that interim financing is used and is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three (3) months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph (g)(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three (3) months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld by the HFA from the Owner as aforesaid (no increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing). Nothing in this paragraph (g) shall be construed as requiring a reduction in the Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.9.

(2) The computation and recoupment under this paragraph (g) may be made on an annual or on a quarterly or other periodic basis, but in any event no later than as of the end of each Fiscal Year; provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall

4

HFA _____

Owner _____ 

IHDA Fo... o. LD-30(A)

be deposited in special account from which withdrawals may be made only with the authoriza-tion of the HFA. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the debt service for the interim financing for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph (g)(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph (g)(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claim(s) for housing assistance payments for the period in question, and

(iv) The amount found in paragraph (g)(2)(iii) of this Section shall be credited to the Project Account and withheld from the next housing assistance payment or payments to the Owner.

(h) *Payments by HFA.* The amount of the housing assistance payment, determined in accordance with the provisions of this Contract, up to the amount of the mortgage repayments due the HFA from the Owner pursuant to the mortgage loan made by the HFA for the Project, shall be credited to the Owner and transferred monthly by the HFA from the account maintained under the General Depositary Agreement pursuant to the ACC to the trustee under the note or bond resolution of the HFA under which the notes or bonds to provide the Mortgage loan were issued. Any amount of the housing assistance payment in excess of such credit shall be paid by the HFA directly to the Owner.

SECTION 1.8    *Maintenance, Operation and Inspection.*

(a) *Maintenance and Operation.* The Owner agrees (1) to maintain and operate the Con-tract Units and related facilities so as to provide Decent, Safe and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the HFA determines that the Owner is not meeting one or more of these obligations, the HFA shall have the right, in addition to its other rights and remedies under this Contract, to abate housing assistance payments in whole or in part.

(b) *Inspections Prior to Occupancy.*

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe and Sanitary in accordance with the cri-teria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three (3) years.

(2) The HFA shall inspect or cause to be inspected each Contract Unit and related facili-ties at least annually and at such other times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting his obligation to maintain the units in Decent, Safe and Sanitary condition and to provide the agreed upon utilities and other services. The HFA shall take into account complaints by occupants and any other infor-mation coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

(c) *Units Not Decent, Safe and Sanitary.* If the HFA notifies the Owner that he has failed to maintain a dwelling unit in Decent, Safe and Sanitary condition and the Owner fails to take correc-tive action within the time prescribed in the notice, the HFA may exercise any of its rights or reme-dies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with Section 8 assistance and the HFA does not have other Section 8 funds for such purposes, the HFA may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe and Sanitary condition, (2) the Family is willing to and does move back into the restored unit, and (3) a deduction is made for the expenses incurred by the Family for both moves.

(d) *Notification of Abatement.* Any abatement of housing assistance payments shall be ef-fective as provided in written notification to the Owner. The HFA shall promptly notify the Family of any such abatement.

(e) *Overcrowded and Underoccupied Units.* If the HFA determines that a Contract Unit is not Decent, Safe and Sanitary by reason of increase in Family Size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the HFA will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.7(c)(1).

5

HFA _____

Owner _____

IHDA Form No. LD-30(A)

SECTION 1.9.  *Rent Adjustments*

(a) *Funding of Adjustments.*  Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section up to the maximum amount authorized under Section 1.6 of this Contract.

(b) *Automatic Annual Adjustments.*

(1)  Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2)  On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

(c) *Special Additional Adjustments.*  Special additional adjustments may be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner or the HFA clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner or the HFA shall submit to the Government financial statements which clearly support the increase.

(d) *Overall Limitation.*  Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the HFA (and approved by the Government, in the case of adjustments under paragraph (c) of this Section), provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract rents.

(e) *Adjustment to Reflect Actual Cost of Permanent Financing.*  This paragraph (e) shall apply if the Project is not permanently financed until after the effective date of the Contract. After the Project is permanently financed, the HFA shall submit a certification to the Government as to the actual financing terms and the following provisions shall apply:

(1)  If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The Maximum ACC Commitment shall not be reduced except by the amount of the contingency, if any, which was included for possible increases under paragraph (e)(2) of this Section.

(2)  If the actual debt service under the permanent financing is higher than the anticipated debt service on which the Contract Rents were based, and the HFA is using its set-aside for the Project, the Contract Rents currently in effect shall be increased commensurately, not to exceed the limitations in this paragraph (e)(2) and the amount of the Financing Cost Contingency in the ACC, if the projected borrowing rate (net interest cost) was not less than the average net interest cost for the preceding quarter (at the time the projection was submitted to the Government) of the "20 Bond Index" published weekly in the *Bond Buyer*, plus fifty (50) basis points. An adjustment under this paragraph (e)(2) shall not be more than is necessary to reflect an increase in debt service (based upon the original projected capital cost and the actual term of the permanent financing for the project) resulting from an increase in interest rate of not more than:

(i)  One and one-half percent (1½%) if the projected spread as submitted to the Government was three-fourths (¾) of one percent (1%) or less, or

(ii)  One percent (1%) if such projected spread was more than three-fourths (¾) of one percent (1%) but not more than one percent (1%), or

(iii)  One-half (½) of one percent (1%) if such projected spread was more than one percent (1%).

(3)  After Contract Rents have been adjusted in accordance with paragraph (e)(1) or (e)(2) of this Section, the maximum amount of the ACC commitment shall be reduced by the amount of any unused portion of the Financing Cost Contingency, and such portion shall be reallocated to the then current set-aside of the HFA, if any. At the same time, if the Contract Rents have been increased in accordance with paragraph (e)(2) of this Section, the maximum Contract amount specified in Section 1.1(g) shall be increased commensurately.

(f) *Incorporation of Rent Adjustment.*  Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the exhibit establishing the effective date of the adjustment.

6

HFA _____



Owner _____

IHDA Fo. . No. LD-30(A)

SECTION 1.10.   *Marketing and Leasing of Units.*

(a) *Compliance with Equal Opportunity*   Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

(b) *Security and Utility Deposits*

(1) The Owner may require Families to pay a security deposit in an amount equal to one (1) month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from the HFA, not to exceed an amount equal to the remainder of one (1) month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates its unit owing no rent or other amount under the Lease, or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

(2) In those jurisdictions where interest is payable to the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

(3) Families shall be expected to obtain the funds to pay security and utility deposits, if required, from their own resources and/or other private or public sources.

(c) *Eligibility, Selection and Admission of Families.*

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in accordance with schedules and criteria established by the Government. In the initial renting of the Contract Units, the Owner shall lease at least that percentage of those units which is stated in Section 1.11h) to Very Low-Income Families (determined in accordance with the Government-established schedules and criteria) and shall thereafter exercise his best efforts to maintain at least that percentage of occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

(2) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the Government.

(3) The Owner shall make a reexamination of Family Income, composition and the extent of medical or other unusual expenses incurred by the Family at least annually (except that such reviews may be made at intervals of no longer than two (2) years in the case of elderly Families), and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payments, all in accordance with schedules and criteria established by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families. If there are fewer than the agreed to percentage of Very Low-Income Families in occupancy, the Owner shall report the fact to the HFA and shall adopt changes in his admission policies to achieve, as soon as possible, at least the agreed to percentage of occupancy by such Families.

(d) *Rent Redetermination After Adjustment in Allowance for Utilities and Other Services*   In the event that the Owner is notified of an HFA determination making an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

(e) *Processing of Applications and Complaints.* The Owner shall process applications for admission, notifications to applicants and complaints by applicants in accordance with applicable HFA or Government requirements and shall maintain records and furnish such copies or other information as may be required by the HFA or the Government.

(f) *Review, Incorrect Payments*   In making housing assistance payments to Owners, the HFA or the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the HFA or the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the HFA or the Government shall have the right to deduct the amount of such over-payments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

SECTION 1.11.   *Termination of Tenancy.* The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.7(c).

7

HFA _____

Owner _____

IHDA Form No. LD-30(A)

SECTION 1.12.  *Reduction of Number of Contract Units for Failure to Lease to Eligible Families.*

(a)  *After First Year of Contract.*  If at any time, beginning six (6) months after the effective date of this Contract, the Owner fails for a continuous period of six (6) months to have at least eighty percent (80%) of the Contract Units leased or available for leasing by Families, the HFA, with Government approval, may on thirty (30) days' notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families plus ten percent (10%) of such number if the number is ten (10) or more, rounded to the next highest number.

(b)  *At End of Initial and Each Renewal Term.*  At the end of the initial term of the Contract and of each renewal term, the HFA, with Government approval, may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater, plus ten percent (10%) of such number if the number is ten (10) or more, rounded to the next highest number.

(c)  *Restoration of Units.*  The Government will agree to an amendment of the ACC to provide for subsequent restoration of any reduction made pursuant to paragraph (a) or (b) of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under the Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by Section 8(c)(6) of the Act as may be necessary to carry out this assurance (see Section 1.6).

SECTION 1.13.  *Limitation on Liability.*  No partner of Owner shall be held to any personal liability, nor shall resort be had to his, her or its private property for satisfaction of any obligation or claim arising out of this Housing Assistance Payments Contract, it being understood and agreed that only the assets of Owner shall be liable and subject to levy or execution on account of any liability of Owner arising hereunder.  A deficit capital account of a partner in Owner shall not be deemed to be an asset or property of Owner.

WARNING:  18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than Ten Thousand Dollars ($10,000.00) or imprisoned for not more than five (5) years, or both.

ILLINOIS HOUSING DEVELOPMENT AUTHORITY

Date: _____9/30/80_____          By _____

Manager-Production Services
Official Title

SANDBURG VILLAGE APARTMENTS
("Owner")

Date: _____9/30/80_____          By _____

General Partner
Official Title

APPROVED:

UNITED STATES OF AMERICA, SECRETARY OF HOUSING AND URBAN DEVELOPMENT

By _____

Housing Director
Official Title

Date: _____12-17-80_____

[If the Project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages of this Contract.]

8

Revised 11/7

IHDA Fo   o. LD-30(B)

IHDA Loan No. _HL-115_

## U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
### SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
### HOUSING FINANCE AND DEVELOPMENT AGENCIES

### HOUSING ASSISTANCE PAYMENTS CONTRACT

#### PART II

SECTION 2.1.  *Nondiscrimination in Housing.*

(a) The Owner shall not in the selection of Families, in the provision of services or in any other manner discriminate against any person on the grounds of race, color, creed, religion, sex or national origin. No person shall be *automatically* excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

(b) The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

(c) The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part I, Section 1.1, *et seq.*, the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion, sex or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part I, Section 1.1, *et seq.*, issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government, the said Department and the HFA any of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

SECTION 2.2.  *Training, Employment and Contracting Opportunities for Businesses and Lower-Income Persons.*  (Strike this Section if the estimated Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are $500,000.00 or less.)

(a) The Project assisted under this Contract is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the Project area and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the Project.

(b) Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said Section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR Part 135 (published in 38 FR 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the Project; the making of a good faith effort, as defined by the regulations, to provide training, employment and business opportunities required by Section 3; and incorporation of the "Section 3 clause" specified by Section 135.20(b) of the regulations and paragraph (d) of this Section in all contracts for work in connection with the Project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

(c) Compliance with the provisions of Section 3, the regulations set forth in 24 CFR Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the Project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns, to the sanction specified by this Contract and to such sanctions as are specified by 24 CFR, Section 135.135.

(d) The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of Fifty Thousand Dollars ($50,000.00) cost, the following clause:

"Employment of Project Area
Residents and Contractors

"(A) The work to be performed under this Contract is on a Project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of Section 3 of the Housing and Urban

1

HFA _____

Owner _____

IHDA Form No. LD-30(B)

Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the Project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the Project.

"(B) The parties to this Contract will comply with the provisions of said Section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"(C) The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this Section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"(D) The contractor will include this Section 3 clause in every subcontract for work in connection with the Project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontract is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"(E) Compliance with the provisions of Section 3, the regulations set forth in 24 CFR Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the Project, binding upon the applicant or recipient for such assistance, its successors and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors and assigns, to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR 135.135."

(e) The Owner agrees that he will be bound by the above Employment of Project Area Residents and Contractors clause with respect to his own employment practices when he participates in federally assisted work.

SECTION 2.3. *Cooperation in Equal Opportunity Compliance Reviews.* The HFA and the Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders and rules and regulations pursuant thereto.

SECTION 2.4. *Flood Insurance.* If the Project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the Project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or Project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

SECTION 2.5. *Clean Air Act and Federal Water Pollution Control Act.* (Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum total term of this Contract, are $100,000.00 or less.) In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR Part 15, 39 FR 11099, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, *et seq.*, the Federal Water Pollution Control Act as amended ("Water Act"), 33 U.S.C. 1251, *et. seq.*, and Executive Order 11738, the Owner agrees that:

(a) Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to Section 15.20 of said regulations;

(b) He will promptly notify the HFA of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

(c) He will comply with all the requirements of Section 114 of the Air Act and Section 308 of the Water Act relating to inspection, monitoring, entry, reports and information, as well as all other requirements specified in Section 114 and Section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

(d) He will include or cause to be included the provisions of this Section in every non-exempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2



HFA _____

Owner _____

IHDA Form no. LD-30(B)

SECTION 2.6.  *HFA and Government Access to Premises and Owner's Records.*

(a)  The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the HFA or the Government.

(b)  The Owner shall permit the HFA or the Government or any of their duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the monthly requests for housing assistance payments.

SECTION 2.7.  *Failure or Inability of HFA to Comply with Contract.*  The following provisions of the ACC are hereby made a part of this Contract:

"(a)  *Rights of Owner if HFA Defaults.*

"(1)  In the event of failure of the HFA to comply with the Contract with the Owner, or if such Contract is held to be void, voidable or ultra vires, or if the power or right of the HFA to enter into such Contract is drawn into question in any legal proceedings, or if the HFA asserts or claims that such Contract is not binding upon the HFA for any such reason, the Government may, after notice to the HFA giving it a reasonable opportunity to take corrective action, determine that the occurrence of any such event constitutes a Substantial Default hereunder. When the Government so determines, it shall have the right to assume the HFA's rights and obligations under such Contract, perform the obligations and enforce the rights of the HFA, and exercise such other powers as the Government may have to cure the Default; however, whether or not the Government elects to proceed in this manner, the Government shall, if it determines that the Owner is not in default, continue for the duration of such Contract to pay Annual Contributions for the purpose of making housing assistance payments with respect to dwelling units under such Contract.

"(2)  All rights and obligations of the HFA assumed by the Government pursuant to this Section 2.16(a) will be returned as constituted at the time of such return (i) when the Government is satisfied that all defaults have been cured and that the Project will thereafter be administered in accordance with all applicable requirements, or (ii) when the Housing Assistance Payments Contract is at an end, whichever occurs sooner.

"(3)  The provisions of this Section 2.16(a) are made with, and for the benefit of, the Owner, the HFA (but only in its capacity as Lender), or the Owner's other assignees, if any, who will have been specifically approved by the Government prior to such assignment. If such parties are not in default, they may, in order to enforce the performance of these provisions, (i) demand that the Government, after notice to the HFA giving it a reasonable opportunity to take corrective action, make a determination whether a Substantial Default exists under paragraph (a)(1) of this Section, (ii) if the Government determines that a Substantial Default exists, demand that the Government take action as authorized in paragraph (a)(1), and (iii) proceed against the Government by suit at law or in equity."

SECTION 2.8.  *Rights of HFA and Government if Owner Defaults under Contract.*

(a)  A default by the Owner under this Contract shall result if:

(1)  The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2)  The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

(b)  Upon a determination by the HFA that a default has occurred, the HFA shall notify the Owner, with a copy to the Government, of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the HFA and the Government, the HFA shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance, in its discretion or as directed by the Government.

(c)  Notwithstanding any other provisions of this Contract, in the event the Government determines that the Owner is in default of his obligations under the Contract, the Government shall have the right, after notice to the Owner and the HFA giving them a reasonable opportunity to take corrective action, to abate or terminate housing assistance payments and recover overpayments in accordance with the terms of the Contract. In the event the Government takes any action under this Section, the Owner and the HFA hereby expressly agree to recognize the rights of the Government to the same extent as if the action were taken by the HFA. The Government shall not have the right to terminate the Contract except by proceeding in accordance with Section 2.16(b) of the ACC and paragraph (b) of this Section.

SECTION 2.9.  *Remedies Not Exclusive and Non-Waiver of Remedies.*  The availability of any remedy provided for in this ACC or in the Contract shall not preclude the exercise of any other remedy

3

HFA  _____

Owner  _____

IHDA Form LD-30(B)

under this ACC or the Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

SECTION 2.10.   *Disputes.*

(a) Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement of the HFA and the Owner may be submitted by either party to the Department of Housing and Urban Development field office director who shall make a decision and shall mail or otherwise furnish a written copy thereof to the Owner and the HFA.

(b) The decision of the field office director shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, either party mails or otherwise furnishes to the Government a written appeal addressed to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the determination of such appeals shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this Section, the appellant shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, both parties shall proceed diligently with the performance of the Contract and in accordance with the decision of the field office director.

(c) This Section does not preclude consideration of questions of law in connection with the decisions rendered under paragraphs (a) and (b) of this Section; provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative or board, on a question of law.

SECTION 2.11.   *Interest of Members, Officers or Employees of HFA, Members of Local Governing Body or Other Public Officials.*   No member, officer or employee of the HFA, no member of the governing body of the State or locality (city and county) in which the Project is situated, and no other public official of such State or locality who exercises any functions or responsibilities with respect to the Project, during his tenure or for one (1) year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or any benefits arising therefrom. In the case of a Project owned by a public housing agency, the foregoing prohibition shall also apply to members of the governing body of the locality (city and county) in which such public housing agency was activated.

SECTION 2.12.   *Interest of Member of or Delegate to Congress.*   No member of or delegate to the Congress of the United States of America or resident commission shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

SECTION 2.13.   *Assignment, Sale or Foreclosure.*

(a) The Owner agrees that he has not made and will not make any sale, assignment or conveyance or transfer in any other form of this Contract or the Project or any part thereof or any of his interest therein, without the prior consent of the HFA and the Government; provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the Project, the HFA and the Government shall consent in writing if the terms of the financing have been approved by the Government.

(b) The Owner agrees to notify the HFA and the Government promptly of any proposed action covered by paragraph (a) of this Section. The Owner further agrees to request the written consent of the HFA and the Government in regard thereto.

(c) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or transfers by more than one party of interests aggregating a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (*e.g.*, increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or classification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.13. An assignment by the Owner to a limited partnership, in which no limited partner has a twenty-five percent (25%) or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance or transfer. The Owner, and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the existing parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto. The term "substantial interest" means the interest of any general partner, any limited partner having twenty-five percent (25%) or more interest in the organization, any corporate officer or director and any stockholder having a ten percent (10%) or more interest in the organization.

(d) In the event of foreclosure or assignment or sale to the HFA (or mortgagee if the HFA is not the mortgagee) in lieu of foreclosure, or in the event of assignment or sale agreed to by the HFA (or mortgagee if the HFA is not the mortgagee) and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of this Contract.



4

HFA _____



Owner _____