IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREENLEAF LIMITED PARTNERSHIP and SANDBURG VILLAGE APARTMENTS,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>ILLINOIS HOUSING DEVELOPMENT AUTHORITY,<br><br>　　　　　Defendant and<br>　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>SHAUN DONOVAN[1], Secretary, United States Department of Housing and Urban Development<br><br>　　　　　Third-Party Defendant. | Case No. 08 C 2480, consolidated with 08 C 3446<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Third-Party Defendant, Shaun Donovan, Secretary, United States Department of Housing and Urban Development ("Secretary" or "HUD") moves this Court pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Defendant/Third-Party Plaintiff, Illinois Housing Development Authority's ("IHDA") third-party Complaints for lack of jurisdiction and failure to state a claim upon which relief can be granted. Specifically, the Secretary asserts that IHDA has failed to identify a valid waiver of sovereign immunity that applies to its claims against the Secretary and as such its claims are not properly before this Court. The Secretary asserts that IHDA's third-party claims fall

---

[1] Steven C. Preston was originally named as the third-party Defendant. The court notes that on January 26, 2009, Shaun Donovan was sworn in as the Secretary for Housing and Urban Development. The Court automatically substitutes Secretary Donovan replacing Secretary Preston. *See* Fed.R.Civ.P. 25(d).

within the Tucker Act's waiver of sovereign immunity and therefore exclusive jurisdiction rests in the Court of Federal Claims. For the reasons stated, the Secretary's Motion to Dismiss is Granted.

## STATEMENT OF FACTS/PROCEDURAL HISTORY[2]

Pursuant to Section 8 of the United States Housing Act of 1937, as amended, the United States, acting through the Department of Housing and Urban Development ("HUD"), subsidizes the rents of low-income tenants of privately-owned dwellings. 42 U.S.C. § 1437f; Greenleaf Am. Third-Party Compl. ¶ 7; Sandburg Am. Third-Party Compl. ¶ 7. The rent subsidy is provided in one of two ways: either HUD enters into a Housing Assistance Payments contract ("HAP contract") with a private landlord; or HUD enters into an Annual Contributions Contract ("ACC") with a public housing agency ("PHA") and the PHA enters into a HAP contract with the landlord. Greenleaf Am. Third-Party Compl. ¶¶ 9-10; Sandburg Am. Third-Party Compl. ¶¶ 9-10. In either case, the HAP contract specifies a monthly contract rent for particular housing units. Greenleaf Am. Third-Party Compl. ¶ 8; Sandburg Am. Third-Party Compl. ¶ 8. The tenant pays the landlord a portion of the contract rent based on the tenant's income, and either HUD or the PHA pays the landlord the difference between the tenant's payment and the contract rent. Greenleaf Am. Third-Party Compl. ¶ 8, 10; Sandburg Am. Third-Party Compl. ¶ 8, 10. The PHA is obliged to administer the HAP contract in accordance with HUD's requirements and directives and HUD is obliged to fund all housing assistance payments that are owed to the HAP contract. Greenleaf Am. Third-Party Compl. ¶ 12; Sandburg Am. Third-Party Compl. ¶ 12.

According to IHDA, HUD entered into ACCs with IHDA and IHDA entered into HAP

---

[2] In deciding a motion to dismiss for lack of subject-matter jurisdiction this Court must accept all well-pleaded facts in IHDA's Complaint as true; however, this Court is permitted to look beyond the four corners of the complaint to determine whether subject matter jurisdiction exists. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

contracts with Plaintiffs. Greenleaf Am. Third-Party Compl. ¶ 13; Sandburg Am. Third-Party Compl. ¶ 13. These HAP contracts were entered into in 1980 and 1979 and the terms of these contracts, with automatic renewals, continue through 2020 and 2021 respectively. Greenleaf Am. Third-Party Compl. ¶ 13; Sandburg Am. Third-Party Compl. ¶ 13. The HAP contracts provided for annual increases of the contract rents under specified conditions. Greenleaf Am. Third-Party Compl. ¶ 16; Sandburg Am. Third-Party Compl. ¶ 16.

In 1994, Congress amended Section 8 by placing certain restrictions on annual increases in contract rents. *See* 42 U.S.C. § 1437f(c)(2)(A) (1994). Greenleaf Am. Third-Party Compl. ¶ 17; Sandburg Am. Third-Party Compl. ¶ 17. HUD issued a notice, Notice H 95-12, implementing Congress's amendments. Greenleaf Am. Third-Party Compl. ¶ 18; Sandburg Am. Third-Party Compl. ¶ 18. According to IHDA, Notice H 95-12 also imposed additional requirements beyond those contained in the existing HAP contracts or in the 1994 amendments. *Id*. According to IHDA, it has administered the HAP contracts with Plaintiffs in accordance with Congress's amendments and Notice H 95-12. Greenleaf Am. Third-Party Compl. ¶ 18; Sandburg Am. Third-Party Compl. ¶ 18.

On April 30, 2008, Greenleaf Limited Partnership ("Greenleaf") filed a Complaint against IHDA (08-2480). On June 16, 2008, Sandburg Village Apartments ("Sandburg") also filed a Complaint against IHDA (08-3446). On July 28, 2008, IHDA answered the two complaints and filed third-party complaints against the Secretary. On August 19, 2008, the two cases were consolidated under case number 08-2480. On September, 3, 2008, Greenleaf and Sandburg (collectively, "Plaintiffs") filed a consolidated Amended Complaint against IHDA alleging that IHDA breached the HAP contract by: (1) failing to increase contract rents or by increasing contract

3

rents by less than the amount called for in the HAP contract; (2) reducing the annual adjustment factor by .01 for units occupied by the same family in consecutive years; and (3) requiring the plaintiffs to submit rent comparability studies. Consolidated Am. Compl. ¶¶ 49-64. The Plaintiffs seek compensatory damages, an increase in the current contract rents and costs. *Id*.

On August 19, 2008, IHDA filed separate Amended Third-Party Complaints against the Secretary seeking relief in the event that IHDA is found liable to the Plaintiffs. Greenleaf Am. Third-Party Compl. ¶ 1; Sandburg Am. Third-Party Compl. ¶ 1. IHDA's Amended Third-Party Complaints each state three claims for relief entitled "Administrative Procedure Act", "Contract/Indemnification," and "Declaratory Judgment." Greenleaf Am. Third-Party Compl. ¶¶ 27-35; Sandburg Am. Third-Party Compl. ¶¶ 27-35. In support of its claims, IHDA alleges that, if IHDA has breached its HAP contracts with Greenleaf and Sandburg, HUD has breached the ACCs with IHDA and must compensate IHDA for past damages and future rent adjustments. *See* Greenleaf Am. Third-Party Compl. ¶¶ 30, 32-33 & Prayer for Relief; Sandburg Am. Third-Party Compl. ¶¶ 30, 33-33 & Prayer for Relief. IHDA also seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of contract rents, and its right to have such rent adjustments funded by HUD. *See* Greenleaf Am. Third-Party Compl. ¶ 35 & Prayer for Relief; Sandburg Am. Third-Party Compl. ¶ 35 & Prayer for Relief.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). "If subject matter jurisdiction is . . . not evident on the face of the complaint, the

4

motion to dismiss . . . would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. However, as here, if the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus*, 322 F.3d at 946; *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) *citing Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). The party asserting jurisdiction must establish it by "competent proof." *U.S. Phosphorus*, 322 F.3d at 946; *NFIC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) *citing McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). This means that jurisdiction must be established by a preponderance of the evidence or "proof to a reasonable probability." *NFIC*, 45 F.3d at 237, *citing Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993).

      When considering a motion to dismiss under Rule 12(b)(6), this court will accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

**DISCUSSION**

To sue the United States in federal court, IHDA must identify a statute that confers subject matter jurisdiction on the district court *and* a federal law that waives the sovereign immunity of the United States to the cause of action. *See Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003). Absent an applicable waiver, sovereign immunity protects the federal government from any and all suits brought against it, without regard to any perceived unfairness, inefficiency, or inequity. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).

There are a number of different statutes that waive the sovereign immunity of the United States but only the relevant ones will be discussed here. For example, Congress has waived sovereign immunity pursuant to the Tucker Act; however, such suits against the U.S. brought within the Tucker Act's waiver of sovereign immunity must be brought in the United States Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1). To fall within the Tucker Act's waiver of sovereign immunity, three conditions must be met: 1) the action must be against the United States; 2) the action must seek monetary relief in excess of $10,000; and 3) the action must be founded upon the Constitution, federal statute, executive regulation, or governmental contract. *Id.* If these three conditions are satisfied, then the United States' sovereign immunity is waived and subject matter jurisdiction for the claim rests exclusively in the Court of Federal Claims unless there is a basis for concurrent jurisdiction in the district courts. *See* 28 U.S.C. § 1491(a)(1) (supplying a forum-specific waiver of sovereign immunity and providing for exclusive jurisdiction for actions for money damages against the United States in the U.S. Court of Federal Claims).[3]

---

[3]There is an exception to the Court of Federal Claims' exclusive jurisdiction under the Tucker Act. *See* 28 U.S.C. § 1346(a)(2) (providing for concurrent jurisdiction in the district courts over claims "not exceeding $10,000 in amount").

Congress has also provided limited waivers of sovereign immunity, without providing for exclusive jurisdiction in the U.S. Court of Federal Claims through 5 U.S.C. § 702 (the "APA") and 42 U.S.C. § 1404(a). Here, IHDA asserts that its claims against HUD do not fall within the Tucker Act's waiver of sovereign immunity, which would divest this Court of jurisdiction, but rather that the APA and §1404(a) provide the applicable waivers of sovereign immunity to its claims against HUD. Additionally, because the APA and § 1404(a) do not provide an independent grant of subject matter jurisdiction in the district courts, IHDA further asserts that this Court has jurisdiction over its claims pursuant to 28 U.S.C. § 1331, and therefore IHDA's third-party claims against HUD are properly before this Court.

## I. Administrative Procedure Act, 5 U.S.C. § 702

The Administrative Procedure Act ("APA") waives sovereign immunity for non-monetary actions against the government and provides for judicial review in the federal district courts. 5 U.S.C. §§ 701-06. *See Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1122 (Fed. Cir. 2007) ("A plaintiff seeking relief, other than monetary relief, from a disputed government agency action could challenge that action in the district court under the APA."). In contrast, if a suit is seeking monetary damages against the Government it cannot be brought in a district court because the Tucker Act vests exclusive jurisdiction for such a suit in the Court of Federal Claims. *Id*. Therefore, for this Court to determine whether IHDA's claims against HUD are properly before this Court, this Court must determine the true nature of IHDA's claims. If IHDA's claims are contract claims seeking a money judgment then they belong in the Court of Federal Claims under the Tucker Act. If IHDA's claims seek only equitable relief then they may fall under the APA's waiver of sovereign immunity thus permitting them to be heard in this Court.

In making this determination, this Court must look beyond the form of the pleadings to the substance of IHDA's claims to determine whether they are actually "claim[s] for money." *Id*. at 1124. "Dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case." *Id*.; *see also Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States").

If the true nature of IHDA's claim is a claim for money, then it still must be determined whether the claim is excluded from APA jurisdiction by one or more of the limitations set forth in §§ 702 & 704. *See Suburban Mortgage Assocs., Inc.*, 480 F.3d 1124. Sections 702 and 704 of the APA provide three exceptions to the APA's grant of sovereign immunity; there will be no waiver of sovereign immunity under the APA if: (1) there is an "adequate remedy" available elsewhere, such as the Court of Federal Claims, 5 U.S.C. § 704; (2) the suit seeks "money *damages*," 5 U.S.C. § 702; or (3) another "statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702. *Suburban Mortgage Assocs., Inc.*, 480 F.3d at 1124. These three limitations function in the disjunctive; the application of any one is enough to deny a district court jurisdiction under the APA. *Id*. at 1126.

**A. IHDA's claims under the APA are contract claims seeking monetary relief**

Although partially framed as seeking declaratory relief, in actuality, IHDA's third-party claims against HUD are contract claims seeking monetary relief. In analyzing whether IHDA's

8

claims are contract claims this Court considers both "the source of the rights upon which [IHDA] bases its claims" and "the type of relief sought (or appropriate)." *Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 376 (2nd Cir. 1999) (applying the *Megapulse* approach).

Here, IHDA's third-party claims arise under the ACCs that it entered into with HUD and IHDA seeks to recover money from HUD if it is found liable to the Plaintiffs for breach of contract. Even IHDA's own Complaint states that "HUD must provide any additional housing assistance payments, retroactive or prospective, to which plaintiff or other Section 8 housing owners are entitled when adjustment to the Contract Rents are calculated correctly and in conformance with applicable legal requirements." IHDA Complaint at 6. IHDA is in essence seeking to obtain the financial benefit of a prior contract-based obligation that allegedly has not been honored by HUD. IHDA's Complaint asks for damages for breach of contract and indemnification. In truth, IHDA does not dispute that it is seeking monetary relief from HUD. *See* IHDA Br. at 12 ("IHDA seeks money from HUD as a form of specific relief . . . ").[4]

IHDA asserts that its claims against HUD are not contractual because it is challenging HUD's actions as a "regulator." IHDA Br. at 13. In support of its assertion, IHDA relies on *Katz v. Cisneros*, 16 F.3d 1204 (Fed. Cir. 1994). In *Katz*, the Plaintiff challenged HUD's *interpretation* of the regulations governing the calculation of contract rents. *Id*. at 1208. The Plaintiff was seeking payments to which it alleged it was entitled pursuant to federal statute and regulations; it did not

---

[4] The Court is not making a determination at this point in the analysis as to whether IHDA's claims seek money *damages* but rather if they seek monetary relief.

9

seek money as compensation for a loss suffered or an anticipated loss. Here, IHDA is seeking compensation from HUD if it is required to pay the Plaintiffs additional money for rent increases. *Id*. IHDA is not seeking judicial interpretation of any statutory or administrative provision governing the calculation of contract rent increases and the Secretary's obligation under such provisions to fund rent increases. Unlike the Plaintiff in *Katz*, IHDA has not set forth any statutory or administrative provision in need of interpretation. In fact, IHDA alleges that it has administered the HAP contracts in accordance with Congress' and HUD's statutory and administrative requirements and has not asserted any alternative interpretation of these requirements. Greenleaf Am. Third-Party Compl. ¶ 19; Sandburg Am. Third-Party Compl. ¶ 19. IHDA's claims against HUD contend that the correctly-interpreted statutory and administrative requirements violate IHDA's contractual rights, rights not tracked in any statute or regulation. Additionally, IHDA is not seeking to enforce any statutory mandate. The statutory mandate is clear, Congress enacted the 1994 amendments which changed the applicable increases in Contract Rents. *See* 42 U.S.C. § 1437f. It is this very mandate that IHDA has a problem with; it is certainly not seeking to enforce it as it was HUD's enforcement of this very mandate that led to IHDA filing its Complaints against HUD. The only source of rights upon which IHDA has based its claims are the ACCs, and the only remedies it has sought are for breaches of contract. That the actions complained of may be statutory or administrative in nature is immaterial; IHDA alleges only that HUD's actions violated its contract rights.

Additionally, Federal Rule of Civil Procedure 14(a)(1) permits IHDA to file a third-party complaint against HUD only if HUD "is or may be liable to [IHDA] for all or part of the claim against it." Fed.R.Civ.P.14(a)(1). Here, Plaintiffs sued IHDA for "compensatory damages for the

breaches by IHDA of Plaintiffs' HAP contracts with IHDA" and for an order increasing the current contract rents. Consolidated Am. Compl. Prayer for Relief ¶¶ (ii)-(iii). IHDA then filed a third-party complaint against HUD based on HUD's ACCs with IHDA. Therefore, it logically flows that IHDA filed its third-party Complaint against HUD because it is alleging that HUD may be liable for all or part of Plaintiffs' claim against IHDA. If the Plaintiff's claim is based on contract and seeks monetary relief then IHDA's claim against HUD must be based on contract (the ACCs) and seek monetary relief as well.

Despite the form of IHDA's third-party Complaints, IHDA's claims are in substance contract-based actions asking for monetary relief from HUD.

**B. The Tucker Act provides an adequate remedy for IHDA's claims in the Court of Federal Claims.**

Now that this Court has determined that IHDA's claim is actually a contract claim seeking monetary relief, this Court must go on to analyze whether one of the three limitations to a waiver of sovereign immunity under the APA applies. This Court's analysis begins with the "adequate remedy" (§ 704) issue because its resolution often will be dispositive. *See e.g. Suburban Mortgage Assocs., Inc.*, 480 F.3d at 1125 ("If the suit is at base a claim for money, and the relief available through the Court of Federal Claims under the Tucker Act-a money judgment-will provide an adequate remedy, the inquiry is at an end"); *Christopher Vill.*, 360 F.3d at 1327-29 (determining there was an adequate remedy in the Court of Federal Claims without analyzing the "money damages" limitation); *Consol. Edison Co. of N.Y., Inc. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1382-83 (Fed. Cir. 2001) (declining to address the "money damages" issue because the Court of Federal claims would provide an adequate remedy).

Section 704 of the APA excludes from the APA's sovereign immunity waiver those claims

for which adequate remedies are available elsewhere. 5 U.S.C. § 704. Section 704 states, in relevant part: "Agency action made reviewable by statute and final agency action for which there is *no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). In other words, if IHDA has an alternative adequate remedy in another court, such as the Court of Federal Claims, it cannot seek review of HUD's actions in a district court under the APA. *See Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994) ("[W]here agency action is otherwise reviewable in court and an adequate remedy is available in connection with that review, the APA's waiver of sovereign immunity under section 702 is not available.").

IHDA asserts that the Court of Federal Claims cannot provide an "adequate remedy" because it is seeking prospective relief and it has an ongoing relationship with HUD. IHDA Br. at 14-15. In support of its argument that the Court of Federal Claims can not offer an adequate remedy in this case, IHDA relies on *Bowen v. Massachusetts*, 487 U.S. 879 (1988). In *Bowen*, Massachusetts challenged a final order by the Secretary of Health and Human Services refusing to reimburse the State through the Medicaid program for services related to intermediate care facilities for the mentally retarded. *Id*. The *Bowen* Court found that the APA provided a valid waiver of sovereign immunity and that the Court of Federal Claims could not provide the State with an "adequate remedy." *Id*. at 893. *Bowen*, however, does not enunciate a broad rule that the Court of Federal Claims cannot supply an adequate remedy in any case seeking some sort of equitable relief. *See Consol. Edison*, 247 F.3d at 1383.

The Supreme Court's ruling in *Bowen* turned on the "complexity of the continuous relationship between the federal and state governments administering the Medicaid program." *Consol. Edison*, 247 F.3d at 1383. The *Bowen* Court was "not willing to assume, categorically, that

12

a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties." *Bowen*, 487 U.S. at 905. The *Bowen* decision was fact specific and left open the possibility that the Court of Federal Claims may supply an "adequate remedy" in cases that do not involve a "complex ongoing federal-state interface." *Consol. Edison*, 247 F.3d at 1383. The Medicaid program at issue in *Bowen* had shifting demographics and populations, advancing medical technologies, unforeseeable health threats, and varying state and federal economic conditions. *Id*. In contrast, the relationship between IHDA and HUD involves a fixed contract and a fixed series of payments over time relating only to the calculation of rents and HUD's contributions. Additionally, the Supreme Court's focus in *Bowen* was on the statutory requirements set forth in the complex grant program; nowhere in *Bowen* did the Court make reference to the existence of any specific contract defining the relationship between the parties.

The *Bowen* court also relied on the fact that it was "doubtful" that the Court of Federal Claims would have jurisdiction over Medicaid disallowance decisions when determining that the Court of Federal Claims could not supply an adequate remedy in the specific complex ongoing relationship present in that case. *See Bowen*, at 905, 906 n. 42. In contrast, IHDA's claims against HUD present no jurisdictional problems. The gravamen of IHDA's claims is that HUD cannot modify its contractual obligation to pay IHDA for rent adjustments to which Plaintiffs may allegedly be entitled by unilaterally altering the terms of the ACC. The answer to this issue depends on whether Congress intended to authorize the Secretary to modify existing ACCs by incorporating the new provisions of §1437f(c)(2)(A), and, if this was its intention, whether the modification infringes any of IHDA's protected interests. The primary basis for IHDA's challenge to HUD's actions,

13

therefore, are the ACCs. Additionally, the Tucker Act gives the Court of Federal Claims jurisdiction over actions against the United States founded upon the Constitution, federal statutes, and regulations, as well as upon government contracts. *See* 28 U.S.C. § 1491. Therefore, the Court of Federal Claims is the proper forum for IHDA's action, whether or not it is characterized as one in contract or one to interpret provisions of the Constitution, federal statutes, or regulations pertaining to the contract. *See Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473-75 (4th Cir. 1983) (holding that the Tucker Act provides exclusive jurisdiction in the Court of Federal Claims over claims arising out of an ACC).

Here, the Court of Federal Claims can provide IHDA with an "adequate remedy" within the meaning of § 704. "The availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy' for § 704 purposes." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005); *Suburban Mortgage Assoc.*, 480 F.3d at 1126. As stated above, IHDA's claims against HUD seek monetary relief. To the extent that IHDA's claims seek prospective relief, IHDA's claims for retrospective monetary relief overlap with its claims for prospective monetary relief. Relief for its retrospective claims for money from HUD for past rent increases will also provide relief for its prospective claims for money from HUD for future rent increases because in the event of success on its retrospective claims, IHDA will receive a payment from HUD for breach of contract. In the face of such a judgment, HUD could not proceed to withhold future rent increases under its ACCs with IHDA without again illegally withholding funds. Additionally, *res judicata* principles would address IHDA's concerns about prospective annual rent increase disputes with HUD. *See Consol. Edison*, 247 F.3d 1384-85.

The jurisdictional requirements of the Tucker Act are satisfied; IHDA's claims are for more

than $10,000 and are based on an express contract with HUD, and therefore the Court of Federal Claims, through a money judgment, can provide an adequate remedy. Accordingly, §704 of the APA bars this Court from hearing IHDA's claims against HUD because they belong in another court-the Court of Federal Claims.[5]

### C. The Tucker Act impliedly forbids relief under the APA.

While this Court's determination that an "adequate remedy" exists in the Court of Federal Claims for IHDA's claims against HUD is determinative, it is worth mentioning that § 702's exception to the APA's waiver of sovereign immunity also applies here. Section 702 does not provide a waiver of sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." The Tucker Act impliedly forbids the district courts from exercising jurisdiction over requests for money damages (over $10,000) as well as for other equitable relief under the APA for claims arising out of contracts. 28 U.S.C. § 1346(a), 1491; *see also Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir. 1990) (Tucker Act "assigns to the Claims Court all action seeking equitable relief based on a contract with the United States."); *Albrecht*, 357 F.3d at 68 (Tucker Act "impliedly forbids-in APA terms-not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not."). As discussed earlier, this case is, in effect, a suit for breach of contract exceeding $10,000 because IHDA's claims arise out of its ACCs with HUD. That the actions complained of may be statutory and administrative in nature is immaterial; IHDA alleges

---

[5] It is also worth mentioning that, as IHDA itself points out, other owners of Section 8 developments who have pre-1994 HAP contracts with HUD have challenged the application of the 1994 amendments and Notice H 95-12 (like IHDA is doing here) in the Court of Federal Claims. *See Park Properties Assocs., L.P. v. United States*, 74 Fed.Cl. 264 (Ct. Cl. 2006)*; Statesman II Apartments, Inc. v. United States*, 66 Fed.Cl. 608 (Ct. Cl. 2005); *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed.Cl. 751 (Ct. Cl. 2003). This further supports the proposition that the Court of Federal Claims can provide an adequate remedy for IHDA's claims against HUD.

15

only that those actions violated its contractual rights, not that they violated some other constitutional, statutory, or regulatory rights. Therefore, the Tucker Act bars IHDA's invocation of § 702 as a statutory waiver of sovereign immunity as well.

**II. § 1404(a)**

IHDA next contends that sovereign immunity for its claims against HUD is waived under 42 U.S.C. § 1404(a), the "sue and be sued" clause, and therefore its third-party claims against HUD are properly before this Court. Section 1404(a) provides, in relevant part: "The Secretary of Housing and Urban Development may use and be sued only with respect to its functions under the United States Housing Act of 1937, as amended, and title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, as amended." 42 U.S.C. 1404(a). For a claim to be against the Secretary of HUD and within the scope of the "sue and be sued" clause's waiver of sovereign immunity, a judgment against the Secretary must come from funds within the control of the Secretary, not from the United States Treasury. *See Merrill Tenant Council v. U.S. Dep't of Hous. & Urban Dev.*, 638 F.2d 1086, 1091 (7th Cir. 1981); *see also Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 675 n.9 (to distinguish between suits against the U.S. and suits against federal agencies a court must determine "whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States Treasury."); *Portsmouth*, 706 F.2d at 473 ("An action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself of the public treasury or domain . . . ") (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). To determine if a judgment for IHDA would come from funds within HUD's control this Court must speculate as to whether HUD would have funds on hand to satisfy the judgment. *See Merrill Tenant*

16

*Council*, 638 F.2d at 1093; *Clinton Company v. United States*, No. 88 C 2705, 1991 WL 95284 at * 11 (N.D. Ill May 24, 1991) (Gottschall, J.)

IHDA's suit is against Shaun Donovan, the Secretary of HUD, for acts performed within his official capacity, and, consequently, it amounts to an action against the sovereign. *See Portsmouth*, 706 F.2d at 473. IHDA seeks recovery for disputes arising out of ACCs created pursuant to Section 8 of the U.S. Housing Act and recovery for suits arising out of ACCs come from the public treasury. *See Portsmouth*, 706 F.2d at 473-74 (suit brought against HUD under U.S. Housing Act was in reality against U.S. because there was no separate fund from which judgment would be paid); *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F.Supp. 2d 1369, 1376-77 (N.D. Ga. 2003) (recovery for claims arising under the U.S. Housing Act do not come from funds within the separate control and possession of the Secretary); *Fryar v. Kemp*, 774 F.Supp. 1033, 1035 (W.D. La. 1991) (funds from ACCs come from the public treasury); *Carlyle Gardens Co. v. Del. State Hous. Auth.*, 659 F.Supp. 1300, 1304-07 (D. Del. 1987) (suit to recover housing assistance payments from HUD was in reality against the U.S.).

In support of its assertion that it is suing HUD and not the United States because any money recovered will come from a fund within HUD's control and not the public treasury, IHDA relies in part on *Industrial Indemnity., Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980) and *Mann v. Pierce*, 803 F.2d 1552 (11th Cir. 1986). Both of these cases addressed the issue of whether a suit brought against HUD pursuant to the National Housing Act ("NHA") was barred by sovereign immunity. *See Indus. Indem.*, 615 F.2d at 645; *Mann*, 803 F.2d at 1557. The courts concluded that the plaintiffs suits were against HUD rather than the U.S. because a judgment against HUD would be paid out of the money in HUD's General Insurance Fund ("GIF") which was established by the NHA and which

17

was "a separate fund in the control and possession of the Secretary." *See Indus. Indem.*, 615 F.2d at 646; *Mann*, 803 F.2d at 1557-58.

Here, unlike the plaintiffs in *Industrial Indemnity* and *Mann*, who sought damages pursuant to the NHA, IHDA is suing HUD for recovery from ACCs created pursuant to Section 8 of the U.S. Housing Act. The funds for ACCs do not come from a specific fund like the GIF in *Industrial Indemnity* and *Mann*. *See Portsmouth*, 706 F.2d 473; *5th Bedford Pines*, 262 F.Supp. 2d at 1377; *Fryar*, 774 F.Supp. 1035; *Carlyle Gardens*, 659 F.Supp. 1306-07. There is no separate fund for the payment of Section 8 expenses that is within HUD's separate control. *See Portsmouth*, 706 F.2d 473; *5th Bedford Pines*, 262 F.Supp. 2d at 1377; *Fryar*, 774 F.Supp. 1035; *Carlyle Gardens*, 659 F.Supp. 1306-07.

Additionally, IHDA has not identified any account or fund "within the control of the Secretary" from which it seeks to collect. *See Merrill Tenant Council*, 638 F.2d at 1091; *see also Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.*, 595 F.2d 1126, 1131 (9th Cir. 1979) (suit against HUD is against United States because no separate funds identified). In fact, implicit in IHDA's pleading is the theory that the United States is primarily liable for any breach and that it is from the United States that recovery of any damages will be sought. *See* IHDA's Am. Third-Party Compls. ¶ 11 ("the faith of the United States is solemnly pledged for the payment to annual contributions pursuant to the ACC."). Additionally, the "project accounts" set up under the Regulations of the Secretary, 24 C.F.R. § 883.604(b), for ACC projects are not funds "within the control of the Secretary." See *Merrill Tenant Council*, 638 F.2d at 1091; see also *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) ("Project Account" established under Regulations of the Secretary for housing assistance payments under Section 8 did not represent "money balances in any

earmarked accounts subject to the control of HUD at the United States Treasury nor at any other financial institution.").

IHDA maintains that it does not have to identify any account or fund outside of the public treasury from which it seeks to collect. In support of this contention, IHDA relies on *Merrill Tenant Council*. But, IHDA's reliance on *Merrill Tenant Council* is misplaced. The court in *Merrill Tenant Council* did not hold that a plaintiff that seeks recovery from HUD under a "sue and be sued" clause does not have to identify a source of funds other than the public treasury from which it seeks to recover. In stark contrast, the court specifically held that to sue HUD under a "sue and be sued" clause, a judgment for a plaintiff must come from funds within the control of the Secretary. *See Merrill Tenant Council*, 638 F.2d at 1091. In the specific facts of that case, the court disagreed with the defendant's assertion that the case should be dismissed because as a matter of law, no HUD funds were available for payment. *Id.* at 1093. The court based this decision on a specific finding that there *were* funds within the Secretary's control to satisfy the limited sum of money that the plaintiffs could recover. *Id.* The court, in determining whether there was a fund within the exclusive control of the Secretary to satisfy the judgment sought first analyzed the amount of damages recoverable by the plaintiffs. *Id.* at 1091. The court found that there were specific funds within the Secretary's control to satisfy the judgment because the amount of money subject to recovery was minimal (limited to interest plus court costs and attorney's fees) and because there was a revolving fund comprised of security deposits kept in an interest-bearing Security Deposit Bank Account from which this minimal amount of recovery could be paid. *Id.* at 1092-93.

IHDA appears to take refuge in the idea that the captioning of the lawsuit somehow outweighs the functional identity of the United States; however, although IHDA has named HUD

19

as a defendant, its claims are actually against the United States because any recovery would come from the United States Treasury, and therefore § 1404(a)'s limited waiver of sovereign immunity does not apply here.  *See Federal Savings and Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969) (citing *Land v. Dollar*, 330 U.S. 731 (1947)) (the nominal classification attached to a party is not dispositive for sovereign immunity inquiries, the inquiry focuses on the effect on the public treasury).

## CONCLUSION

For the reasons stated, neither the APA's waiver of sovereign immunity nor section 1404(a)'s waiver of sovereign immunity are applicable to IHDA's third-party claims against HUD.  IHDA's third-party claims against HUD are contract claims for monetary relief in excess of $10,000 and therefore fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act.  Therefore, HUD's Motion to Dismiss is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: February 23, 2009