IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREENLEAF LIMITED PARTNERSHIP and )
SANDBURG VILLAGE APARTMENTS, )
                                  )
            Plaintiffs,           )   Case No. 08 C 2480
      v.                          )
                                  )   Judge Virginia M. Kendall
ILLINOIS HOUSING DEVELOPMENT      )
AUTHORITY,                        )
                                  )
            Defendant.            )

# MEMORANDUM OPINION AND ORDER

Greenleaf Limited Partnership and Sandburg Village Apartments (collectively, "Plaintiffs") filed suit against the Illinois Housing Development Authority ("IHDA") alleging that IHDA breached their Housing Assistance Payments Contracts ("HAP Contracts) by: (1) failing to increase contract rents or by increasing contract rents by less than the amount called for in the HAP contract; (2) reducing the annual adjustment factor by .01 for units occupied by the same family in consecutive years; and (3) requiring the plaintiffs to submit rent comparability studies. Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs and IHDA have filed cross-motions for partial summary judgment on the issue of whether IHDA may invoke the HAP Contracts' Overall Limitation Provision to limit its damages for breach of contract. For the reasons stated herein, Plaintiffs' Motion for Partial Summary Judgment is granted and IHDA's Motion for Partial Summary Judgment is denied.

# STATEMENT OF UNDISPUTED FACTS[1]

Plaintiff Greenleaf Limited Partnership ("Greenleaf") is an Illinois Limited Partnership that owns Greenleaf Apartments, a 321-unit multifamily housing rental project located in Bolingbrook, Illinois. (IHDA 56.1 Resp. ¶¶ 1-2.) Plaintiff Sandburg Village Apartments ("Sandburg") is also an Illinois Limited Partnership that owns a 128-unit multifamily rental housing project named Sandburg Village Apartments in Galesburg, Illinois. (IHDA 56.1 Resp. ¶¶ 3-4.) Defendant IHDA is a Public Housing Agency as defined by the United States Housing Act of 1937, 42 U.S.C. § 1437(a), and a State Agency, as defined by 24 C.F.R. § 883.302 (2007). (IHDA 56.1 Resp. ¶ 5.) This Court has federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331 because the case arises under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437(f) ("Section 8"). (IHDA 56.1 Resp. ¶ 6.)

Greenleaf Apartments is a complex built pursuant to the United States Department of Housing and Urban Development's ("HUD") Section 8 Program for State Housing Agencies. (IHDA 56.1 Resp. ¶ 7.) Greenleaf Apartments' original owner entered into a HAP Contract with IHDA in five stages between October 1, 1981 and June 1, 1982 ("the Greenleaf Contract"). (IHDA 56.1 Resp. ¶ 8-9; GS 56.1 Resp. ¶ 11.) HAP Contracts like this provide a means of subsidizing the rent of low-income tenants under Section 8. (GS 56.1 Reply ¶ 23.) In 2002, IHDA approved the assignment of the Greenleaf Contract from the original owner to Greenleaf. (IHDA 56.1 Resp. ¶ 12.)

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Plaintiffs's Statement of Uncontested Facts have been abbreviated to "GS 56.1 Exhibit __."; citations to IHDA's Statement of Uncontested Facts have been abbreviated to "IHDA 56.1 Exhibit __."; citations to IHDA's Response to Plaintiffs's Statement of Uncontested Facts and Statement of Additional Facts have been abbreviated to "IHDA 56.1 Resp. ¶ __." ; citations to Plaintiffs's Response to IHDA's Statement of Material Facts have been abbreviated to "GS 56.1 Resp. ¶ __."; citations to Plaintiffs's Reply to IHDA's Response to Plaintiffs's Statement of Material Facts been abbreviated to "GS 56.1 Reply ¶ __."; and citations to IHDA's Reply to Plaintiffs' Response to IHDA's Statement of Material Facts have been abbreviated "GS 56.1 Reply ¶ __."

Sandburg Village Apartments was also built pursuant to HUD's Section 8 Program. (IHDA 56.1 Resp. ¶ 17.) Section 8 has subsidized rents at Sandburg Village Apartments since IHDA entered into a HAP Contract with Sandburg in six stages between October 1, 1981 and March 1, 1981 ("the Sandburg Contract"). (GS 56.1 Resp. ¶¶ 6, 10.)

Both the Greenleaf and the Sandburg Contracts establish rent amounts ("Contract Rents") and obligate IHDA to make assistance payments to the Plaintiffs in amounts equal to the difference between the Contract Rents and the payments made by tenants. (GS 56.1 Resp. ¶ 12.) Section 2.7(b)(1) of the Greenleaf Contract provides that "[u]pon request from the Owner to the HFA Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 88 and this contract." (IHDA 56.1 Exhibit B, Part II at p. 10.) Section 1.9(b)(2) of the Sandburg Contract contains similar language: "[o]n each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government." (IHDA 56.1 Exhibit A at p. 7.) Both Contracts state that the annual adjustment may be "upward or downward, as may be appropriate." (GS 56.1 Resp. ¶¶ 14-15.)

Section 2.7(d) of Greenleaf Contract and Section 1.9(d) of the Sandburg Contract also contain Overall Limitation Clauses providing that "[n]otwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable assisted units, as determined by the HFA." (GS 56.1 Reply ¶ 24.) An HFA is a "housing finance agency"—in this case, the relevant HFA is Defendant IHDA. (IHDA 56.1 Exhibit A at p.1.) These Overall Limitation Clauses are mandated by Section 8. (GS 56.1 Resp. ¶ 17.)

In 1987, Congress amended Section 8 to ratify the use of comparability studies to enforce the Overall Limitation Clauses ("1987 Amendments"). (GS 56.1 Reply ¶ 25.) Those Amendments have not been repealed and provide, in relevant part, that "[i]f the Secretary or appropriate state agency does not complete and submit to the owner a comparability study not later than 60 days before the anniversary date of the assistance contract under this section, the automatic annual adjustment factor shall be applied." (GS 56.1 Resp. ¶ 19.) Congress again altered Section 8 in 1994 to reduce the adjustment factor for Non-Turnover Units (those occupied by the same tenant during the previous year) by .01 ("1994 Amendments"). (GS 56.1 Reply ¶ 26.) The 1994 Amendments also state that "where the maximum monthly rent . . . to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary." (*See* 42 U.S.C. 1437f(c)(2)(A); GS 56.1 Reply ¶ 26.)

Following the adoption of the 1994 Amendments, HUD issued Notice H 95-12 to implement the Amendments and impose additional requirements. (GS 56.1 Resp. ¶ 21.) Notice H 95-12 stipulated that rent increases "would only be allowed if owners submitted comparability studies prior to the HAP contract anniversary dates." (GS 56.1 Resp. ¶ 21.) Prior to the issuance of Notice H 95-12, rents at Greenleaf Apartments and Sandburg Village Apartments increased annually. (GS 56.1 Resp. ¶ 22.) Since March 7, 1995, IHDA has only approved one rent increase at Greenleaf Apartments, effective October 1, 2002. (IHDA 56.1 Resp. ¶ 14.) With respect to Sandburg Village Apartments, IHDA approved rent increases in 1998, 2000, 2001 and 2002, but has not approved any other increases since 1994. (IHDA 56.1 Resp. ¶ 20.) IHDA has not performed a rent comparability study or made any determination of the rents charged for units comparable to those at Greenleaf

Apartments since at least 2002, and has not performed any such study or made such a determination with respect to Sandburg Village Apartments since 1991. (IHDA 56.1 Resp. ¶¶ 16, 22.)

## STANDARD OF REVIEW

On cross-motions for summary judgment, each movant must satisfy Federal Rule of Civil Procedure 56's requirements. *See Cont'l Cos. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

The Court begins by noting that the parties have raised no factual disputes in their Rule 56.1 Statements other than discrepancies in their paraphrasing of certain language in the HAP Contracts and the 1994 Amendments, which are quoted according to their exact language above. Thus, summary judgment is proper on the issue of whether the Overall Limitation Clause applies to limit any damages awarded for breach of contract in this case.

The parties' arguments in their Cross Motions for Partial Summary Judgment center around two cases recently decided by the Court of Federal Claims ("CFC"). In *Park Properties Assocs. v. United States*, 82 Fed. Cl. 162, 175 (2008) and *Statesman II Apartments, Inc. v. United States*, 71 Fed. Cl. 662 (2006), the CFC reached divergent conclusions as to whether a defendant may invoke the Overall Limitations Clause in a HAP Contract to limit its liability. *Statesman* held that the Clause may be invoked, 71 Fed. Cl. at 666-67, and *Park Properties* held that it may not, 82 Fed. Cl. at 172-73. The parties have moved for partial summary judgment on this issue before completing discovery so that they may determine whether the case will require fact and expert discovery pertaining to comparable unit rents.

### I. Applicability of the 60-day Provision in the 1987 Amendments

The Court first addresses whether the 1994 Amendments superseded the language in the 1987 Amendments instructing IHDA to perform comparability studies within 60 days of each contract anniversary date. Plaintiffs argue that the 1994 Amendments did not impact the 60-day deadline, such that "if [Defendant] did not submit a comparability study to a Section 8 owner within 60 days of the anniversary date of the contract, the full [Annual Adjusted Fee] would apply," *see*

*Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751, 761 (2003).[2] IHDA counters that the 1987 Amendments are incompatible with and must yield to the 1994 Amendments.

It is undisputed by the parties that the 1994 Amendments do not expressly repeal the 1987 Amendments. As such, the inquiry becomes whether the 1994 Amendments repeal this language by implication. "Repeals by implication are disfavored." *Enaharo v. Abubakar*, 408 F.3d 877, 887 (7th Cir. 2005). Although "a later-enacted statute can confine the domain of the earlier one" and the "old rule generally yields" if two rules are incompatible, *Quinn v. Gates*, 575 F.3d 651, 655 (7th Cir. 2009), "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable," *Morton v. Mancari*, 417 U.S. 535, 550 (1974). More specifically, "[t]here are two well-settled categories of repeals by implication: (1) where provisions in the two acts are in irreconcilable conflict . . . and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Enahoro*, 408 F.3d at 887 (quoting *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936)).

The 1987 Amendments provide, in relevant part, that the annual adjustment factor should apply "[i]f the Secretary or appropriate state agency does not complete and submit to the owner a comparability study not later than 60 days before the anniversary date." 42 U.S.C. § 1437f(c)(2)(C). The 1994 Amendments state that "where the maximum monthly rent . . . to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent the owner demonstrates that the adjusted

---

[2] Plaintiffs do not contend that the 1987 Amendments were incorporated into their pre-existing contracts. Such an argument is not only foreclosed because HAP Contracts do not incorporate statutory or regulatory provisions, *see St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008), but would be inconsistent with Plaintiffs' larger theory of their case that the 1994 Amendments were not incorporated into Plaintiffs' HAP Contracts and in fact breached those contracts. Instead, Plaintiffs argue that the 1987 Amendments created independent statutory obligations that now prevent IHDA from invoking the Overall Limitation Clause.

rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary." 42 U.S.C. § 1437f(c)(2)(a). To begin, the 1994 Amendments do not "cover the whole subject" of the 1987 Amendments so as to fall under the second category of repeals by implication in *Enahoro*, 408 F.3d at 887—indeed, the 1994 Amendments do not even address comparability studies or the 60-day deadline. IHDA also presents no "affirmative showing of intention to repeal" as required under that category. *See Morton*, 417 U.S. at 550; *see also Enahoro*, 408 F.3d at 887.

Furthermore, the 1994 Amendments do not fall under the first category of repeals by implication because the relevant language in the 1994 Amendments can be reconciled with the 1987 Amendments. *See Enahoro*, 408 F.3d at 887. Although the 1994 Amendments place the burden on owners to show that adjusted rent for their units would not exceed the rent for comparable units, the Secretary still carries the burden of determining the unassisted rent of comparable units in the area. That is why the relevant provision in the 1994 Amendments only applies "where the maximum monthly rent" has already been found to "exceed[] the fair market rental for an existing dwelling unit," and "the rent for an unassisted unit of similar quality, type, and age" is to be "*determined by the Secretary*." 42 U.S.C. § 1437f(c)(2)(a) (emphasis added). The Secretary's burden to determine the unassisted rent of comparable units under the 1994 Amendments is consistent with the duty placed on the "Secretary or appropriate state agency" in the 1987 Amendments to submit comparability studies to owners within 60 days of each contract anniversary date. The 1994 Amendments, then, can be read as merely placing on owners the burden of demonstrating that the adjusted rent of any given unit would not exceed that of comparable units. Indeed, it makes sense that this final part of the burden would be placed on an owner because the owner will be most familiar with the specific units in his or her property.

Because these two statutory provisions "are capable of co-existence," and there is no "clearly expressed congressional intention to the contrary," the Court must "read each as effective." *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern, Inc.*, 534 U.S. 124, 143 (2001); *see also Edwards v. U.S.*, 814 F.2d 486, 489 (7th Cir. 1987) (finding that one section of a statute did not implicitly repeal another section of that statute, and noting that "[s]ince Congress was aware of section 495 when it passed section 510, one can argue that if Congress had wanted to repeal so much of section 495 as overlapped with section 510(c) . . . it would have done so"). Thus, the language of the 1987 Amendments applied to require IHDA, as the "appropriate state agency" under the terms of the 1987 Amendments, to perform the comparability studies 60 days before the anniversary date of the HAP Contracts.

## II. Relationship Between the 60-day Provision and the Overall Limitation Clause

Plaintiffs maintain that although IHDA could have invoked the Overall Limitation Clause if it had submitted comparability studies at the appropriate time under the 1987 Amendments, not submitting a study for a given year bars IHDA from later invoking the Clause with respect to that year. This analysis hinges on the relationship between IHDA's duty under the 60-day provision in the 1987 Amendments and the Overall Limitation Clause in the HAP Contracts. More specifically, the crucial question is whether compliance with the 60-day provision is a prerequisite to IHDA's ability to take advantage of the Overall Limitation Clause. In *Cisneros v. Alpine Ridge Group*, the Supreme Court indicated that the answer to that question is yes. *See* 508 U.S. 10, 21 (1993). The Court noted that the Overall Limitation Clause "expressly assigns to 'the Government' the determination of whether there exist material differences between the rents charged for assisted and comparable unassisted rents," and the "comparability studies" required under the 1987 Amendments "effectuat[e that] mandate." *See id.* The Overall Limitation Clause in *Cisneros* and the Clauses at

issue in this case are nearly identical, except that the Clauses in Plaintiffs' contracts specify that IHDA (not "the Government" more generally, *see id.* at 14) must make the material difference determination. Thus, the reasoning in *Cisneros* implies both that IHDA has a "mandate" that it must meet in order to invoke the Overall Limitation Clause—that it is not self-effectuating—and further that performing comparability studies under the terms of the 1987 Amendments allows IHDA to comply with that mandate. *See id.* at 21.

In *Acacia Villa v. United States*, the Court of Federal Claims more explicitly addressed the relationship between the Overall Limitation Clauses and the 60-day provision. *See* 36 Fed.Cl. 227, 279 (1996). Even though the Overall Limitation Clause generally "serve[s] as an overarching and absolute ceiling on any rent adjustments," the court reasoned that if, "prior to the contract anniversary date, HUD does not make a determination as to a material difference, HUD must grant the AAAF-based adjustment and thereafter may not dispute plaintiff's entitlement to that adjustment on the ground that it resulted in a material difference." *See id.* Indeed, the CFC "has repeatedly held that the original overall limitation [i]s not self-effectuating" but places on HUD "the burden of coming forward to show that a particular adjustment would violate the limitation." *Park Properties*, 82 Fed. Cl. at 174. As explained above, the terms of the Overall Limitation Clauses in Plaintiffs' HAP Contracts place this "burden" of coming forward not on HUD, but on "the HFA" (or housing finance agency)—and the relevant HFA here is IHDA. (IHDA 56.1 Exhibit A at p.1.) The 1994 Amendments did not alter this burden. Moreover, IHDA failed to meet this burden during the years when it did not perform comparability studies at Sandburg Village Apartments and Greenleaf Apartments. The Court finds persuasive the CFC's reasoning in *Acacia Villa* and *Park Properties*—especially because both parties in this case agree that the 1987 Amendments "purported" to implement the use of comparability studies to enforce the Overall Limitation Clauses.

(GS 56.1 Reply ¶ 25.) The parties thus acknowledge that the IHDA's burden under the 1987 Amendments (to determine material difference within the requisite time frame) is integrally tied to its ability to reap the benefit of the Overall Limitation Clause (that no material differences should result). To invoke the Clause at all, then, IHDA had to take the affirmative step of submitting a comparability study within 60 days of the contract anniversary date.[3]

Because the Court finds that the Overall Limitation Clause was not self-executing and must have been invoked by IHDA within 60 days of the contract anniversary date, the reasoning adopted by the CFC in *Statesman II* does not apply. *See Statesman II*, 71 Fed. Cl. at 666-69. Noting that the purpose of expectancy damages "is to place the nonbreaching party in the position he would have been in had the contract been performed," *Platinum Technology Inc. v. Federal Ins. Co.*, 282 F.3d 927, 932 (7th Cir. 2002) (internal citation omitted), the court in *Statesman II* found that the Overall Limitation Clause should not apply to limit damages because it would place plaintiff in a better position than if the defendant had not breached. *Statesman II*, 71 Fed. Cl. at 666-67. This reasoning, however, rested on the assumption that the Clause could be invoked at any time—that it was not dependent on the defendant's compliance with the 60-day limitation in the 1987 Amendments. *See id.* at 666 (finding that "[t]he overall limitation . . . thus acts as a separate,

---

[3] Despite Plaintiffs' argument to the contrary, the prevention doctrine relied on in *Park Properties*, 82 Fed. Cl. at 175, does not apply here. In *Park Properties*, the court applied the doctrine of prevention to conclude that the defendant rendered impossible the occurrence of a condition precedent to its promise to perform, and thus could not be relieved of its obligation to perform. *Id.* at 170, 72. A key difference between this case and *Park Properties*, however, is that in *Park Properties*, the United States, acting through HUD, was a defendant, whereas here the Court granted IHDA's Motion to Dismiss the United States as a defendant because the CFC has exclusive jurisdiction over such a claim against the United States. (R. 23). The *Park Properties* Court found that "the United States, through Congress' passage of the 1994 amendments, effectively prevented HUD from invoking the clause on behalf of the United States," and that through "this repudiation of the original HAP contracts, defendant prevented a condition precedent from occurring that might or might not have limited its liability in this breach action." *See Park Properties*, 82 Fed. Cl. at 172. The prevention doctrine relies on the premise that one should not be able to take advantage of his own wrongful act. *See* 13 Richard A. Lord, *Williston on Contracts* § 39.6 (4th ed. 2000). Here, however, the alleged breaches of contractual obligations (which this Court, unlike the court in *Park Properties*, has yet to consider on the merits) were caused by the United States through HUD. IHDA merely implemented the new procedures under the HUD regulation, such that the prevention doctrine does not apply.

independent cap on the allowable rents that may be charged"). As the above analysis demonstrates, the Clause was not a self-effectuating, independent cap—there was a deadline, and IHDA missed the deadline. Because IHDA failed to meet its burden under the 1987 Amendments, the Court need not interpret how the Clause would apply in this case. *See Cuyahoga I*, 57 Fed. Cl. at 760.

Moreover, it is precisely because the Overall Limitation Clause is not self-effectuating that the Court *cannot* now ascertain how it would have applied in this case. As Plaintiffs note, it is impossible to tell whether IHDA would have paid to perform a comparability study, and if that study would have shown a material difference between comparable unit rents and the adjusted rents such that the Overall Limitation Clause would have applied. *See Park Properties*, 82 Fed. Cl. at 175 (distinguishing the *Statesman II* decision and noting that because it incorrectly found the Overall Limitation Clause to be an "absolute limitation" that "would have been invoked" by the defendant no matter what, "the court in *Statesman II* . . . did not consider whether it was foreseeable that the clause actually would have been invoked").

Not only does the Court have no way of now knowing in what position Plaintiffs' would have been placed if the alleged breach had not occurred, but the Supreme Court explained in *Cisneros* that performance of comparability studies is the exception rather than the rule. 508 U.S. at 19. The Court observed that automatic annual adjustment factors are "the presumptive adjustment called for under the contract" and "[i]t is only in those presumably exceptional cases where the Secretary has reason to suspect that the adjustment factors are resulting in materially inflated rents that a comparability study would ensue." *Id*. Thus, even considering for a moment the substantive inquiry performed in *Statesman II* as to whether Plaintiffs might obtain a windfall recovery here, 71 Fed. Cl. at 666-67, the Supreme Court has indicated that it is highly unlikely that IHDA would have performed a comparability study to fulfill its burden under the Overall Limitations Clause.

Regardless, IHDA lost its chance to show the Court what it would have done when it failed to comply with the 60-day provision.

## CONCLUSION AND ORDER

The Court grants the Plaintiffs' Motion for Partial Summary Judgment and denies IHDA's Cross-Motion for Partial Summary Judgment. IHDA is barred from invoking the Overall Limitations Clause to limit damages that might be awarded for breach of contract for the years when it did not submit comparability studies in compliance with the 1987 Amendments.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 23, 2009