IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| GREENLEAF LIMITED PARTNERSHIP and SANDBURG VILLAGE APARTMENTS, AN ILLINOIS LIMITED PARTNERSHIP, | ) ) ) ) |
|  | ) Case No. 08 C 2480 |
| Plaintiffs, | ) ) Judge Virginia M. Kendall |
| v. | ) ) |
| ILLINOIS HOUSING DEVELOPMENT AUTHORITY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Greenleaf Limited Partnership ("Greenleaf") and Sandburg Village Apartments, An Illinois Limited Partnership ("Sandburg") (collectively "the Plaintiffs") sued the Illinois Housing Development Authority ("IHDA") alleging that IHDA breached its Housing Assistance Payments Contracts ("HAP Contracts") with the Plaintiffs by: (1) failing to increase Contract Rents or by increasing Contract Rents by less than the amount called for in the HAP Contracts (Count I); (2) reducing the Automatic Annual Adjustment Factor ("Adjustment Factor") by .01 for units occupied by the same family in consecutive years ("Non-Turnover Units") (Count II); and (3) requiring the Plaintiffs to submit rent comparability studies (Count III). Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, the Plaintiffs and IHDA cross-move for summary judgment. Specifically, the Plaintiffs move for summary judgment as to liability on all three claims in their Consolidated Amended Complaint. IHDA moves for summary judgment on all claims brought by Greenleaf and moves for partial summary judgment against Sandburg on Count II. For the reasons stated below, the Plaintiffs' Motion for Summary Judgment is granted in part and denied in part,

IHDA's Motion for Summary Judgment against Greenleaf is granted in part and denied in part, and IHDA's Motion for Partial Summary Judgment against Sandburg is granted.

## STATEMENT OF UNDISPUTED FACTS[1]

Greenleaf is an Illinois limited partnership that owns Greenleaf Apartments, a 321-unit multifamily housing rental project located in Bolingbrook, Illinois. (Def. 56.1 Resp. ¶¶ 1-2; Pl. 56.1 Resp. ¶ 1.) Sandburg is also an Illinois limited partnership. (Def. 56.1 Resp. ¶ 3; (Pl. 56.1 Resp. ¶ 2.) It owns a 128-unit multifamily rental housing project named Sandburg Village Apartments in Galesburg, Illinois. (Def. 56.1 Resp. ¶ 4; Pl. 56.1 Resp. ¶ 2.) IHDA is a Public Housing Agency as defined by the United States Housing Act of 1937, 42 U.S.C. § 1437(a), and a State Agency, as defined by 24 C.F.R. § 883.302 (2007). (Def. 56.1 Resp. ¶ 5; Pl. 56.1 Resp. ¶ 3.) This Court has federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331 because the case arises under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437(f) ("Section 8"). (Def. 56.1 Resp. ¶ 6; Pl. 56.1 Resp. ¶ 4.)

Greenleaf Apartments and Sandburg Village Apartments are apartment complexes built pursuant to the United States Department of Housing and Urban Development's ("HUD") Section 8 Program for State Housing Agencies. (Def. 56.1 Resp. ¶¶ 7, 18.) Under Section 8, HUD is authorized to enter into Annual Contributions Contracts with public housing agencies, such as IHDA. (Pl. 56.1 Resp. ¶ 7.) An Annual Contributions Contract obligates HUD to make annual contributions to the public housing agency, which in turn remits a portion of the contributions to the

---

[1]Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to IHDA's Response to the Plaintiffs' Statement of Uncontested Facts have been abbreviated to "Def. 56.1 Resp. ¶ __."; citations to Plaintiffs' Response to IHDA's Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."; citations to Plaintiffs' Response to IHDA's Statement of Additional Facts have been abbreviated to "Pl. Add. 56.1 Resp. ¶ __."

owners of assisted units, such as the Plaintiffs' apartment complexes, in the form of monthly "housing assistance payments" for the benefit of the low-income residents of the units. (Pl. 56.1 Resp. ¶ 7.) The public housing agencies make these monthly housing assistance payments ("Contract Rents") to assisted unit owners pursuant to HAP Contracts. (Pl. 56.1 Resp. ¶ 8.) HUD and IHDA entered into Annual Contributions Contracts as to the Sandburg and Greenleaf apartment complexes on January 31, 1979 and September 30, 1980, respectively. (Pl. 56.1 Resp. ¶ 9.) In turn, IHDA entered into HAP Contract with both Sandburg and Greenleaf. (Def. 56.1 Resp. ¶¶ 8-9, 18-19; Pl. 56.1 Resp. ¶ 10-11.)

IHDA entered into a HAP Contract with Sandburg in six stages between October 1, 1980 and March 1, 1981 ("the Sandburg Contract"). (Def. 56.1 Resp. ¶¶ 18-19; Pl. 56.1 Resp. ¶ 10.) The Sandburg Contract provides for annual adjustments to the contract rents as follows:

> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually. Interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

(Pl. 56.1 Resp. ¶ 14; Pl. Add. 56.1 Resp. ¶ 25.) The original owner of Greenleaf Apartments entered into a HAP Contract with IHDA in five stages between October 1, 1981 and June 1, 1982 ("the Greenleaf Contract"). (Def. 56.1 Resp. ¶ 8-9; Pl. 56.1 Resp. ¶ 11.) In 2002, IHDA approved the assignment of the Greenleaf Contract from the original owner to Greenleaf. (Def. 56.1 Resp. ¶ 10-12; Pl. 56.1 Resp. ¶ 11.) The Greenleaf Contract states that "[u]pon request from the Owner to

[IHDA] Contract rents will be adjusted on the anniversary date of the Contract in accordance with 24 C.F.R. Part 88 and this Contract." (Pl. 56.1 Resp. ¶ 15; Pl. Add. 56.1 Resp. ¶ 23.) 24 C.F.R. Part 888 provides for the use of published Adjustment Factors for the appropriate market area to compute adjustments to the Contract Rent. (Pl. Add. 56.1 Resp. ¶ 24.)

In 1994, Congress amended the rent adjustment provision of the Section 8 statute, 42 U.S.C. § 1437f(c)(2)(A) ("the 1994 Amendments"). (Pl. Add. 56.1 Resp. ¶ 26.) The 1994 Amendments imposed on owners whose rents already exceeded the published fair market rental, the burden of proving that the adjusted rent would not exceed the rent for a comparable unassisted unit. (Pl. Add. 56.1 Resp. ¶ 26.) The 1994 Amendments also reduced by .01 the Adjustment Factors for Non-Turnover Units. (Pl. Add. 56.1 Resp. ¶ 26.) To implement the 1994 Amendments, HUD issued Notice H 95-12, which provided that increases in rents already above the fair market rental would be allowed only if owners submitted comparability studies prior to the HAP Contract anniversary date. (Pl. Add. 56.1 Resp. ¶ 27.) Before HUD issued Notice H 95-12, rents at Greenleaf Apartments and Sandburg Village Apartments increased annually. (Pl. 56.1 Resp. ¶¶ 20-21.)

HUD publishes annually at a Notice of Revised Contract Rent Adjustment Factors for the various markets in the country. (Pl. 56.1 Resp. ¶ 19; Pl. Add. 56.1 Resp. ¶ 28.) Since the 1994 Amendments, HUD now publishes two separate Adjustment Factor tables each year. (Pl. 56.1 Resp. ¶ 19; Pl. Add. 56.1 Resp. ¶ 28.) Table 2, which applies to Non-Turnover Units, is computed by subtracting .01 from the Adjustment Factor calculated and published in Table 1. (Pl. 56.1 Resp. ¶ 19; Pl. Add. 56.1 Resp. ¶ 28.)

IHDA approved an increase in the rents at Sandburg Village Apartments in 1998, 2000, 2001, and 2002. (Def. 56.1 Resp. ¶ 21.) The rent increase for Non-Turnover Units was .01 less than the

increase for units in which tenant turnover had occurred. (Def. 56.1 Resp. ¶ 21.) No rent increases have been approved by IHDA at Sandburg Village Apartments since 2002. (Def. 56.1 Resp. ¶ 21.) IHDA has not performed a rent comparability study of Sandburg Village Apartments or made a determination of the rents charged for unassisted units comparable to the units at Sandburg Village Apartments since 1991. (Def. 56.1 Resp. ¶ 22.)

In 2002, Greenleaf requested that IHDA approve a rent increase for all the units at Greenleaf Apartments. (Def. 56.1 Resp. ¶ 14.) IHDA approved Greenleaf's 2002 request for an increase in the rents at Greenleaf Apartments effective October 1, 2002. (Def. 56.1 Resp. ¶ 15; Pl. 56.1 Resp. ¶ 20.) The rent increase for Non-Turnover Units was .01 less than the increase for units in which tenant turnover had occurred. (Def. 56.1 Resp. ¶ 15.) Other than the 2002 increase, no other rent increase has been approved by IHDA at Greenleaf Apartments since March 7, 1995. (Def. 56.1 Resp. ¶ 16.) IHDA has not performed a rent comparability study of Greenleaf Apartments or made a determination of the rents charged for unassisted units comparable to the units at Greenleaf Apartments since at least 2002. (Def. 56.1 Resp. ¶ 17.) After its request in 2002, Greenleaf did not request a rent increase until February 4, 2010, at which time it requested a retroactive rent increase for the years 2003 through 2009. (Pl. Add. 56.1 Resp. ¶ 29.)

In each of the years 2001 and 2002, neither Greenleaf nor Sandburg requested a rent increase that would have been effective on any date other than the October 1 contract anniversary date. (Pl. Add. 56.1 Resp. ¶ 30.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (" 'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). On cross-motions for summary judgment, each movant must satisfy the requirements of Federal Rule of Civil Procedure 56. *See Cont'l Cos. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## DISCUSSION

The Plaintiffs argue that IHDA breached their HAP Contracts by complying with the 1994 Amendments and HUD Notice 95-12. Specifically, the Plaintiffs argue that as a result of these

changed statutory provisions and regulations, IHDA breached their HAP Contracts by: (1) failing to automatically adjust Contract Rents every year; (2) reducing the Adjustment Factor by .01 for Non-Turnover Units; and (3) requiring the Plaintiffs to submit a rent comparability study before receiving an annual rent adjustment. The Plaintiffs move for summary judgment as to liability on all three Counts in their Consolidated Amended Complaint. IHDA cross-moves for summary judgment against Greenleaf on all three Counts in the Plaintiffs' Consolidated Amended Complaint. It also cross-moves for summary judgment against Sandburg on the issue of whether it breached its HAP Contract by reducing the Adjustment Factor by .01 for Non-Turnover Units. The parties agree that because there are no factual disputes, summary judgment as to liability is appropriate in this case.

## I. Count I–Failure to Increase Contract Rents

The Plaintiffs first argue that IHDA breached their HAP Contracts by failing to automatically adjust their Contract Rents each year. Because the relevant contract language in the Sandburg and Greenleaf Contracts differs, the Court will address each plaintiff separately.

### A. Sandburg

Section 1.9(b)(2) of the Sandburg Contract states that "[o]n each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government." The Court of Federal Claims ("Claims Court") has held that identical contract language entitles landlords to automatic annual rent increases and that "the effect of the 1994 amendments to Section 1473f(c)(2)(A) and of HUD Notice 95-12 was to abrogate the provisions of the contracts regarding automatic annual adjustment of rents and to breach the contracts." *Statesman II Apartments, Inc. v. United States*, 66 Fed. Cl. 608, 620

(2005); *see also Park Props. Assocs., L.P. v. United States*, 74 Fed. Cl. 264, 274 (2006) [hereinafter *Park Properties*] ("[I]n passing the 1994 amendments and issuing the HUD directive, defendant repudiated the HAP contracts here, which repudiation eventually ripened into a breach of those contracts . . . ."); *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751, 762 (2003) (the HAP Contracts "expressly required HUD to provide [the plaintiff] with annual adjustments . . . [a]s such, the passage of the 1994 amendments was a repudiation of this contract provision [and ultimately a] breach of contract").

IHDA recognizes this authority and states that it has "no additional arguments to offer the Court beyond those made by the Government before the [Claims Court] about whether the changed rent increase procedures imposed as a result of the 1994 [A]mendments and Notice H 95-12 effected a breach of the Sandburg HAP Contract." (*See* R. 80, Def. Opp. To Pl. Mot. For Summary Judgment at 7.) Thus, finding the weight of authority persuasive, the Court adopts the Claims Court's reasoning in *Park Properties*, *Statesman II Apartments, Inc.*, and *Cuyahoga Metropolitan Housing Authority*, and concludes that IHDA breached the Sandburg Contract by failing to automatically adjust rents on each anniversary date. IHDA has not increased Contract Rents at Sandburg Village since 2002. (Def. 56.1 Resp. ¶ 21.) Accordingly, the Court grants Sandburg's Motion for Summary Judgment on liability as to Count I of the Plaintiffs' Consolidated Amended Complaint.

**B. Greenleaf**

The Greenleaf Contract does not include the same language as the Sandburg Contract and the HAP Contracts at issue in the Claims Court cases. Instead, § 2.7(b) of the Greenleaf Contract states that "[u]pon request from the Owner to [IHDA] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." The parties

dispute whether the "upon request" phrase is a condition precedent for receiving an annual adjustment, and, if so, whether Greenleaf can now make a request for retroactive rent adjustments.

Illinois law "defines a condition precedent as one . . . which is to be performed by one party to an existing contract before the other party is obligated to perform." *MXL Industries, Inc. v. Mulder*, 623 N.E.2d 369, 374 (Ill. App. 2d Dist. 1993); *see also* RICHARD A. LORD, 13 WILLISTON ON CONTRACTS § 38:5 (4th ed. 2000) ("A condition is an event, not certain to occur, which must occur before performance under a contract becomes due."). Here, the Contract requires Greenleaf to request an adjustment to its Contract Rents before IHDA is obligated to adjust the Contract Rents on the anniversary date. Unlike the contract provision in *Smurfit Newsprint Corporation v. Southeast Paper Manufacturing Company*, 368 F.3d 944 (7th Cir. 2004), relied on by Greenleaf, the language in Greenleaf's Contract is "sufficiently precise" and is not "subject to other terms and conditions of [the agreement]." *Id*. at 951 (internal marks omitted) Thus, Greenleaf's request is a condition precedent to IHDA's performance under the Contract.

The satisfaction of a condition precedent "is generally subject to the rule of strict compliance. *Id*. (citing E. FARNSWORTH, FARNSWORTH ON CONTRACTS § 8.3, at 353 (1990)); RICHARD A. LORD, 13 WILLISTON ON CONTRACTS § 38:6 (4th ed. 2000) ("As a general rule, unless the performance is waived, excused, or prevented by the other party, or unless he or she repudiates the contract, conditions which are either express or implied in fact must be literally met or exactly fulfilled or no liability can arise on the promise qualified by such conditions.") Relying on the Court of Claims' decisions in *Statesman II Apartments, Inc. Park Properties*, and *Cuyahoga Metropolitan Housing Authority*, Greenleaf argues that strict compliance with its condition was not required here because IHDA repudiated the HAP Contract. As discussed above, however, those decisions were based on

9

the premise that the HAP Contracts provided for *automatic* annual adjustments of Contract Rents, a provisions that is not present in Greenleaf's Contract. Greenleaf's argument that performance of the condition precedent would have been futile is also unpersuasive.

Finally, Greenleaf argues that as of February 4, 2010 it has met the condition precedent by submitting to IHDA a retroactive request for annual adjustments of its Contract Rents for the years 2003 through 2009. While the provision does not specify any time by which a rent increase request must be submitted, it does provide that if Greenleaf meets the condition precedent "Contract Rents will be adjusted on the anniversary day of the Contract . . . ." (R. 27, Ex. 1 § 2.7(b)(1).) Thus, the "essential thrust" of the provision is to provide rent adjustments annually on the contract anniversary date. *C.f. Acacia Villa v. United States*, 36 Fed. Cl. 277, 281 (1996) (barring retroactive suits by HUD in a case with contract language similar to the Sandburg Contract because the language of the contract, HUD's earlier interpretation of the HAP Contracts, and "the business context in which is was written support an interpretation that obligates HUD to 'fish or cut bait' by the anniversary date of the contract").

Because Greenleaf did not request a rent adjustment for the years 2003 through 2009, IHDA was not obligated to annually adjust Contract Rents and therefore cannot be liable for failing to adjust the Contract Rents during those years. *See* RICHARD A. LORD, 13 WILLISTON ON CONTRACTS § 38:5 (4th ed. 2000) ("If there is a condition precedent, the party in whose favor the condition exists is not liable to an action until the condition has been met."). Thus, the Court grants IHDA's Motion for Summary Judgment as to Greenleaf on Count I of the Consolidated Amended Complaint.

**II.      Count II–Reduction in Annual Adjustment Factors**

The Plaintiffs next argue that IHDA has breached their HAP Contracts by complying with

the .01 reduction in the Adjustment Factors for Non-Turnover Units. Again, because the relevant provisions in the Sandburg and Greenleaf Contracts differ, the Court addresses them separately.

**A.     Sandburg**

The Sandburg Contract provides that "Automatic Annual Adjustment Factors will be determined by the Government at least annually . . . . Such Factors and the basis for their determination will be published in the Federal Register." (R. 27, Ex. 2, § 1.9(b)(1).) Sandburg argues that because HUD does not provide any basis in the Federal Register for its determination that the Adjustment Factors for Non-Turnover Units must be reduced by .01 other than citing to the 1994 Amendments themselves, it has breached the parties' HAP Contract.

Looking at identical contract language, the Claims Court has split as to whether the adoption of the .01 reduction for Non-Turnover Units results in a breach of contract. *Compare Statesman II*, 66 Fed. Cl. at 625 ("[T]he statutory amendment, standing alone, cannot trump a binding contract entered by the government and a private party some years before the amendment was enacted.") *with Cuyahoga Metro. Hous. Auth. v. United States*, 65 Fed. Cl. 534 (2005) [hereinafter *Cuyahoga II*] (nothing in the contract "suggests that there will be a single, monolithic factor for all units at a given property or that Congress could not authorize HUD, in determining the [Adjustment Factor] for a given unit, to make a different adjustment[] for those in which no turnover occurred") *and Park Properties*, 74 Fed. Cl. at 275 (nothing in the contract "requires or even suggests that the published 'basis' must be described in factual terms, requiring a demonstration that costs are lower for holdover tenants or some other 'findings' in the traditional sense"). Not surprisingly, Sandburg urges the Court to adopt the reasoning in *Statesman II*, while IHDA argues that *Cuyahoga II* and *Park Properties* are more persuasive.

The Court find that the .01 reduction in Adjustment Factors for Non-Turnover Units is not a breach of the Plaintiffs' HAP Contracts and adopts the reasoning in *Cuyahoga II* and *Park Properties*. While the Sandburg Contract does require that HUD publish in the Federal Register Adjustment Factors and "the basis for their determination," nothing in the contract requires factual findings or a demonstration that costs are lower for holdover tenants. *Park Properties*, 74 Fed. Cl. at 275. As the court in *Park Properties*, stated, because the term "basis" in the Sandburg Contract has no "limiting modifier," the basis could be either factual or legal, as it is in this case—a citation to the 1994 Amendments. *Id*. Finally, the congressional record suggests that HUD did have a factual basis underlying the .01 reduction for Non-Turnover Units. Materials submitted to Congress before it enacted the 1994 Amendments supported the proposition that the reduction provision was based on the rationale that operating costs are less if tenant turnover is less. *Id*. at 276.

Even if the Court were to adopt the analysis in *Statesman II* and conclude that HUD has not published adequate findings to support the .01 reduction for Non-Turnover Units, that conclusion does not establish that IHDA breached the Sandburg Contract. In *Statesman II*, HUD was a party to the HAP Contract at issue, so its failure to provide proper factual findings could support a claim for breach of contract. Here, the Contract states that "Automatic Annual Adjustment Factors will be determined by *the Government* at least annually . . . . Such Factors and the basis for their determination will be published in the Federal Register. (R. 27, Ex. 2, § 1.9(b)(1) (emphasis added).). This language does not impose a contractual duty on IHDA, it simply states that "the Government" (HUD) will publish Adjustment Factors and the basis for those factors in the Federal Register. IHDA complied with its obligations under the Sandburg Contract by adjusting the Contract Rents on the basis of the applicable Adjustment Factors.

For those reasons, the Court denies Sandburg's Motion for Summary Judgment as to Count II and grants IHDA's Cross-Motion as to Sandburg's claim under Count II.

B.  **Greenleaf**

Greenleaf's HAP Contract does not require that the Adjustment Factors, and the basis for their determination, be published in the Federal Register. (*See* R. 72, Pl. Mot. For Summary Judgment at 14.) Instead, the Greenleaf Contract requires that Contract Rents "be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." (Consol. Am. Compl., Ex. 1, § 2.7(b)(1). In turn, C.F.R. Part 888.02 provides that the Adjustment Factors "be published in the Federal Register at least annually by Notice." Part 888.03 states that adjustments to a Section 8 project's Contract Rents are calculated by multiplying the Contract Rent by the applicable Adjustment Factor. *Id*. § 888.203.

When read together with § 1437f(c)(2)(A), the Plaintiffs argue, the Greenleaf Contract requires reasonable adjustment in the Contract Rents. The Plaintiffs point to § 1437f(c)(2)(A), which requires that rents be adjusted "annually or more frequently" based on changes "in the fair market rentals" or "on the basis of a reasonable formula." Citing HUD's 2009 publication of Adjustment Factors, 74 Fed. Reg. 1229 (Jan. 12, 2009), the Plaintiffs contend that "the formula used to calculate [Adjustment Factors] is detailed and attempts to measure any increased costs incurred by projects assisted by Section 8 as precisely as possible." (R. 72 at 15.) In contrast, the Plaintiffs argue, "the .01 reduction for non-turnover units is an across-the-board cut applicable to all projects in the country that makes no attempt to correlate the reduction to costs associated with turnover." (*Id*.)

Like Sandburg's argument discussed above, this argument provides no basis for a breach of

contract by IHDA. Instead, it is a challenge to a legislative classification drawn by Congress, which chose to add the .01 reduction for Non-Turnover Units to the Section 8 statute in 1994. Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1995, Pub. L. No. 103-327, 108 Stat. 2298, 2315 (1994). Further, while the statute and regulations may require the Adjustment Factors to be generally "reasonable," nothing in the Greenleaf Contract makes IHDA responsible for the classification of units or for the Adjustment Factors themselves. IHDA has not breached the Greenleaf Contract by complying with the .01 Adjustment Factor for Non-Turnover Units. Therefore, the Court denies Greenleaf's Motion for Summary Judgment as to Count II and grants IHDA's Cross-Motion as to Greenleaf's claim under Count II.

### III. Count III–Rent Comparability Study

Plaintiffs contend that they are also entitled to compensation for any comparability studies they performed. *See, e.g.*, *Statesman II Apartments, Inc. v. United States*, 71 Fed. Cl. 662, 670 (2006) ("Contractually, the costs of performing such studies should not have been imposed on the plaintiffs, and plaintiffs must be allowed to recover such costs to be put in as good a position as they would have been but for the breach."). IHDA does not contest this premise; instead, it argues that there is no factual basis for either Plaintiff to recover damages on this theory. (*See* R. 80 at 7-8.)

This argument is successful as to Sandburg. Sandburg has not presented any evidence showing that it submitted a rent comparability study during the agreed statutory period. As such, the Court denies Sandburg's Motion for Summary Judgment as to Count III. As for Greenleaf, however, IHDA admitted in its Answer that in December of 2002, Greenleaf submitted a rent comparability study to IHDA in connection with its rent increase request. (*See* R. 28, Answer ¶ 60.). For that

reason, Greenleaf is entitled to the cost of the 2002 study.[2] Accordingly, the Court grants Greenleaf's Motion for Summary Judgment as to Count III and denies IHDA's Cross-Motion as to Greenleaf on this Count.

IV. **Damages**

Finally, Sandburg[3] argues that rent adjustments that are within six years of the date it filed its Complaint—June 17, 2002—but that relate to the October 1, 2001 anniversary date of its HAP Contract are not barred by the agreed-to six year statute of limitations. For this proposition, Sandburg cites to *Pennsauken Senior Towers Urban Renewal Association v. United States*, 83 Fed. Cl. 623 (2008) and *Ocean View Towers Association Limited Partnership v. United States*, 88 Fed. Cl. 169 (2009), both of which held that because HUD was not limited to providing the plaintiff's rent increases solely on the contract anniversary dates, the plaintiff was allowed to bring its claims for rent adjustments that related to a contract anniversary date outside the statute of limitations.

While the time period between June 17, 2002 and September 30, 2002 may technically be within the statute of limitations here, Sandburg has not sought rent adjustments for anything other than the *automatic annual adjustments* it was entitled to each October 1. Sandburg does not contend that IHDA was obligated to grant rent adjustments on any other date, nor does it claim to have ever requested a rent adjustment on some other date. Sandburg has not provided the Court with any facts demonstrating that it would be entitled to damages before September 30, 2002. Accordingly, the Court denies Sandburg's Motion on the damages issue.

---

[2] Even though the language in Greenleaf's contract differs from the language in *Statesman II*, the analysis still applies. Notice H 95-12 added a condition to receiving rent adjustments that was not contained in Greenleaf's contract.

[3] Having found that IHDA is not liable under the Greenleaf Contract as to Counts I and II, Greenleaf's argument as to damages is moot.

**CONCLUSION AND ORDER**

For the reasons stated, the Court grants in part and denies in part the Plaintiffs' Motion for Summary Judgment. Specifically, the Court grants Sandburg's Motion as to Counts I and III, but denies Sandburg's Motion as to Count II. The Court grants IHDA's Cross-Motion for Summary Judgment as to Greenleaf on Counts I and II, but denies its IHDA's Motion as to Greenleaf on Count III. Finally, the Court grants IHDA's Partial Cross-Motion for Summary Judgment on Count II as to Sandburg.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 30, 2010