IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREENLEAF LIMITED PARTNERSHIP, et al., | )<br>)<br>) |
| Plaintiffs, | ) No. 08 C 2480 |
| v. | )<br>) Judge Virginia M. Kendall |
| ILLINOIS HOUSING DEVELOPMENT AUTHORITY, | )<br>)<br>) |
| Defendant and Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| SHAUN DONOVAN, Secretary, Department of Housing and Urban Development, | )<br>)<br>) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Third-Party Defendant, Shaun Donovan, Secretary, United States Department of Housing and Urban Development ("HUD") moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss certain claims of Defendant/Third-Party Plaintiff, Illinois Housing Development Authority's ("IHDA") third-party Complaints. Specifically, the HUD asserts that IHDA has failed to state a valid claim for relief under the Administrative Procedures Act, has failed to identify any contractual basis for its indemnification claim, and lacks standing to bring a declaratory judgment claim. For the reasons stated, the HUD's Motion to Dismiss is granted in part and denied in part.

1

## **STATEMENT OF FACTS/PROCEDURAL HISTORY**[1]

Pursuant to Section 8 of the United States Housing Act of 1937, the United States, acting through HUD, subsidizes the rents of low-income tenants of privately-owned dwellings. 42 U.S.C. § 1437f; Greenleaf Am. Third-Party Compl. ¶ 7; Sandburg Am. Third-Party Compl. ¶ 7. The rent subsidy is provided in one of two ways: either HUD enters into a Housing Assistance Payments contract ("HAP contract") with a private landlord; or HUD enters into an Annual Contributions Contract ("ACC") with a public housing agency ("PHA") and the PHA enters into a HAP contract with the landlord. Greenleaf Am. Third-Party Compl. ¶¶ 9-10; Sandburg Am. Third-Party Compl. ¶¶ 9-10. In either case, the HAP contract specifies a monthly contract rent for particular housing units. Greenleaf Am. Third-Party Compl. ¶ 8; Sandburg Am. Third-Party Compl. ¶ 8. The tenant pays the landlord a portion of the contract rent based on the tenant's income, and either HUD or the PHA pays the landlord the difference between the tenant's payment and the contract rent. Greenleaf Am. Third-Party Compl. ¶ 8, 10; Sandburg Am. Third-Party Compl. ¶ 8, 10. The PHA is obliged to administer the HAP contract in accordance with HUD's requirements and directives and HUD is obliged to fund all housing assistance payments that are owed pursuant to the HAP contract. Greenleaf Am. Third-Party Compl. ¶ 12; Sandburg Am. Third-Party Compl. ¶ 12.

According to IHDA, HUD entered into ACCs with IHDA and IHDA entered into HAP contracts with Plaintiffs. Greenleaf Am. Third-Party Compl. ¶ 13; Sandburg Am. Third-Party Compl. ¶ 13. These HAP contracts were entered into in 1980 and 1979 and the terms of these

---

[1] In deciding a motion to dismiss for lack of subject-matter jurisdiction this Court must accept all well-pleaded facts in IHDA's Complaint as true; however, this Court is permitted to look beyond the four corners of the complaint to determine whether subject matter jurisdiction exists. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

contracts, with automatic renewals, continue through 2020 and 2021 respectively. Greenleaf Am. Third-Party Compl. ¶ 13; Sandburg Am. Third-Party Compl. ¶ 13. The HAP contracts provide for annual increases of the contract rents under specified conditions. Greenleaf Am. Third-Party Compl. ¶ 16; Sandburg Am. Third-Party Compl. ¶ 16.

In 1994, Congress amended Section 8 by placing certain restrictions on annual increases in contract rents. *See* 42 U.S.C. § 1437f(c)(2)(A) (1994). Greenleaf Am. Third-Party Compl. ¶ 17; Sandburg Am. Third-Party Compl. ¶ 17. HUD issued a notice, Notice H 95-12, implementing Congress's amendments. Greenleaf Am. Third-Party Compl. ¶ 18; Sandburg Am. Third-Party Compl. ¶ 18. According to IHDA, Notice H 95-12 also imposed additional requirements beyond those contained in the existing HAP contracts or in the 1994 amendments. *Id*. According to IHDA, it has administered the HAP contracts with Plaintiffs in accordance with Congress's amendments and Notice H 95-12. Greenleaf Am. Third-Party Compl. ¶ 18; Sandburg Am. Third-Party Compl. ¶ 18.

On April 30, 2008, Greenleaf Limited Partnership ("Greenleaf") filed a Complaint against IHDA (08-2480). On June 16, 2008, Sandburg Village Apartments ("Sandburg") also filed a Complaint against IHDA (08-3446). On July 28, 2008, IHDA answered the two complaints and filed third-party complaints against HUD. On August 19, 2008, the two cases were consolidated under case number 08-2480. On September, 3, 2008, Greenleaf and Sandburg (collectively "Plaintiffs") filed a consolidated Amended Complaint against IHDA alleging that IHDA breached the HAP contract by: (1) failing to increase contract rents or by increasing contract rents by less than the amount called for in the HAP contract; (2) reducing the annual adjustment factor by .01 for units occupied by the same family in consecutive years; and (3)

requiring the plaintiffs to submit rent comparability studies. Consolidated Am. Compl. ¶¶ 49-64**.** The Plaintiffs seek compensatory damages, an increase in the current contract rents and costs. *Id*.

On August 19, 2008, IHDA filed separate Amended Third-Party Complaints against HUD seeking relief in the event that IHDA is found liable to the Plaintiffs. Greenleaf Am. Third-Party Compl. ¶ 1; Sandburg Am. Third-Party Compl. ¶ 1. IHDA's Amended Third-Party Complaints each state three claims for relief entitled "Administrative Procedure Act", "Contract/Indemnification," and "Declaratory Judgment." Greenleaf Am. Third-Party Compl. ¶¶ 27-35; Sandburg Am. Third-Party Compl. ¶¶ 27-35. In support of its claims, IHDA alleges that, if IHDA has breached its HAP contracts with Greenleaf and Sandburg, HUD has breached the ACCs with IHDA and must compensate IHDA for past damages and future rent adjustments. *See* Greenleaf Am. Third-Party Compl. ¶¶ 30, 32-33 & Prayer for Relief; Sandburg Am. Third-Party Compl. ¶¶ 30, 33-33 & Prayer for Relief. IHDA also seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of contract rents, and its right to have such rent adjustments funded by HUD. *See* Greenleaf Am. Third-Party Compl. ¶ 35 & Prayer for Relief; Sandburg Am. Third-Party Compl. ¶ 35 & Prayer for Relief.

On February 23, 2009, this Court granted HUD's motion to dismiss IHDA's Amended Third-Party Complaints for lack of jurisdiction on the basis of sovereign immunity (the "HUD Dismissal Order"). *See* Memo Op., Dkt. 46. The litigation between Plaintiffs and IHDA continued through summary judgment without HUD's participation. Plaintiffs appealed certain aspects of the Court's judgment and IHDA appealed the HUD Dismissal Order. While the appeal was pending, the parties settled all of Plaintiffs' claims as well as IHDA's third-party damage claims against HUD through November 30, 2011. Plaintiffs then dismissed their appeal.

IHDA's appeal of the HUD Dismissal Order proceeded until the Solicitor General determined that one of the immunity provisions upon which the HUD Dismissal Order had been based, 42 U.S.C. § 1404a, waived sovereign immunity for all suits with respect to HUD's functions under the United States Housing Act of 1937, such that a breach of contract action like the one presently before the Court could proceed against HUD in federal district court under federal question jurisdiction. Based on that official change in HUD's position, the Court of Appeals remanded Amended Third-Party Complaints to this Court. The Court of Appeals specifically declined to address the merits of that portion of the HUD Dismissal Order related to IHDA's claim under the APA.

The parties now agree that following the Solicitor General's position change regarding the application of 28 U.S.C. § 1401a that occurred during the pendency of the appeal, the breach of contract portion of IHDA's claims (Count II) should proceed in this Court. HUD moves to dismiss all other claims, including the portion of the breach of contract claim related to indemnification.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). "If subject matter jurisdiction is . . . not evident on the face of the complaint, the motion to dismiss . . . would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. However, as here, if the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus*, 322 F.3d at 946; *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.

1993) *citing Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). The party asserting jurisdiction must establish it by "competent proof." *U.S. Phosphorus*, 322 F.3d at 946; *NFIC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) *citing McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). This means that jurisdiction must be established by a preponderance of the evidence or "proof to a reasonable probability." *NFIC*, 45 F.3d at 237, *citing Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993).

When considering a motion to dismiss under Rule 12(b)(6), this court will accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

**I.     The Administrative Procedures Act, 5 U.S.C. § 702**

The APA permits persons to bring non-monetary actions against government agencies and provides for judicial review of those actions in the federal district courts. 5 U.S.C. §§ 701-06. *See Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1122 (Fed. Cir. 2007) ("A plaintiff seeking relief, other than monetary relief, from a disputed

government agency action could challenge that action in the district court under the APA.") Sections 702 and 704 of the APA provide three exceptions to to the district court's authority to hear APA cases: "(1) a suit under the APA can only seek relief other than 'money damages,' 5 U.S.C. § 702; (2) the suit would lie under the APA only if there were 'no other adequate remedy' in a court, 5 U.S.C. § 704; and (3) the suit could not be maintained if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' 5 U.S.C. § 702." *Suburban Mortgage Assocs., Inc.*, 480 F.3d at 1122. These three limitations function in the disjunctive; the application of any one is enough to deny a district court jurisdiction under the APA. *Id.* at 1126.

While the February 23, 2009 HUD Dismissal Order addressed IHDA's APA claim in terms of the availability of an "adequate remedy" via suit in the Federal Court of Claims, the "adequate remedy" analysis set forth in that Order applies equally to the issues now before the Court. Prior to appeal, the parties focused on the availability of an "adequate remedy" for IHDA via Tucker Act, which would permit a breach of contract action to be brought by IHDA in the Federal Court of Claims. Now, the Solicitor General's clarification of Section 1404a permits that same breach of contract action to be brought here, under Section 1331, and the parties have agreed that they intend to do so. The existence of an "adequate remedy" in a court does not depend upon the statute under which it is brought – Tucker Act vs. Section 1331. It is the fact that another action may be brought that constitutes an "adequate remedy" and bars the continuance of an action under the APA.

Most of IHDA's arguments as to why the breach of contract action does not constitute an adequate remedy are nearly identical to those raised by IHDA in 2009 and rejected by this Court in the HUD Dismissal Order, and the Court will not rehash the analysis again here. As discussed

at length in the HUD Dismissal Order, the fact that IHDA seeks prospective relief in the form of future payments from HUD does not change the fact that these future payments can be determined through resolution of the breach of contract action; as stated in the HUD Dismissal Order, if HUD is found to have breached the related ACCs with IHDA then the damages for such breach will necessarily include that HUD will make appropriate payments under the ACCs in the future. *See* HUD Dismissal Order at 9-10. Likewise, the fact that the issue between IHDA and HUD is resolved via an action for contractual breach does not mean it will have no impact on future cases about the application of Notice H 95-12. The resolution of the breach issue in this action will be a matter of public record for use as persuasive authority in subsequent actions over ACCs and HAP Contracts with other private parties, and available for appellate review.

IHDA makes one new argument in favor of the survival of its APA claim that it did not make in 2009: that HUD has acted arbitrarily and capriciously by improperly giving the 1994 Amendments retroactive effect applicable to the HAP Contracts, and that this action by HUD is "regulatory" in nature, making this suit one that a breach of contract action cannot adequately address. This argument fails for two reasons. First, no facts in support of IHDA's newly disclosed theory about improper application of the 1994 Amendments are to be found on the face of the Amended Third-Party Complaints. An argument crafted for the first time in response to a motion to dismiss does not eliminate the requirement that a claim state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Second, those facts that are pleaded in the Amended Third-Party Complaints about the 1994 Amendments contradict IHDA's argument that a breach of contract action would not provide an adequate remedy. The facts in the Amended Third-Party Complaints assert that

8

HUD's regulations implementing the 1994 Amendments, Notice H 95-12, "imposed additional requirements beyond those contained in existing HAP Contracts or the 1994 Amendments" and that other private individuals have successfully challenged the application of Notice H 95-12 to their HAP Contracts "as a breach of their contract rights." Shortly after this statement, IHDA makes its claim for breach of contract. By its acknowledgement that the facts in its own pleading suffice to plead breach of contract, IHDA has made clear that a breach of contract verdict in its favor would remedy its grievances.

In conclusion, the heart of the issue before the Court is whether IHDA is following the terms of the ACCs with HUD, in which case HUD's continuing breach of those ACCs is in turn causing IHDA to breach the HAP Contracts. The remedy for that grievance is an action for breach of contract by IHDA against HUD, the successful resolution of which will clarify the terms of the ACCs and set forth for all parties the impact upon the HAP contracts. The breach of contract action provides an "adequate remedy" for IHDA that bars continuance of a separate claim against HUD under the APA.

## II.     Indemnification for Breach of Contract.

HUD next moves to dismiss that portion of the breach of contract claim (Count II) that seeks indemnification and attorney's fees from HUD in the event IHDA prevails on its breach claim. HUD grounds its motion in *Hercules, Inc. v. United States*, 516 U.S. 417, 426-29 (1996), in which the Supreme Court refused to impose on the government a duty to indemnify the manufacturers of a toxic defoliant used in the Vietnam war that had injured soldiers, when the purchasing contract between the government and the manufacturers contained no express indemnification provision. In 2008, the Federal Circuit affirmed dismissal of an indemnification claim on grounds that the Anti-Deficiencies Act prevents inferences that an agency agreed to

indemnify a party in the absence of statutory authority or an express appropriation of funds for that purpose. *See Rick's Mushroom Svc., Inc. v. United States*, 521 F.3d 1338, 1345-46 (Fed. Cir. 2008). While IHDA concedes that the ACCs contain no express indemnification provision. IHDA's argues instead that its relationship with HUD to administer Section 8 housing funds makes it an agent of HUD and therefore entitled to implied indemnification through federal common law.

It this early stage in the proceedings, with the limited record before the Court – consisting of allegations but no factual development about the relationship between these two entities– and taking all allegations in the light most favorable to IHDA, this Court cannot conclude to a certainty that no right of implied indemnification exists. Therefore, the Court denies without prejudice HUD's motion to dismiss the indemnification portion of the breach of contract claim. With more development of the record regarding the relationship between IHDA and HUD, HUD may move again for dismissal of this portion of the claim following the completion of discovery.

### III. Declaratory Judgment

Finally, HUD moves to dismiss Count III of IHDA's Amended Complaints, the claims for declaratory judgment. HUD's motion is two-fold. With respect to the declaratory judgment claims based on the ACCs related to the Greenleaf and Sandberg properties, HAD acknowledges that the claim is properly before the Court as a declaratory judgment claim but urges this Court to exercise its discretion to decline to hear the action as a declaratory judgment because the issues are better determined through the already-pending breach of contract claim. With respect to IHDA's request for declaratory judgment regarding all ACCs other than those related to Greenleaf and Sandberg, HUD urges this Court to find that IHDA lacks standing to bring the claim because no "actual controversy" presents exists with undefined non-parties.

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") provides that in a case of an "actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration…" 28 U.S.C. § 2201(a). A court may exercise its discretion to decline to consider an action under the DJA, particularly in cases when another remedy will achieve the same result. "While the availability of another remedy does not preclude declaratory relief, a court may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate." *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975); *see also Hickman v. Wells Fargo Bank, N.A.,* 683 F. Supp. 2d 770, 790 (N.D. Ill. 2010) (same).

HUD concedes that a declaratory judgment claim is valid with respect to rent adjustments under the ACCs for the Greenleaf and Sandburg properties, but urges this Court to exercise its discretion to decline to consider Count III in favor of resolving the same issues via the breach of contract action already moving forward. As with the indemnification portion the claim, at this juncture in the case the Court lacks sufficient information about the differences between a declaratory judgment of the rights of IHDA and HUD vis-à-vis the Greenleaf and Sandberg property, and the breach of contract claim related to those properties; taking IHDA's allegations as true at this stage, the breach of contract action alone will not settle attendant issues related to all future rent increase calculations, and will leave open the possibility of future litigation on the same contracts absent declaratory relief. Given the uncertainty of the overlap of the breach claim and the DJA claim claims at this early juncture, the Court exercises its discretion to permit the DJA claim to go forward with respect to the ACCs for the Greenleaf and Sandberg properties

through discovery. HUD may raise its concerns about the necessity of a DJA ruling again at the summary judgment stage.

It is not too early, however, to address the standing issues with respect to IHDA's standing to pursue a declaratory judgment claim based on contracts other than the ACCs related to the underlying Sandberg and Greenleaf suits. As a threshold issue, DJA actions are justiciable only if they satisfy the "actual controversy" statutory requirement. *See* 28 U.S.C. 2201(a). This prerequisite is coextensive with the "case or controversy" standard for determining standing. *MedImmune, Inc. v. Genentech, Inc.*, 529 U.S. 118, 126-27 (2007); *Public Service Comm. of Utah v. Wycoff*, 344 U.S. 237, 241-42 (1952). While the contours of case-or-controversy under the DJA are not always clearly defined, the dispute must be "real and substantial " and "admit of specific relief through a decree of a conclusive character, as distinguished from an oopinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 529 U.S. at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the cirucmstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*(citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). IHDA and HUD agree that the only parties to the underlying suits that prompted the third-party action now before the Court are Greenleaf and Sandberg. There is nothing contained in the Amended Third-Party Complaints to suggest that controversy between any other non-parties has been threatened, much less advanced into an actual dispute. *See Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985) (noting that the ripeness requirement requires courts not to endeavor to resolve contingencies that may or may not occur as expected or even happen at all). Without

allegations to support that position, a DJA action to determine rights of un-named non-parties who have ACCs that may or may not be the same as those at issue in this case falls squarely within the prohibition against "advising what the law would be upon a hypothetical state of facts."

The results of a DJA claim involving the Greenberg and Sandberg contracts will likely have precedential effects upon subsequent litigation involving other Section 8 contracts, especially if those contracts are identical or substantially similar to the two contracts at issue here. The facts of *Medical Assurance Co. Inc. v. Hellman*, upon which IHDA relies to support adjudicating non-party claims, in fact emphasizes the difference between DJA for parties and IHDA's requested DJA for non-parties: the *Hellman* court faced the issue of a declaratory action to determine an insurer's duty to defend a particular doctor under a few malpractice insurance contracts that covered more than 300 currently pending malpractice cases against that doctor. *Hellman*, 610 F.3d 371 (7th Cir. 2010). The insurer in *Hellman* listed as named defendants more than 300 individual plaintiffs in the underlying malpractice actions in order to determine the insurer's duty to defend the doctor in each action. In this case, by contrast, IHDA listed the ACCs affecting the Greenleaf and Sandberg contracts in its Amended Third Party Complaints, and does not dispute either the fact that other private property owners are government by other, separate ACCs than those governing the Greenleaf and Sandberg HAP Contracts, or the fact that only one of those other private parties has ever filed suit against IHDA, and that suit has been dismissed. (Resp. at 12).

Therefore, while disposing of the issue of the ACCs related to Greenleaf and Sandberg before this Court may create precedent for other, future cases that do not presently exist, but would not resolve any case or controversy, other than that involving the Greenleaf and Sandberg

13

contracts – to the extent such other cases are even on the horizon at all. IHDA provides no basis to expand the DJA claim beyond the two suits in issue or to suggest that a controversy yet exists or is imminent with any other non-party contract holders, or that the ACCs at issue here directly affect any other parties. Absent such allegations, the DJA claim for non-parties must be dismissed.

## CONCLUSION

For the reasons stated herein, HUD's Motion to Dismiss is granted in part and denied in part. The motion to dismiss Count I of the Amended Third Party Complaints is granted and Count I is dismissed. The motion to dismiss the indemnification portion of Count II of the Amended Third Party Complaints is denied without prejudice. The motion to dismiss the Count III of the Amended Third Party Complaints is grant in part and denied in part; Count III may proceed with respect to the ACCs governing Greenleaf and Sandberg only.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 6, 2013

14