IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| GREENLEAF LIMITED PARTERSHIP, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ILLINOIS HOUSING DEVELOPMENT AUTHORITY, | ) ) ) ) | 08 C 2480 |
| Defendant and Third-Party Plaintiff, | ) ) | Judge Virginia M. Kendall |
| v. | ) ) ) | |
| JULIAN CASTRO[1], United States Secretary of Housing and Urban Development, | ) ) ) ) | |
| Third-Party Defendant. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

The Illinois Housing Development Authority ("IHDA") and the federal Department of Housing and Urban Development ("HUD") cross-move for summary judgment on IHDA's third-party complaint seeking a declaratory judgment and indemnification for litigation expenses. IHDA is a Public Housing Agency ("PHA") tasked with administering federal Section 8 housing programs in Illinois. After being sued by two private landlords for alleged violations of housing

---

[1] Steven Preston, the former United States Secretary of Housing and Urban Development was the original defendant named in IHDA's third-party complaint. Shaun Donovan, whose name currently appears on the Court's electronic docket, succeeded Secretary Preston on January 26, 2009, but left office on July 28, 2014. Julian Castro became the current Secretary on July 28, 2014. As the successor of previously named official capacity defendants, Secretary Castro is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d). The fact that Secretary Donovan's name appears on the Court's docket is a "misnomer not affecting the parties' substantial rights" and therefore "must be disregarded." *Id.*

assistance payment contracts, IHDA filed a third party complaint against HUD, seeking a declaration that HUD is liable to IHDA for rent increases prescribed by the housing assistance payment contracts and seeking indemnification for costs and expenses associated with defending the landlords' suits. For the reasons stated below, both motions are granted in part and denied in part. The Court declares that HUD must fund rent increases for which IHDA is liable under the its Housing Assistance Payment contract with Greenleaf, up to the total expense limitation contained in the Greenleaf Annual Contributions Contract between HUD and IHDA. HUD is not required to indemnify IHDA for its costs or expenses incurred in the present litigation.

## **BACKGROUND**

The parties generally agree that the material facts of this case are not in dispute. HUD is the federal agency responsible for implementing the United States Housing Act of 1937, including Section 8. *See* 42 U.S.C. § 1437(f). Under Section 8, HUD subsidizes the rents of low-income tenants who live in private housing. HUD sometimes provides these subsidies directly to landlords, but often works through an intermediary Public Housing Agency ("PHA"). *See* § 1437(a). IHDA is one such PHA. To implement Section 8, HUD enters into Annual Contributions Contracts ("ACCs") with PHAs, which allow and direct the PHAs to enter into contracts with owners of rental property to provide assisted housing. The ACCs obligate HUD to make annual contributions to the public housing agency, which in turn remits a portion of the contributions to the owners of assisted units, such as Greenleaf and Sandburg, in the form of monthly housing assistance payments. § 14737f(c)(3).

IHDA and HUD entered into ACCs to provide subsidized housing for Greenleaf Limited Partnership and Sandburg Village Apartments. Greenleaf and Sandburg are Section 8 rental projects located in Illinois. (IHDA 56.1 Resp. ¶¶ 1-2). With respect to Greenleaf, HUD entered

into an ACC with IHDA effective September 30, 1980 (the "Greenleaf ACC") and IHDA entered into a HAP contract with Greenleaf's predecessor in interest effective October 1, 1981 (the "Greenleaf HAP"). (IHDA 56.1 Resp. ¶ 8). Section 1.4(c) of the ACC between IHDA and HUD relevant to the Greenleaf[2] property requires HUD to pay IHDA "an amount equal to the amount of housing assistance payments payable during the Fiscal Year by [IHDA] pursuant to the [HAP contract]." (HUD 56.1 Resp. ¶¶ 35-36; Dkt. No. 165-1 p. 6). The Greenleaf HAP contract contains an "Overall Limitation" clause that stated: "Notwithstanding any other provision of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable units, as determined by [IHDA] (and approved by the Government in the case of adjustments under paragraph (c) of this Section); provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract term." (*Id.* ¶ 8).

Both federal law and HAP contracts specify the process by which the rental rate of each unit is to be determined. When IHDA and entered into HAP contracts with Greenleaf and Sandburg, the calculation method of those contracts mirrored federal law as it existed at the time. The present conflict began when federal law changed, but the provisions of the contracts did not. Under its HAP contract, Greenleaf was entitled to automatic rent from increases IHDA so long as Greenleaf made a timely request.[3] (HUD 56.1 Resp. ¶ 21; *see also* Dkt. No. 111). In the view

---

[2] Only the provisions of the Greenleaf HAP are currently at issue. IHDA sought an early termination of the Sandburg HAP and does not seek a declaration of rights under that contract. (Dkt. No. 179 p. 4).

[3] This is a simplified explanation of the rent determination process because the intricacies are not relevant here. A more detailed explanation of the Greenleaf HAP contract is contained within the Court's September 30, 2010 memorandum opinion and order granting in part and denying in part Greenberg's, Sandburg's, and IHDA's cross-motions for summary judgment. *See Greenleaf L.P.*

3

of Congress, this system led to contract rents for assisted that exceeded the fair market value of a similar, unassisted unit. In 1994, Congress amended the rent adjustment provision of the Section 8 statute, 42 U.S.C. § 1437f(c)(2)(A) ("the 1994 Amendments"). The 1994 Amendments imposed on owners whose rents already exceeded the published fair market rental the burden of proving through a rent comparability study that the adjusted rent would not exceed the rent for a comparable unassisted unit. *Id.* Previously, this burden had rested with the PHA. HUD implemented this statutory directive through Housing Notice H 95-12 on March 7, 1995. Expressed most simply, the Greenleaf's HAP prescribed a method for calculating rent increases that, after 1994, was more favorable to landlords than current federal law.

The present litigation began when Greenleaf and Sandburg filed a complaint alleging that IHDA had breached the terms of their respective HAP contracts in calculating rent increases. IHDA filed a third-party complaint against HUD, arguing that HUD should indemnify IHDA for any liability because if IHDA had breached its HAP contracts, it had done so under HUD's direction. The Court initially dismissed that third-party complaint based on HUD's assertion of sovereign immunity. The remaining parties filed cross-motions for summary judgment. Ultimately, the Court ruled that IHDA could not then apply the Overall Limitations clauses contained within the Greenberg and Sandburg HAP contracts because it had not timely invoked them, "[n]either Sandburg nor Greenleaf may be required to prepare and submit rent comparability studies as a prerequisite to obtaining annual rent increases under their HAP contracts," and that if "Greenleaf provides a timely written request for a rent adjustment to IHDA, Greenleaf will be entitled to rent adjustments on each anniversary date of the Greenleaf HAP contract until the contract's expiration, based upon the applicable annual rent adjustment

---

*v. Ill. Hous. Dev. Auth.*, No. 08 C 2480, 2010 WL 3894126 (N.D. Ill. Sept. 30, 2010). (*See also* Dkt. No. 88).

factors published in the Federal Register, absent proper and timely invocation of the 'Overall Limitation' [clause]" in the Greenleaf HAP. (Dkt. No. 111). All three parties (IHDA, Greenleaf, and Sandburg) appealed. IHDA appealed both the Court's summary judgment ruling and the dismissal of its third-party complaint. While the appeals were pending, the three parties to the lawsuit and HUD settled all claims through November 30, 2011. (HUD 56.1 Resp. ¶ 22).

IHDA's appeal of the order dismissing the third-party complaint against HUD on the basis of sovereign immunity, however, survived. HUD confessed error, conceding that 42 U.S.C. § 1404a, in fact, waived HUD's sovereign immunity for relevant purposes. (*Id.* ¶ 23). The Seventh Circuit remanded the case to this Court for evaluation of IHDA's third-party claims against HUD. HUD again moved to dismiss the third-party complaint and the Court granted the motion in part.

Since the period covered by the settlement agreement ended, IHDA has calculated rent increases and made payments in accordance with this Court's February 23, 2011 judgment. (HUD 56.1 Resp. ¶ 28; HUD Supp. 56.1 ¶¶ 1-2). HUD has informed IHDA that it will no longer pay for rent increases above the September 2014 level unless Greenleaf submits a rent compatibility study. (HUD 56.1 Resp. ¶ 30). Nothing in the record suggests that either IHDA or Greenleaf has performed such a study. HUD and IHDA have now filed cross-motions for summary judgment on the remaining counts of IHDA's third-party complaint against HUD.

## **LEGAL STANDARD**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (2015). In evaluating cross-motions for summary judgment, the Court views "all facts and inferences in the light most

5

favorable to the nonmoving party on each motion." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (2015). In order to survive summary judgment, the nonmoving party must set forth facts that show there is a genuine issue of material fact for trial "such that a reasonable jury could return a verdict in her favor." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). On cross-motions for summary judgment, each movant must satisfy Rule 56's requirements. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## DISCUSSION

### I. Declaratory Judgment

IHDA seeks a declaration that HUD is required under the Greenleaf ACC to fund rent increases required by the Greenleaf HAP contract. HUD argues that the Court should revisit its previous holding that IHDA's application of the 1994 Amendments breached the Greenleaf HAP contract and find that IHDA is not actually liable for rent increases in the manner the Court previously ordered. In the alternative, HUD argues that the Court should decline to issue a declaratory judgment because any such would be overly speculative. HUD does not present any argument related to the proper construction of the Greenleaf ACC. IHDA's motion is granted to the extent described below. HUD's motion for summary judgment on the declaratory judgment claim is denied.

Initially, the Court disagrees with HUD's argument that the Court should decline to adjudicate the declaratory judgment action. The Court has "wide discretion in adjudication declaratory judgment actions." *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133-34 (7th Cir. 2012) ("The Declaratory Judgment Act by its own terms grants district courts discretion in determining whether to entertain such an action."); *see also* 28 U.S.C. § 2201(a) (district court "may declare the rights and other legal relations" of parties to a declaratory

6

judgment action). A controversy is live and a declaratory judgment may be warranted when the allegedly offending action constitutes a "continuing and brooding presence" that "casts . . . a substantial adverse effect on the interests of the petitioning parties" *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 930 (7th Cir. 2013) (quoting *Super Tire Eng'g C. v. McCorkle*, 416 U.S. 115, 122 (1974)).

The present posture of the case renders it well suited for adjudication by declaration. First, the ACC between HUD and IHDA obligates HUD to pay "an amount equal to the amount of housing assistance payments payable during the Fiscal Year by [IHDA] pursuant to the [HAP contract]." HUD has, on multiple occasions, informed IHDA that it will no longer reimburse IHDA for payments it makes to Greenleaf pursuant to its HAP contract.[4] "The disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived. . . . In fact it is just the kind of case for which declaratory relief is designed." *Wis. Power & Light Co. v. Century Indemnity Co.,* 130 F.3d 787, 793 (7th Cir. 1997). Because it creates substantial uncertainty about IHDA's future financial obligations and entitlements, HUD's repeated assertions that it will not continue to fund IHDA's obligations under the HAP contract "casts . . . a substantial adverse effect on the interests of [Illinois Housing.]" *Milwaukee Police Ass'n*, 708 F.3d at 930. Second, the fact that future payments are conditioned on continued performance by Greenleaf and IHDA does not render a declaration premature or overly speculative. IHDA does not seek a declaration that HUD is unconditionally liable. Instead, IHDA seeks a declaration that HUD is liable to IHDA under the Greenleaf ACC to the same extent that IHDA is liable to Greenleaf under the Greenleaf HAP. This figure rises

---

[4] HUD characterizes payments made by IHDA to Greenleaf to be made pursuant to this Court's previous orders. That characterization is not correct. This Court construed the HAP contract between IHDA and Greenleaf to require rent increases and payments at certain levels. It is the HAP contract, and not this Court's order, that requires IHDA to make those payments.

7

and falls with Greenleaf's continued compliance. If Greenleaf breaches and IHDA is not liable, neither will be HUD. A declaratory judgment is appropriate under these conditions.

The Court will not revisit either its prior final judgment or its December 23, 2009 order as to IHDA's obligations the Greenleaf HAP contract. The Court's "final judgment" (Dkt. No. 111) was indeed a final judgment. When it was entered, the Court's judgment resolved "all claims against all parties." *Smart v. Local 702 Int'l Brotherhood of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). HUD was not a party to the litigation at the time. As the case stood in this Court, the litigation was "finished." *Dale v. Lappin*, 376 F.3d 652, 654 (7th Cir. 2004). Because the judgment was final and this motion came more than 28 days after the date of that judgment, Rule 60(b) of the Federal Rules of Civil Procedure governs reconsideration. *See Mintz v. Caterpillar, Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). Rule 60(b) motions must be made within a "reasonable" amount of time from the judgment. The Court entered a final judgment declaring the rights and responsibilities of IHDA and Greenleaf on February 23, 2011. The Seventh Circuit entered its mandate, officially making HUD a party to the case again on October 29, 2012. Though HUD was actively litigating in this Court after that date, HUD expressed no displeasure with the Court's ruling until it filed its second motion for summary judgment on April 27, 2015. (Dkt. No. 185). The Court finds the delay of nearly two and a half years to be unreasonably long and denies reconsideration.

Even if the Court did revisit those rulings, the Court would not revise its conclusions. Despite a presumption that earlier rulings will govern at later stages of the same litigation, "[a] judge may reexamine his earlier ruling . . . if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227 (7th

8

Cir. 1995) (internal quotation omitted). Generally, however, courts "refrain from reopening issues decided in earlier stages absent extraordinary circumstances." *United States v. Funds in the Amount of One Hundred Thousand One Hundred and Twenty Dollars*, 730 F.3d 711, 726 (7th Cir. 2013) (quoting *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012)). No such circumstances are present here. First, the Court is not convinced that its prior rulings were incorrect. *See Avitia*, 49 F.3d at 1227. HUD's argument that the Overall Limitation clause in the Greenleaf HAP should limit IHDA's liability is misplaced because IHDA has not taken any actions that would entitle it to the protection of that clause. Nor will the Court consider HUD's argument, never before presented to this Court, that IHDA satisfied the requirements of the Overall Limitations clause simply by applying the Fair Market Rent comparison prescribed by the 1994 Amendments. HUD may not rely on the incongruity between the contractual rent increases and the present statutory scheme to "make its own performance impossible through its manner of regulation" because that would render the underlying contract an "illusory bargain." *See United States v. Winstar Corp.*, 518 U.S. 839, 921 (1996) (Scalia, J., concurring). To the extent HUD's motion seeks reconsideration, the motion is denied.

The Court therefore will proceed to evaluate the declaratory judgment action on the merits. Though HUD disagrees with the Court's construction on the Greenleaf HAP, HUD has not presented any substantive argument as to why the Greenleaf ACC would not require HUD to reimburse IHDA for payments IHDA has incurred pursuant to the Greenleaf HAP. Section 1.4(c) of the ACC between IHDA and HUD requires HUD to pay IHDA annually an amount equal to the amount of housing assistance payments payable pursuant to IHDA's HAP contract with Greenleaf. (HUD 56.1 Resp. ¶¶ 35-36; Dkt. No. 165-1 p. 6). The Court's previous orders make IHDA's obligations under the Greenleaf HAP clear. HUD's obligation to IHDA under the ACC

is limited, however, by Section 1.4(a), which sets a Maximum ACC Commitment. Nothing in the record suggests, and no party has argued, that the Maximum ACC Commitment does not remain in force. The Court declares that in accordance with the Greenleaf ACC, HUD must reimburse IHDA for IHDA's obligations under the Greenleaf HAP as construed by this Court. HUD's liability is limited to the Maximum ACC Commitment for each Fiscal Year in accordance with Section 1.4(a). IHDA's motion for summary judgment on the declaratory relief claim is granted to the extent described above. HUD's motion for summary judgment on the declaratory judgment claim is denied.

## II.  Indemnification

The parties have also filed cross-motions for summary judgment on IHDA's claim that HUD must indemnify IHDA for all costs and expenses, including attorneys' fees, that it has sustained or will sustain in relation to its breach of the Greenleaf and Sandburg HAP contracts. IHDA asserts three bases for its claim for indemnification. First, IHDA argues that it acted as HUD's agent and the law of agency requires the principal, HUD, to indemnify the agent, IHDA, in situations such as this one. Second, IHDA argues that an indemnification contract implied in law between IHDA and HUD exists. Finally, IHDA argues that an indemnification contract implied in fact between IHDA and HUD exists. No factual disputes exist with respect to any issue relevant to the indemnification claim. For the reasons stated below, none of IHDA's arguments require HUD to indemnify IHDA, and HUD is entitled to summary judgment on the indemnification claim. IHDA's motion for summary judgment on the indemnification claim is denied.

A. No Agency Relationship Exists

IHDA argues that it acted as an agent of HUD and therefore it is entitled to indemnification because "a principal has a duty to indemnify the agent against expenses and other losses incurred by the agent in defendant against actions brought by third parties if the agent acted with actual authority in taking the action challenged by the third party's suit." Restatement (Third) of Agency § 8.14 cmt. d.[5] An agency relationship exists when "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." Restatement (Third) of Agency § 1.01; *see also Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014).

The record contains no facts indicating that HUD manifested assent for IHDA to act on its behalf subject to its control. IHDA is not subject to HUD's control to the degree required for an agency relationship to exist. Section 1.2 of the Greenleaf ACC reads: "In order to carry out the Project, the HFA [IHDA] is authorized to: (a) enter into an Agreement [a precursor to a HAP Contract], (b) enter into a [HAP] Contract, (c) make housing assistance payments on behalf of Families, and (d) take all other necessary actions, all in accordance with the forms, conditions and requirements prescribed or approved by the Government; provided, however, that the HFA shall take no actions which would result in any obligation on the Government beyond that provided in the Government-approved Agreement and Contract." (IHDA 56.1 Resp. ¶ 16). The arrangement between the parties was not one in which IHDA had the authority enter into new agreements that would bind HUD or otherwise act on HUD's behalf. No party disputes, for

---

[5] Though neither party addresses the body of law applicable to the present dispute, the federal common law of agency and Illinois agency law both follow the Restatement (Third) of Agency. *See NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013).

11

example, that IHDA, but not HUD, is a party to the Greenleaf HAP. Instead, IHDA agreed to carry out a federal housing scheme and HUD agreed to fund it. That funding was contingent on IHDA's compliance with certain standards, but IHDA nonetheless acted with substantial discretion in distributing the funds. At least one federal court of appeals has described a PHA has having "exclusive control over the federal grant funds." *Staten v. Housing Auth. of Pittsburgh*, 638 F.2d 599, 604 (3d Cir. 1980). Moreover, IHDA is created and governed by Illinois law. *See* 20 ILCS 3805/4. In this sense, IHDA is under state, not federal, control in exercising its powers. *Cf. Cathedral Square Partners*, *Cathedral Square Partners Ltd. P'ship v. S.D. Hous. Dev. Auth.*, 966 F. Supp. 2d 862, 874 (D.S.D. 2013). Neither the requisite control nor the assent to be controlled that is necessary to support a principal-agent relationship is present here.

This conclusion is consistent with the conclusions of other courts that have evaluated the issue. IHDA has not presented a single judicial decision finding that a PHA acts as HUD's agent. HUD, on the other hand, has presented substantial caselaw supporting the notion that a PHA does not act as HUD's agent in administering the Section 8 program. *See, e.g.*, *Cathedral Square Partners Ltd. P'ship.*, 966 F. Supp. 2d at 874; *New Era Construction v. United States,* 890 F.2d 1152, 1155 (Fed. Cir.1989) (citing *Housing Corp. of America v. United States,* 468 F.2d 922, 924 (1972) (funding and approval by HUD of PHA projects "does not . . . make the [PHA] defendant's agent through HUD")); *Garreaux v. United States*, 77 Fed. Cl. 726, 732 (2007) ("The Court of Appeals for the Federal Circuit and its predecessor court have made clear that when the federal government subsidizes local government projects, the federal government does not make itself a party to contracts relating to the projects, nor does the local government become an agent of the federal government.") The Court finds the latter body of caselaw persuasive and joins the courts that have found that PHAs do not act as agents of HUD in administering Section 8.

IHDA reliance on passing, colloquial references to PHAs in general as "agents" of HUD in administering the Section 8 program is unavailing. *See e.g.*, *Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir. 1987) ("In *Holbrook* we held that tenants under federal housing programs are third-party beneficiaries of the contracts between HUD (or, by implication, an agent such as IHDA) and developers of lower-income housing."); H.R. Rep. No. 96-154 (1979) ("The Section 8 housing program is administered by both public housing agencies and private owners. . . . In both instances, the ultimate responsibility for verifying the work of these agents of the Department, of course, rests with the Department . . ."). Casual reference to the term "agent" in contexts where agency as a legal concept is not at issue is both common and insufficient to establish the existence of an agency relationship. *See* Restatement (Third) of Agency § 1.01 cmt. b ("It is also common usage to refer without distinction to parties who serve any intermediary function as 'agents.' Not all such situations, however, meet the legal definition of an agency relationship."). Neither *Price* nor the House Report considered whether a PHA acted as an agent of HUD. Indeed, IHDA has not identified *any* judicial decision in which a Court considered the relationship between HUD and a PHA and concluded that the latter was an agent of the former. Because no principal-agent relationship exists, IHDA is not entitled to indemnification under an agency theory.

      B.      The Doctrine of Implied in Law Indemnity is Unavailable

IHDA also argues that an indemnification contract implied in law exists. All parties agree that the ACC contains no express indemnity clause. "But even if the parties fail to include an indemnity provision in their contract, if it is apparent that they would have done so had the point occurred to them the courts will read it into their contract unless it is disclaimed." *Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002). The doctrine, however, does not apply

13

when the purported indemnitee seeks recovery for a blameless breach of contract, rather than a blameless tort. *See Wilder Corp. v. Thompson Drainage and Levee Dist.*, 658 F.3d 802, 805 (7th Cir. 2011). ("But the blameless contract breaker . . . cannot invoke noncontractual indemnity to shift the risk that he assumed in the contract."). The law limits the availability of implied in law indemnity in order to prevent "an avalanche of litigation that might be triggered if an involuntary contract breaker could sue anyone for indemnity who a court might find had contributed to the breach." *Id.* Because IHDA seeks indemnification for its liability and costs associated with what it concedes was a breach of contract action, the doctrine of implied in law noncontractual indemnity is unavailable.

C. No Evidence Supports the Existence of a Contract Implied in Fact

IHDA also argues that it has an implied in fact right to indemnification. "An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.' " *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)). Evidence of HUD's understanding that it would be obligated to indemnify IDHA is a necessary element of the claim. *See Morrison v. C.I.R.*, 506 F. App'x 568, 569 (9th Cir. 2013). IHDA has presented no such evidence.

The record contains no facts supporting a mutuality of intent for HUD to bear responsibility for indemnification of fees and costs associated with litigation. IHDA points to only three facts in the record to support the existence of an agreement implied in fact. None of these facts supports such a finding. First, IHDA argues that HUD's requirement that IHDA account for legal expenses associated with administering the Section 8 program constitutes

14

conduct evincing an indemnification agreement. But there is no logical nexus between an accounting requirement and an indemnification agreement. Indeed, PHAs are required to account for many expenses for which IHDA does not now seek indemnification. Second, IHDA's reliance on HUD's guidance to PHAs that they have the duty to "diligently defend all litigation involving" Section 8 is misguided. Rather, diligent litigation is an obligation that IHDA undertook upon entering the ACC with HUD. The existence of such an obligation does not give rise to a right to indemnification for the cost of compliance without some other conduct supporting the existence of such an agreement. IHDA's third argument similarly fails. IHDA cites the HUD Procurement Handbook for PHAs 7460.8, § 7.4 which states that program funds can be spend for legal expenses if the PHA has not violated HUD requirements or is not otherwise at fault and the legal expenses are necessary and reasonable. The ability to use funds already received from HUD to pay legal expenses under limited circumstances does not imply that HUD has assented to any future obligation to pay such expenses. Because the record contains no conduct of either party supporting the conclusion that HUD and IHDA mutually intended for HUD to indemnify IHDA, no contract implied in fact exists.

**CONCLUSION**

For the reasons stated herein, HUD's motion for partial summary judgment [163] is granted. HUD is not required to indemnify IHDA for its costs or expenses incurred in the present litigation. IHDA's motion for summary judgment [178] and HUD's motion for partial summary judgment [184] are granted in part and denied in part. The Court declares that HUD must fund rent increases for which IHDA is liable under the Greenleaf HAP, up to the total expense limitation contained in the Greenleaf ACC.

_____
United States District Court Judge
Northern District of Illinois

Date: September 9, 2015